IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston Division

RON FOSTER, individually,
FOSTER FARMS, LLC,
and MARKETING & PLANNING SPECIALISTS
LIMITED PARTNERSHIP,

**COMPLAINT**

    Plaintiffs,

**Civil Action No:** 2:14-cv-16744

v.

UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,

    and

GINA MCCARTHY, in her official capacity as
Administrator, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,

    Defendants.

## COMPLAINT

Mr. Ron Foster, Foster Farms, LLC, and Marketing & Planning Specialists Limited Partnership ("Plaintiffs"), by and through their counsel, now come before this Court and complain of the U.S. Environmental Protection Agency and Gina McCarthy, in her capacity as Administrator of the United States Environmental Protection Agency as follows:

## I. Preliminary Statement

1.  Plaintiffs, Ron Foster ("Mr. Foster"), Marketing & Planning Specialists Limited Partnership, and Foster Farms, LLC, bring this action for injunctive and declaratory relief under the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq.*, and the Administrative Procedure Act

("APA"), 5 U.S.C. § 551, *et seq.* , and the Constitution of the United States of America, as amended.

2.　　Defendants United States Environmental Protection Agency ("EPA") and Gina McCarthy, as Administrator of the EPA, have issued a compliance order under the CWA to Foster Farms, LLC, after determining that property owned by Plaintiffs is allegedly subject to the CWA, and alleging that Mr. Foster was responsible for discharging fill into unnamed tributaries of Neal Run. The compliance order was issued against Foster Farms, LLC. However, Marketing & Planning Specialists Limited Partnership owns an adjacent tract of property which contains roughly half of the acreage area where the landscaping in question took place. Marketing & Planning Specialists Limited Partnership is also the entity which conducted the landscaping in question.

3.　　U.S. Army Corps of Engineers ("USACE") is an agency of the United States established under the Department of the United States Army. Except in extraordinary circumstances, USACE is the primary agency responsible dredge and fill permitting and determinations of jurisdictional waters of the United States, requiring such permitting pursuant to Section 404 of the CWA. 33 U.S.C. § 1344. USACE denied Plaintiffs an administrative appeal of USACE's February 22, 2012 jurisdictional waters determination on the grounds that EPA's superseding of USACE's authority in the matter rendered USACE's determination a non-appealable action.

4.　　The compliance order subjects Plaintiffs to civil penalties for failure to comply with the order, and was issued without providing Plaintiffs an opportunity to appeal, be heard by an impartial decision maker and to contest Defendants' findings.

5.     Plaintiffs therefore seek an injunction enjoining Defendants from enforcing the compliance order without first providing him an administrative hearing and appeal. Plaintiffs further seek a declaration from this court that enforcement of the order without providing him such a hearing violates his procedural and substantive due process rights.

## II. Jurisdiction and Venue

6.     This Court has jurisdiction over the subject matter of this action pursuant to Article III, Section 1 of the U.S. Constitution; 28 U.S.C. § 1331 (federal question jurisdiction); § 2201 (authorizing declaratory relief); § 2202 (authorizing injunctive relief); and 5 U.S.C. § 702 (providing for judicial review of agency action under the APA).

7.     Venue in this judicial district is proper under 28 § 1391(e)(2), because the property that is the subject of the action is situated therein.

## III. Parties

8.     The Plaintiffs are as follows:

a.     Plaintiff Ron Foster is a citizen of the United States and the State of West Virginia.   Mr. Foster resides in Putnam County, West Virginia.

b.     Plaintiff Foster Farms, LLC is a Kentucky limited liability company.

c.     Marketing & Planning Specialists Limited Partnership is a Nevada limited partnership authorized to do business in West Virginia.

d.     Plaintiffs Foster Farms, LLC and Marketing & Planning Specialists Limited Partnership, own the parcels of property that are the subject of this action. The property is located in Wood County, West Virginia.

3

The tract owned by Foster Farms, LLC is all of those certain parcels of real estate and improvements thereon and appurtenances thereto, commonly known as Neal Run Crossing, located on West Virginia Route 68, in Lubeck district, Wood County, West Virginia, The deed, made on October 29, 2009, and recorded in Book 11447, at page 679 describes the property as follows:

> All of those certain parcels of real estate and improvements thereon and appurtenances thereto, commonly known as Neal Run Crossing, located on West Virginia Route 68, in Lubeck District, Wood County, West Virginia, consisting of the following parcels:
>
> 1. Four parcels containing 49.4 Acres, 2.3 Acres, 0.84 Acres and 6.75 Acres respectively, acquired by Seller by Deed dated August 30, 2006, of record in the office of the Clerk of the Wood County Commission in Deed Book 1102, at Page 766, less reservations noted therein.
>
> 2. One parcel containing 3.0 Acres, acquired by Seller by Deed dated November 14, 2006, of record in the said Clerk's office in Deed Book 1107, at Page 919, less reservations noted therein.
>
> 3. One parcel containing 5.11 Acres, acquired by Seller by Deed dated September 22, 2006, of record in the said Clerk's office in Deed Book 1103, at Page 650.
>
> THERE IS EXPRESSLY EXCEPTED AND RESERVED FROM THE ABOVE PARCELS THE FOLLOWING:
>
> A. Parcel containing 1.47 Acres conveyed to Michael W. Johnson by Deed dated August 30, 2006, of record in the said Clerk's Office in Deed Book 1102, at Page 770.
>
> B. Parcel containing 1.881 Acres conveyed to Western Sizzlin, LLC by Deed dated July 17, 2007, of record in the said Clerk's Office in Deed Book 1119, at Page 596.

The tract owned by Marketing & Planning Specialists Limited Partnership is 2,300 linear feet south of the intersection of West Virginia Routes 95 and 68 in Parkersburg, Wood County, West Virginia; it is 51.5 acres, and is approximately 0.75 miles northeast of the town of Lubeck. The deed was duly recorded on March 6, 2007 in Deed Book 1110 at Page 457, describing the property as:

4

BEGINNING at a stake in the center of the County Road concerning in line of J.C.F. Pahl and to line of George Finsley; thence N. 58 ½ W. 58 poles to a stake; thence N. 82 ½ W. 15 poles and 3 links to a stake; thence N. 9 ½ E. 26 poles to a post, corner to Robinson and Dobinson; thence S. 74 E. 44 poles and 4 links to a post; thence N. 8 E. 45 poles and 9 links to a hickory; thence S. 80 E. 103 poles to a post, corner to Tebay and Miller; thence S. 10 W. 52 poles to a post; corner to George Finsley; thence N. 73 ½ W. 74 poles to a post; thence S. 15 W. 43 2/3 poles to the place of beginning, containing 40 ½ acres, be the same more or less.

9.      Defendant EPA is an agency of the United States established pursuant to Reorganization Plan No. 3 of 1970, 84 Stat. 2086. EPA has primary responsibility for the enforcement of the CWA.

10.     Defendant Gina McCarthy is the Administrator of the EPA, and oversees the EPA's enforcement of the CWA. She is sued in her official capacity only.

## IV. Legal Background

11.     In 1972, Congress enacted the CWA to regulate the navigable waters of the United States. 33 U.S.C. § 1251, *et seq.*

12.     Section 404 of the CWA, 33 U.S.C. § 1344, authorizes the USACE to issue permits for the discharge of dredge and fill material into the navigable waters of the United States. In extraordinary circumstances, EPA is authorized to supersede the authority of USACE for Section 404 permitting. 33 U.S.C. § 1344.

13.     Section 301(a), *id.* § 1311(a) prohibits the unpermitted discharge of dredge and fill material into the navigable waters of the United States.

14.     Sections 308 and 309, *id.* §§ 1318, 1319(a) authorize the EPA to issue compliance orders for violations of the CWA, including unpermitted discharges of dredge and fill material into the navigable waters of the United States.

15.     In *Rapanos v. United States*, the Supreme Court explained that the CWA does not provide the EPA with jurisdiction over certain wetlands that are connected to nonnavigable tributaries of traditional navigable waters. 547 U.S. 715 (2006).

16.     Subsequently, the United States Court of Appeals for the Fourth Circuit held that the controlling standard for CWA jurisdiction is the "significant nexus" test. *Precon Dev. Corp., Inc. v. U.S. Army Corps of Engineers*, 633 F.3d 278, 283 (4th Cir. 2011) (citing *Rapanos*, 547 U.S. at 780).

17.     The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

18.     In *Sackett v. Environmental Protection Agency*, a decision handed down on March 21, 2012, the United States Supreme Court held that an EPA's compliance order was a "final agency action" for which Constitutional due process requires that a right to appeal, review and challenge the compliance order must be provided under the Administrative Procedure Act. 132 S.Ct. 1367, 1374 (2012).

19.     The Court further held that nothing in the CWA precluded judicial review. *Id.*

## V. Factual Allegations

20.     Plaintiffs own a 51.5 acre parcel of land located in Parkersburg, Wood County, West Virginia. It is located 2,300 linear feet south of the intersection of West Virginia Route 95 and West Virginia Route 68.

21.     The property is in the vicinity of a tributary (Neal Run) which flows into the Little Kanawha River.

6

22.     The property does not substantially affect the physical, chemical, or biological integrity of Neal Run or the Little Kanawha River, nor does a visible bed and bank connect the fill areas on the property with Neal Run and therefore, the fill areas on the property subject to the compliance order are not subject to the CWA.

23.     Prior to  Marketing & Planning Specialists Limited Partnership and Foster Farms, LLC's ownership of the property, it was owned by The Endurance Group, LLC ("Endurance"). Endurance was forced into bankruptcy, Case No. 4:09-40053, in the United States Bankruptcy Court for the Southern district of West Virginia. Prior to the bankruptcy proceeding, Endurance was facing enforcement action by the EPA related to the property.

24.     EPA was aware of Endurance's bankruptcy, and several months before the agency formally intervened in the bankruptcy, before Plaintiffs were even known to EPA, the agency had decided to "arm twist" whoever the new purchaser would be in order to help finance the remediation of the already existing issues on the property. *See* Attachment A.

24.     Foster Farms, LLC and Marketing & Planning Specialists Limited Partnership purchased the property out of the bankruptcy estate on October 29, 2009, pursuant to the "AGREED ORDER AUTHORIZING THE SALE OF REAL ESTATE PURSUANT to 11 U.S.C. §363(b), (f) and (m) and §105(a), FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, INCLUDING ANY AND ALL CLAIMS OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY AND THE U.S. ARMY CORPS OF ENGINEERS AND TO ALLOW 11 U.S.C. §506(c) EXPENSES."

25.     The deeds for the property were made part of the property sale bankruptcy order and contained restrictions on the amount of encroachment that EPA and USACE could make in remediating the pre-existing issues on the property ("EPA and Corps [USACE] shall be limited

7

to accessing only that portion of the Real Estate within 30 feet of the toe of the fill discharged by the Debtor"), and also limited the monetary amount that the new owner could be required to contribute to the remediation ("all such liability of Purchaser to the EPA and Corps shall attach to the $50,000.00 remediation fund established under the Purchase Agreement[.]"*See* Attachment B.

26.    Despite EPA's formal intervention in the bankruptcy and actual knowledge of the restrictions set forth in the deeds from the bankruptcy sale, EPA proceeded to develop in conjunction with a consultant, a remediation plan that violated the restrictive terms and conditions of the property deeds.

27.    Mr. Foster objected to EPA's proposed remediation plan for the pre-existing issues on the property as violative of the restrictions in the deeds, and tendered to EPA the maximum monetary obligation that the purchaser was subject to under the term of the deeds / bankruptcy order.

28.    Within less than 3 months of Mr. Foster's requiring EPA to abide by the bankruptcy order and deed restrictions, the activities of Plaintiffs on the remainder of the property not subject to the pre-existing remediation became the subject of intense EPA enforcement scrutiny.

29.    EPA's new enforcement efforts against the Plaintiffs began a roughly fifteen month back and forth between Plaintiffs, EPA and USACE over the issue of whether or not Plaintiffs activities had impacted jurisdictional waters.

30.    On January 24, 2012, Defendants issued a compliance order to Foster Farms, LLC, claiming that the property was subject to the CWA, and alleging that Plaintiffs had illegally filled an unnamed tributary on the property. *See* Attachment C. The compliance order

8

was issued to Foster Farms, LLC, however both Foster Farms, LLC and Marketing & Planning Specialists Limited Partnership own parcels of land upon which the landscaping which is the subject of the EPA compliance order. *See* Attachment C.

31.     EPA has made clear that the agency relied solely upon a private consultant's preliminary opinion of jurisdictional status over the site in question in support of its compliance order in violation of 33 U.S.C. § 1311(a). *See* Attachment F.  This consultant did not take the factors of the *Rapanos* decision into consideration in rendering its preliminary opinion. Later, after taking the *Rapanos* factors into consideration, the consultant's final determination concluded that the area at issue was not in fact jurisdictional.  EPA has arbitrarily ignored the consultant's final determination and instead relies upon the consultant's disavowed preliminary finding to support the agency's claim that the earthwork performed by Marketing & Planning, LP constitutes an unauthorized discharge of dredged or fill material to waters of the United States.

32.     The order also required Plaintiffs to submit a detailed restoration plan within forty-five (45) days of the effective date of the order (the day on which Mr. Foster received the order).

33.     Defendants further stated that any violation of the order could result in criminal sanctions (imprisonment) and fines of up to $50,000 per day.

34.     On February 22, 2012, USACE, wrote Mr. Foster explaining that a determination had been made that Mr. Foster's property contained "4,800 linear feet of jurisdictional streams[.]" *See* Attachment D. The letter invited Mr. Foster to make an administrative appeal pursuant to 33 C.F.R. SECTION 331 not later than April 20, 2013.

35.     On April 20, 2012, Marketing & Planning Specialists Limited Partnership timely filed an administrative appeal of the February 22, 2012 USACE jurisdictional determination. *See*, Attachment E.

36.     On April 5, 2012, EPA notified Mr. Foster that it was "superseding [USACE's] authority to verify the jurisdictional status of aquatic resources at the [property]." *See* Attachment F.

37.     On May 29, 2012, USACE informed Mr. Foster that it had timely received Marketing & Planning Specialists Limited Partnership's Request for Appeal of USACE's February 22, 2012 jurisdictional determination, but that due to EPA's April 5, 2012 superseding of jurisdictional determination authority, the earlier USACE determination was no longer an appealable action.  USACE stated that EPA's superseding thus precluded the Plaintiffs from pursuing their due process right to administratively challenge the jurisdictional determination. *See* Attachment G.

38.     On March 21, 2012, the U.S. Supreme Court handed down the seminal decision in *Sackett v. EPA*. The holding of that decision requires that persons subject to EPA compliance orders must be given a right to appeal and review of such orders. 132 S.Ct. 1367, 1374 (2012).

39.     On June 5, 2012 and June 11, 2012, Mr. Foster wrote Defendant in response to the compliance order. *See* Attachment C. This was responded to by the EPA on June 27, 2012. In those letters, Mr. Foster asked to EPA for clarification on the jurisdictional determination and "significant nexus of the Site." In its response, Defendants claimed that "EPA has no additional information to provide to you in this regard and is basing its jurisdictional determination upon the extensive information gathered by the [Army Corps of Engineers] as well as EPA's visits to the site." *See* Attachment H.

10

40.     Mr. Foster contacted Pam Lazos and Jeffrey Lapp on numerous occasions requesting an appeal but has never been given any information on how to pursue Plaintiffs right of appeal.

41.     Mr. Foster has notified EPA in writing requesting information on how to file an administrative appeal of the compliance order but has never received any explanation from EPA on how to do so. *See* Attachments H through L.

42.     On or about October 25, 2013, Mr. Foster received a letter from counsel for EPA stating that its jurisdictional determination was not a "final" agency action and therefore no appeal was required. EPA utterly failed to address the appeal of the compliance order per *Sackett* in its letter. *See* Attachment M.

43.     On or about May 12, 2014, Mr. Foster received a letter dated May 8, 2014, stating that his case had been referred to the U.S. Department of Justice for "civil prosecution" and stating that EPA believes that a civil penalty in the amount of $414,830.00 would be an appropriate fine to be imposed upon the Plaintiffs.  EPA yet again completely ignored Mr. Foster's request for instructions on how to appeal the compliance order and instead simply notified Mr. Foster that he was being recommended to face prosecution and an penalty of almost a half a million dollars.  *See* Attachment N.

## VI. Injunctive Relief Allegations

44.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 43 as though fully set forth herein.

45.     If an injunction does not issue enjoining the Defendants from enforcing the compliance order against Plaintiffs pending an administrative appeal of that order, Plaintiffs will

11

be irreparably harmed. Plaintiffs are presently and continuously injured by the compliance order's issuance because the threat of enforcement will force Plaintiffs to restore the property to its original condition at great expense, or, be subjected to severe civil and criminal penalties.

46.     Plaintiffs have no speedy, adequate, and plain remedy at law.

47.     If not enjoined by the Court, Defendants will continue to threaten to—and actually enforce—the compliance order in derogation of Plaintiffs' due process rights.

48.     Defendants' compliance order is a final agency action subject to appeal and review. *Sackett*, 132 S.Ct. at 1374.

## VII. First Claim of Relief (declaratory relief)

49.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 48 as though fully set forth herein.

50.     An actual and substantial controversy exists between Plaintiffs and Defendants over Defendants' failure to comply with the CWA and the U.S. Constitution in determining that Plaintiffs' property is subject to the CWA, and that Plaintiffs can be held liable for violation of the compliance order, or the alleged underlying violation, without proof of a violation or an opportunity to be heard.

51.     The dispute at hand is justiciable because Defendants' failure to comply with these laws is the direct result of final agency action that has caused and will continue to cause immediate and concrete injury to Plaintiffs. Plaintiffs are presently and continuously injured by the compliance order's issuance because the threat of enforcement will force Plaintiffs to restore the property to its original condition at great expense, or, be subjected to severe civil and criminal penalties.

12

52. Further, Defendants' compliance order is a final agency action and is subject to judicial review under the APA. *Sackett*, 132 S.Ct. at 1374.

53. Declaratory relief is, therefore, appropriate to resolve this controversy, and Plaintiffs therefore seek a declaratory order forcing Defendants to provide Plaintiffs with a meaningful administrative appeal of the compliance order.

## VIII. Second Claim for Relief (statutory violation)

54. Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 53 as though fully set forth herein.

55. Plaintiffs' property is not subject to the CWA because under *Rapanos* and *Precon*, the property (1) does not substantially affect, either by itself, or in combination with similar properties in the area, the physical, chemical, and biological integrity of any traditional navigable waters, and (2) it is not connected to any other body of water such that one cannot discern where that body of water ends and the property begins.  Moreover, the evidence supports that Defendants' treatment of Plaintiffs is improperly motivated and evinces an abuse of process.

56. Defendants' determination that Plaintiffs' property is subject to the CWA is, therefore, arbitrary and capricious, an abuse of discretions, not in accordance with law, contrary to the constitutional rights of the Plaintiffs, and without observance of procedure required by law. *See* 5 U.S.C. § 706(2)(A), (B) and (D).

## XI. **Third Claim for Relief (constitutional violation)**

57.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraph 1 through 56 as though fully set forth herein.

58.     Defendants' issuance of a compliance order threatening imminent imposition of civil and criminal penalties without providing Plaintiffs an opportunity to appeal and be heard violates Plaintiffs' procedural due process rights, *see* U.S. CONST. amend. V.

59.     The compliance order is therefore null and void, and without legal effect, unless and until Defendants' give Plaintiffs the opportunity to participate in a meaningful administrative appeal of the compliance order.

## XII. **Fourth Claim for Relief (constitutional violation)**

60.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 59 as though fully set forth herein.

61.     Section 309(a)(1) of the CWA authorizes issuance, "on the basis of any information available," *see* 33 U.S. C. § 1319(a)(1), of a compliance order whose violations incurs significant civil penalties. Defendants have issued a compliance order against Plaintiffs pursuant to § 309(a)(1). Defendants have thereby violated Plaintiffs' substantive due process rights, because the standard for issuance of a compliance order is impermissibly vague, unless and until Mr. Foster is given the opportunity to participate in a meaningful administrative appeal of the compliance order. This would allow Plaintiffs to make available information (as permitted under 33 U.S. C. § 1319(a)(1)) necessary for Defendants' proper jurisdictional determination of the property at issue.

14

62.     Section 309(a)(1) of the CWA is therefore unconstitutional as applied to Mr. Foster, and the Compliance Order issued against the Plaintiffs is null and void.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment as follows:

1.      An order from the Court directing Defendants to provide Plaintiffs an administrative appeal of the compliance order before a neutral and independent decision maker under EPA's existing administrative appeal process, or, alternatively, a declaration that Defendants' compliance order is constitutionally invalid, or otherwise unconstitutionally vague as applied to Plaintiffs and therefore must be vacated; and

2.      An injunction enjoining defendants from taking any enforcement action, or imposing any penalty, against Plaintiffs pending administrative appeal of the compliance order before a neutral and independent decision maker; or

3.      An order declaring the compliance order invalid, vacating the compliance order, granting an injunction barring EPA from making the jurisdictional determination in this case due EPA's demonstrated improper animus and violation of due process, and reinstating Plaintiff's right to administratively appeal the jurisdictional determination before USACE; and

4.      For an award of attorneys' fees, expenses, costs; and,

5.    For such other relief as the Court deems just and proper.

Respectfully submitted,

**RON FOSTER, FOSTER FARMS, LLC and
MARKETING & PLANNING SPECIALISTS
LIMITED PARTNERSHIP**

By SPILMAN THOMAS & BATTLE, PLLC

_____/s/ John C. Wilkinson, Jr._____
James S. Crockett, Jr. (WV State Bar No. 9229)
John C. Wilkinson, Jr. (WV State Bar No. 8869)
Spilman Thomas & Battle, PLLC
P.O. Box 273
Charleston, WV  25321-0273
Telephone: (304) 340-3800
Facsimile: (304) 340-3801
jcrockett@spilmanlaw.com
jwilkinson@spilmanlaw.com