Exhibit  A

Here are some emails from pam after she started her review

----- Forwarded by Todd Lutte/R3/USEPA/US on 05/12/2009 02:48 PM -----



Pamela
Lazos/R3/USEPA/US
05/04/2009 03:21 PM

To    Todd Lutte/R3/USEPA/US@EPA

cc

Subject    Larry George --

I talked to him -- nice guy -- and found out some things.  For one, his company, Endurance Group, Inc. was placed in involuntary bankruptcy following a dispute between the partners.  I'm waiting to talk to the trustee who said he'd be available this afternoon, but it looks like this is probably going to be a bankruptcy referral to DOJ since there are no assets in the company unless we can twist the arm of the next guy who intends on buying the site, but according to Mr. George, no one is lining up anymore (although they were before the lawsuit).

It's not clear from the documents, the applications, the corps inspection reports, etc., just how much of hte stream was actually rerouted and how much displaced by the culvert.  Do you have any additional info on this?

Thanks, doll,
Pam

Exhibit  B

BOOK 1147 PG 676

THIS DEED, Made this 29th day of October, 2009, by and between ROBERT L. JOHNS, as Chapter 11 Trustee for the Bankruptcy Estate of THE ENDURANCE GROUP, LLC, party of the first part, and FOSTER FARMS, LLC, a Kentucky limited liability company, party of the second part;

WHEREAS, Robert L. Johns, is the duly appointed Chapter 11 Trustee for the Bankruptcy Estate of The Endurance Group, LLC, now pending in the United States Bankruptcy Court for the Southern District of West Virginia, as Case No. 09-40053, a copy of said appointment being attached hereto and made a part hereof; and

WHEREAS, Robert L. Johns, is duly authorized to sell and convey the Debtor's interest in the hereinafter described real estate, free and clear of all liens, pursuant to 11 U.S.C. §363(f), to the party of the second part, as assignee of Ronald P. Foster, pursuant to an "AGREED ORDER AUTHORIZING THE SALE OF REAL ESTATE PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m) AND § 105(a), FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, INCLUDING ANY AND ALL CLAIMS OF THE U. S. ENVIRONMENTAL PROTECTION AGENCY AND THE U. S. ARMY CORPS OF ENGINEERS, AND TO ALLOW 11 U.S.C. §506(c) EXPENSES" entered by the United States Bankruptcy Court for the Southern District of West Virginia on October 19, 2009, a copy of said order being attached hereto and made a part hereof.

NOW, THEREFORE, THIS DEED WITNESSETH:     That for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, and other good and valuable consideration, paid by the party of the second part to the party of the first part, the receipt and sufficiency of which is hereby acknowledged, the party of the first part does hereby GRANT and CONVEY unto the party of the second part, with covenants of SPECIAL WARRANTY, all those certain tracts or parcels of real estate, together with the easements and appurtenances

FOSTER SUPPLY
4847 TEAYS VALLEY ROAD
SCOT DEPOT, WV 25560-9504

BOOK **1147** PG **677**.

thereunto belonging, situate in Lubeck District, Wood County, West Virginia, more particularly described on Exhibit A hereto.

This conveyance is made and accepted subject to all reservations, restrictions, covenants, conditions, rights of way and easements made or contained in all prior deeds in the chain of title to the real estate herein conveyed.

The party of the first part declares that the real estate transferred by this instrument is exempt from West Virginia excise tax on the privilege of transferring real estate because this is a transfer from a representative of the United States Bankruptcy Court under the provisions of the United States Bankruptcy Code.

WITNESS the following signature:

ROBERT L. JOHNS, Chapter 11   Trustee for the
Bankruptcy Estate of The Endurance Group, LLC.

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, to-wit:

The foregoing instrument was acknowledged before me this 29th day of October, 2009, by ROBERT L. JOHNS, Chapter 11 Trustee for the Bankruptcy Estate of The Endurance Group, LLC, on behalf of said bankruptcy estate.
My commission expires: _____ *august 23, 2010* _____.

*Linda L Bartlett*
Notary Public



OFFICIAL SEAL
Notary Public, State Of West Virginia
LINDA L. BARTLETT
P.O. Box 997
Hurricane, WV 25526
My Commission Expires August 23, 2010

This instrument was prepared by Wendel B. Turner, Attorney at Law, 216 Brooks Street, Suite 200, Charleston, WV 25301.

2

BOOK **1147** PG. 678

# EXHIBIT A

## REAL ESTATE

All of those certain parcels of real estate and improvements thereon and appurtenances thereto, commonly known as Neal Run Crossing, located on West Virginia Route 68, in Lubeck District, Wood County, West Virginia, consisting of the following parcels:

1. Four parcels containing 49.4 Acres, 2.3 Acres, 0.84 Acres and 6.75 Acres respectively, acquired by Seller by Deed dated August 30, 2006, of record in the office of the Clerk of the Wood County Commission in Deed Book 1102, at Page 766, less reservations noted therein.

2. One parcel containing 3.0 Acres, acquired by Seller by Deed dated November 14, 2006, of record in the said Clerk's office in Deed Book 1107, at Page 919, less reservations noted therein.

3. One parcel containing 5.11 Acres, acquired by Seller by Deed dated September 22, 2006, of record in the said Clerk's office in Deed Book 1103, at Page 650.

THERE IS EXPRESSLY EXCEPTED AND RESERVED FROM THE ABOVE PARCELS THE FOLLOWING:

A. Parcel containing 1.47 Acres conveyed to Michael W. Johnson by Deed dated August 30, 2006, of record in the said Clerk's Office in Deed Book 1102, at Page 770.

B. Parcel containing 1.881 Acres conveyed to Western Sizzlin, LLC by Deed dated July 17, 2007, of record in the said Clerk's Office in Deed Book 1119, at Page 596.

3

BOOK **1147** PG **679**

Attachment to DEED TO FOSTER FARMS, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In Re:

THE ENDURANCE GROUP, LLC                    Case No.: 4:09-bk-40053

        Debtor.                    Chapter 11

## AMENDED APPOINTMENT OF CHAPTER 11 TRUSTEE

The United States Trustee, pursuant to Order entered on April 6, 2009, and pursuant to 11

U.S.C. § 1104(d), hereby appoints Robert L. Johns as Trustee in this case. Amended to correct

case style.

Dated: April 7, 2009

/s/ Debra A. Wertman
Assistant U.S. Trustee
District of West Virginia
300 Virginia Street
Charleston, WV 25301
304-347-3400

BOOK 1147 PG 680

*Attachment to Deed To Foster Farms LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

IN RE:
THE ENDURANCE GROUP LLC,

        Debtor.

Bankruptcy Case No. 4:09-40053
Chapter 11

---

### AGREED ORDER AUTHORIZING THE SALE OF REAL ESTATE PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m) AND § 105(a), FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, INCLUDING ANY AND ALL CLAIMS OF THE U. S. ENVIRONMENTAL PROTECTION AGENCY AND THE U. S. ARMY CORPS OF ENGINEERS, AND TO ALLOW 11 U.S.C. §506(c) EXPENSES

---

THIS MATTER came on for hearing before the Court on September 4, 2009, and for a further telephonic hearing on October 8, 2009, on the TRUSTEE'S MOTION FOR ORDER AUTHORIZING THE SALE OF REAL ESTATE PURSUANT TO 11 U.S.C. § 363(b), (f), AND (m) AND § 105(a) FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, INCLUDING ANY AND ALL CLAIMS OF THE U. S. ENVIRONMENTAL PROTECTION AGENCY AND THE U. S. ARMY CORPS OF ENGINEERS, AND TO ALLOW 11 U.S.C. §506(c) EXPENSES  (the "Sale Motion"), pursuant to Notice of the Sale Motion (the "Sale Notice"),  having been served on all parties in interest, with respect to the sale of real estate pursuant to the terms of a purchase agreement between Trustee and Ronald P. Foster, dated August 6, 2009, (the "Purchase Agreement") for sale of  approximately 90 Acres of real estate situate in Lubeck District, Wood County, West Virginia, as described in the Sale Motion  (the "Real Estate").

Appearances were made by: Chapter 11 Trustee, Robert L. Johns ("Trustee"), in person and by counsel Wendel B. Turner and special counsel William F. Dobbs; Central Industrial Maintenance, Inc. ("CIM"), by counsel Richard M. Francis and William Crichton, V; Huntington

1

BOOK 1147 PG 681

National Bank ("HNB"), by counsel Donald J. Epperly; J. C. Powell ("Powell"), by counsel Joeseph W. Caldwell; Michael Johnson, by counsel George J. Cosenza; Larry George, by counsel C. Blaine Myers, and Ronald P. Foster, the purchaser of the Real Estate.

At the September 4 hearing, Counsel for the Trustee announced to the Court that the Trustee was informed that the U. S. Environmental Protection Agency ("EPA") and the U. S. Army Corps of Engineers ("Corps") had not received notice of the hearing, but that their counsel had informed the Trustee that EPA and the Corps had no objection to the Sale hearing being held, so long as the Court took no action to prejudice the EPA and the Corps until they have an opportunity to appear and be heard at a later hearing, or they agree to an Agreed Order of Sale herein. Subsequently, at the October 8 telephonic hearing, counsel for the Trustee and for EPA and the Corps announced that those parties had resolved issues that relate to sale of the Real Estate, as set out in Paragraph E below.

Counsel for the Trustee, with the announced agreement by all parties present, informed the Court that agreements and compromises had been reached resolving the objections to the sale filed herein by CIM, HNB, and Powell, as follows:

CIM withdrew its Upset Bid for the Real Estate, thus making moot its objection based on its desire to credit bid its mechanics lien. CIM's second objection based on the amount of a proposed Break-up fee is also moot because the withdrawal of CIM's Upset Bid left the only remaining offer for the Real Estate that from Ronald Foster, so that no Break-up fee is at issue.

The objections of HNB and Powell were compromised as follows: HNB, Powell and the Trustee agreed that HNB's lien would be paid in full at the Closing of the Sale of the Real Estate, that HNB would release its liens against the 40.5 Acre tract, which is a part of the Real Estate being sold, and against a 1.47 Acre tract titled in the name of Michael Johnson and which lies

2

BOOK 1147 PG 682

within the boundaries of the Real Estate being sold, and that the compromise and releases would be without prejudice to any claims or causes of action by Powell or other parties. HNB's lien against the 1.47 acre parcel will not be released until after the Trustee has filed an Adversary Proceeding seeking recovery of the 1.47 acre parcel for the benefit of the estate.

The Court having considered the files and records herein and having heard statements of the parties and/or their counsel, and good cause appearing therefor,

NOW, THEREFORE, THE COURT HEREBY FINDS THAT:

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The agreement between the Trustee and EPA and the Corps which is set out in Paragraph E below, and the announced compromises of the objections of CIM, HNB, and Powell are reasonable and in the best interest of the bankruptcy estate, and should be accepted and approved by this Court.

4.    Notice of the Sale Motion having been given as described above is adequate under the circumstances.

5.    Ronald P. Foster (the "Purchaser") is a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code.

6.    The Trustee has reasonably exercised its sound business judgment in deciding to enter into the Purchase Agreement and to sell and transfer the Real Estate to the Purchaser. The relief requested in the Sale Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest.

3

BOOK **1147** PG 683

7.    The opportunity for upset bids afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Real Estate.

8.    The process and sale was non-collusive, fair and reasonable, conducted in good faith and resulted in the Debtor's estate obtaining the highest value for the Real Estate. The consideration to be paid by Purchaser pursuant to the Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.

9.    A reasonable opportunity to object or be heard with respect to the Sale Motion and relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Real Estate has been afforded to all parties-in-interest.

10.    The Real Estate can be sold free and clear of liens and encumbrances under Section 105(a) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

A.    The Sale Motion is granted. The compromises of the Objections of CIM, HNB, and Powell set out above are hereby accepted and approved by the Court. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled are hereby overruled on the merits for the reasons set forth on the record and as set forth herein.

B.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Real Estate to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

4

BOOK 1147 PG 684

    C.    The Purchase Agreement is hereby approved in all respects and shall be deemed in full force and effect, binding and benefiting the Debtor's estate and the Purchaser. The Purchase Agreement shall not be subject to rejection.

    D.    Pursuant to the provisions of §§ 105 and 363 of the Bankruptcy Code, the Trustee is authorized, empowered and directed to implement and consummate all of the transactions (the "Sale") contemplated by the Purchase Agreement with the Purchaser and to sell the Real Estate described in the Purchase Agreement, to Purchaser for the Purchase Price set forth in and determined in accordance with the Purchase Agreement.

    E.    Pursuant to 11 U.S.C. § 363(f) and this Court's general equitable powers under 11 U.S.C. § 105(a), upon the Closing of the Sale, Purchaser shall take title to and possession of the Real Estate free and clear of any and all liens, claims, liabilities, interests and encumbrances. All such liens, claims, liabilities, interests and encumbrances shall attach solely to the proceeds of the Sale with the same validity and priority as they attached to the applicable Real Estate. Further, pursuant to 11 U.S.C. § 363(f) and this Court's general equitable powers under 11 U.S.C. § 105(a), the Real Estate shall be free and clear of all liability of the Purchaser to the U.S. Environmental Protection Agency ("EPA") and U.S. Army Corps of Engineers ("Corps") for Debtor's failure to obtain permits under the Clean Water Act, 33 U.S.C. § 1251 *et seq.*; all such liability of Purchaser to the EPA and Corps shall attach to the $50,000.00 remediation fund established under the Purchase Agreement; EPA and the Corps shall retain the right to pursue any and all causes of action related to the relocation of a stream located along the Northwestern corner of the Real Estate against any party other than the Purchaser and its assigns; and EPA, the Corps and other Governmental Agencies shall be prohibited from denying or restricting any permit or approval for future activity on the Real Estate, based solely on the Debtor's failure to

BOOK 1147 PG 685

have obtained permits for the previous relocation of the stream. EPA and the Corps shall be limited to accessing only that portion of the Real Estate within 30 feet of the toe of the fill discharged by Debtor in relocating the stream to perform remedial assessments and remedial work on the stream, and except as provided in the previous sentence, nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

F.     The Trustee has established sound business justifications in support of the Sale. After considering the circumstances of this case, the Court determines that the purchase price ("Purchase Price") presents the best opportunity for the Debtor's estate to realize the highest distribution possible to all creditors. The Purchase Price, as approved herein, is the highest and best offer for the Real Estate. The Purchase Price constitutes full and adequate consideration and reasonably equivalent value for the Real Estate. The transfer of the Real Estate on the Closing to Purchaser for the Purchase Price is in the best interest of the Debtor's estate, its creditors and all parties-in-interest.

G.     The Trustee has carried the burden of demonstrating that the proposed sale will aid the Debtor's liquidation or reorganization and that the Trustee has met the established standards regarding sales outside the ordinary course of business pursuant to 11 U.S.C. §363(b)(1).

H.     The transactions contemplated in the Sale Motion, as approved and implemented herein, are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, including but not limited to Sections 363(b), (f) and (m). The terms and conditions of the sale of the Real Estate and the other transactions approved by this Order are fair and reasonable.

BOOK 1147 PG 686

I.      For good and valid reasons, the Court may authorize and approve a sale of assets of the Debtor pursuant to Section 363(b) of the Bankruptcy Code without the necessity of following the procedures and making the findings required for confirmation of a plan of reorganization.  Such relief is within the sound discretion of the Court in light of the existing business exigencies of the Debtor's bankruptcy case, and is both justified and appropriate in light of the legitimate and compelling reasons stated in the Sale Motion.

J.      Purchaser is a third party purchaser unrelated to the Debtor, and the terms of Purchaser's purchase of the Real Estate as set forth in the Purchase Agreement are fair and reasonable under the circumstances of this case.

K.      The transfer of the Real Estate to Purchaser represents an arms'-length transaction and has been negotiated in good faith between the parties.  Purchaser, as transferee of the Debtor's property, is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code. *In re Lady H Coal Co., Inc.*, 193 BR. 233, 244 (Bankr. S.D.W.V. 1996), (citing *In re Abbots Dairies, Inc.*, 788 F.2d 143 (3d Cir. 1986)).  Purchaser has proceeded in good faith in all respects in connection with this proceeding in that:

        (i)      Purchaser recognized that that Trustee was free to deal with any other party interested in acquiring the Real Estate;

        (ii)     All payments to be made by Purchaser in connection with the transaction have been disclosed; and

        (iii)    Purchaser has not violated Section 363(n) of the Bankruptcy Code by any action or inaction.

7

BOOK 1147 PG 687

In the absence of a stay of this Sale Order, if Purchaser elects to close under the Purchase Agreement at any time after entry of this Sale Order, then, with respect to the Purchase Agreement, Purchaser shall be entitled to the protections of § 363(m) of the Bankruptcy Code if this Sale Order or an authorization contained herein is reversed or modified on appeal.

L.    Subject to the fulfillment of the terms and conditions of the Purchase Agreement, at the Closing the Trustee will sell, transfer, assign and convey to the Purchaser and/or its assigns all of the Debtor's rights, title and interest in, to and under the Real Estate. The Trustee is authorized, empowered and hereby directed to deliver deeds, assignments and other such documentation that may be necessary or requested by the Purchaser in accordance with the terms of the Purchase Agreement to evidence the transfers required herein.

M.    Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and authorization or approval issued by any agency of the West Virginia State Government to the Debtor with respect to the Real Estate, and, all such licenses, permits, registrations, authorizations and approvals are deemed to have been, and hereby are directed to be transferred to Purchaser as of the applicable Closing Date, except to the extent otherwise provided in the Purchase Agreement.

N.    At the Closing of the Sale, the Trustee shall pay ad valorem real estate taxes; shall pay HNB in the full amount of its lien against the Real Estate in the amount of $705,265.27, plus $60.07807 per diem after October 8, 2009, and shall pay Powell in the amount of its lien for post --petition financing as approved by prior order of this Court. After the Closing and pursuant to further orders of this Court, the balance of the Purchase Price paid to the Trustee shall be disbursed by the Trustee in the amounts as determined by the Court as follows:

8

BOOK 1147 PG 688

(i)       Payment of Trustee's bona fide costs of the sale, including the Trustee's statutory fees, expenses and attorney's fees.   Such fees and expenses are determined to be reasonable costs and expenses of preserving and disposing of the Real Estate for the benefit of creditors; and

(ii)      Payment of any claims secured by valid liens or encumbrances on the Real Estate (other than inchoate mechanics liens that have not yet been finally determined); and

(iii)     Payment of the remainder, if any, in accordance with any additional order of this Court.

O.       A certified copy of this Order may be filed with the appropriate Clerk and/or recorded with the Recorder to act to cancel the liens and encumbrances of record.

P.       The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order.

Q.       The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

R.       There were no brokers involved with the negotiation or consummation of the Purchase Agreement, and, therefore, neither the Trustee nor the Purchaser shall be liable for any brokers' commissions.

S.       This Court shall retain jurisdiction over this transaction for purposes of enforcing the provisions of this Order and the Purchase Agreement.

9

BOOK 1147 PG 689

T.   Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective immediately upon entry.

U.   The Clerk is directed to transmit copies of the Order to the parties in interest.

ENTERED __10-19-2009__

_Pat M. Flatley_

UNITED STATES BANKRUPTCY JUDGE

Submitted by:

ROBERT L. JOHNS   [WV S.B. # 5161]
WENDEL B. TURNER [WVSB 3823]
TURNER & JOHNS, PLLC
216 Brooks Street, Suite 301
Charleston, WV 25301
*Counsel for Robert L. Johns,*
Chapter 11 Trustee

Approved by:

/s/ Austin D. Saylor
Austin D. Saylor, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, DC 20026-3986
Counsel for EPA and the Corps

/s/Richard M. Francis
Richard M. Francis, Esq.
Bowles Rice McDavid Graff & Love LLP
600 Quarrier Street P. O. Box 1386
Charleston WV 25325
Counsel for CIM

10

BOOK 1147 PG 690

/s/ Donald J. Epperly
Donald J. Epperly, Esq.
Steptoe & Johnson PLLC
P. O. Box 2190
Clarksburg, WV 26301
Counsel for Huntington National Bank

/s/ Joseph W. Caldwell
Joseph W. Caldwell, Esq.
Caldwell & Riffe
P. O. Box 4427
Charleston, WV 25364
Counsel for J. C. Powell

George J. Cosenza, Esq.
P. O. Box 4
Parkersburg, WV 26102
Counsel for Michael Johnson

C. Blaine Myers, Esq.
P. O. Box 1472
Parkersburg, WV 26102
Counsel for Larry George

/s/ Ronald P. Foster
Ronald P. Foster
P. O. Box 467
Scott Depot WV 25560

11



BOOK 1147 PG 691

THIS DEED, Made this 29th day of October, 2009, by and between ROBERT L. JOHNS, as Chapter 11 Trustee for the Bankruptcy Estate of THE ENDURANCE GROUP, LLC, party of the first part, and MARKETING & PLANNING SPECIALISTS, LIMITED PARTNERSHIP, a Nevada limited partnership, party of the second part;

WHEREAS, Robert L. Johns, is the duly appointed Chapter 11 Trustee for the Bankruptcy Estate of The Endurance Group, LLC, now pending in the United States Bankruptcy Court for the Southern District of West Virginia, as Case No. 09-40053, a copy of said appointment being attached hereto and made a part hereof; and

WHEREAS, Robert L. Johns, is duly authorized to sell and convey the Debtor's interest in the hereinafter described real estate, free and clear of all liens, pursuant to 11 U.S.C. §363(f), to the party of the second part, as the assignee of Ronald P. Foster, pursuant to an "AGREED ORDER AUTHORIZING THE SALE OF REAL ESTATE PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m) AND § 105(a), FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, INCLUDING ANY AND ALL CLAIMS OF THE U. S. ENVIRONMENTAL PROTECTION AGENCY AND THE U. S. ARMY CORPS OF ENGINEERS, AND TO ALLOW 11 U.S.C. §506(c) EXPENSES" entered by the United States Bankruptcy Court for the Southern District of West Virginia on October 19, 2009, a copy of said order being attached hereto and made a part hereof.

NOW, THEREFORE, THIS DEED WITNESSETH:    That for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, and other good and valuable consideration, paid by the party of the second part to the party of the first part, the receipt and sufficiency of which is hereby acknowledged, the party of the first part does hereby GRANT and CONVEY unto the party of the second part, with covenants of SPECIAL WARRANTY, all that certain tract or parcel of real estate, together with the easements and appurtenances thereunto

BOOK 1147 PG 692

belonging, situate in Lubeck District, Wood County, West Virginia, more particularly described on Exhibit A hereto.

This conveyance is made and accepted subject to all reservations, restrictions, covenants, conditions, rights of way and easements made or contained in all prior deeds in the chain of title to the real estate herein conveyed.

The party of the first part declares that the real estate transferred by this instrument is exempt from West Virginia excise tax on the privilege of transferring real estate because this is a transfer from a representative of the United States Bankruptcy Court under the provisions of the United States Bankruptcy Code.

WITNESS the following signature:

ROBERT L. JOHNS, Chapter 11  Trustee for the
Bankruptcy Estate of The Endurance Group, LLC.

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, to-wit:

The foregoing instrument was acknowledged before me this 29th day of October, 2009, by ROBERT L. JOHNS, Chapter 11 Trustee for the Bankruptcy Estate of The Endurance Group, LLC, on behalf of said bankruptcy estate.

My commission expires: _____ august 23, 2010 _____.

Lynda L. Bartlett
Notary Public

OFFICIAL SEAL
Notary Public, State Of West Virginia
LINDA L. BARTLETT
P.O. Box 997
Hurricane, WV  25526
My Commission Expires August 23, 2010

This instrument was prepared by Wendel B. Turner, Attorney at Law, 216 Brooks Street, Suite 200, Charleston, WV  25301.

2

BOOK 1147 PG 693

## EXHIBIT A

### REAL ESTATE

All of that certain parcel of real estate and improvements thereon and appurtenances thereto, located adjacent to a commercial development commonly known as Neal Run Crossing, located near West Virginia Route 68, in Lubeck District, Wood County, West Virginia, consisting of the following:

> BEGINNING at a stake in the center of the County Road cornering in line of J.C.F. Pahl and to line of George Finsley; thence N. 58 ½ W. 58 poles to a stake; thence N. 82 ½ W. 15 poles and 3 links to a stake; thence N. 9 ½ E. 26 poles to a post, corner to Robinson and Dobinson; thence S. 74 E. 44 poles and 4 links to a post; thence N. 8 E. 45 poles and 9 links to a hickory, thence S. 80 E. 103 poles to a post, corner to Tebay and Miller; thence S. 10 W. 52 poles to a post; corner to George Finsley; thence N. 73 ½ W. 74 poles to a post; thence S. 15 W. 43 ⅔ poles to the place of beginning, containing 40 ½ acres, be the same more or less.

AND BEING the same parcel of real estate conveyed to The Endurance Group, LLC by B. Jeanne McCartney, by Deed dated March 6, 2007, of record in the said Clerk's office in Deed Book 1110, at Page 457.

3

BOOK 1147 PG 694

*Attachment to DEED to Marketing & Planning Specialists, LP*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In Re:

    THE ENDURANCE GROUP, LLC            Case No.: 4:09-bk-40053

         Debtor.                 Chapter 11

### AMENDED APPOINTMENT OF CHAPTER 11 TRUSTEE

    The United States Trustee, pursuant to Order entered on April 6, 2009, and pursuant to 11

U.S.C. § 1104(d), hereby appoints Robert L. Johns as Trustee in this case. Amended to correct

case style.

Dated: April 7, 2009

/s/ Debra A. Wertman
Assistant U.S. Trustee
District of West Virginia
300 Virginia Street
Charleston, WV 25301
304-347-3400

BOOK 1147 PG 695

*Attachment to Deed to Marketing & Planning Specialists, LP*

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

IN RE:
THE ENDURANCE GROUP LLC,                    Bankruptcy Case No. 4:09-40053
                                            Chapter 11

      Debtor.

---

### AGREED ORDER AUTHORIZING THE SALE OF REAL ESTATE PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m) AND § 105(a), FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, INCLUDING ANY AND ALL CLAIMS OF THE U. S. ENVIRONMENTAL PROTECTION AGENCY AND THE U. S. ARMY CORPS OF ENGINEERS, AND TO ALLOW 11 U.S.C. §506(c) EXPENSES

---

THIS MATTER came on for hearing before the Court on September 4, 2009, and for a further telephonic hearing on October 8, 2009, on the TRUSTEE'S MOTION FOR ORDER AUTHORIZING THE SALE OF REAL ESTATE PURSUANT TO 11 U.S.C. § 363(b), (f), AND (m) AND § 105(a) FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, INCLUDING ANY AND ALL CLAIMS OF THE U. S. ENVIRONMENTAL PROTECTION AGENCY AND THE U. S. ARMY CORPS OF ENGINEERS, AND TO ALLOW 11 U.S.C. §506(c) EXPENSES  (the "Sale Motion"), pursuant to Notice of the Sale Motion (the "Sale Notice"),  having been served on all parties in interest, with respect to the sale of real estate pursuant to the terms of a purchase agreement between Trustee and Ronald P. Foster, dated August 6, 2009, (the "Purchase Agreement") for sale of  approximately 90 Acres of real estate situate in Lubeck District, Wood County, West Virginia, as described in the Sale Motion  (the "Real Estate").

Appearances were made by: Chapter 11 Trustee, Robert L. Johns ("Trustee"), in person and by counsel Wendel B. Turner and special counsel William F. Dobbs; Central Industrial Maintenance, Inc. ("CIM"), by counsel Richard M. Francis and William Crichton, V; Huntington

1

BOOK 1147 PG 696

National Bank ("HNB"), by counsel Donald J. Epperly; J. C. Powell ("Powell"), by counsel Joeseph W. Caldwell; Michael Johnson, by counsel George J. Cosenza; Larry George, by counsel C. Blaine Myers, and Ronald P. Foster, the purchaser of the Real Estate.

At the September 4 hearing, Counsel for the Trustee announced to the Court that the Trustee was informed that the U. S. Environmental Protection Agency ("EPA") and the U. S. Army Corps of Engineers ("Corps") had not received notice of the hearing, but that their counsel had informed the Trustee that EPA and the Corps had no objection to the Sale hearing being held, so long as the Court took no action to prejudice the EPA and the Corps until they have an opportunity to appear and be heard at a later hearing, or they agree to an Agreed Order of Sale herein. Subsequently, at the October 8 telephonic hearing, counsel for the Trustee and for EPA and the Corps announced that those parties had resolved issues that relate to sale of the Real Estate, as set out in Paragraph E below.

Counsel for the Trustee, with the announced agreement by all parties present, informed the Court that agreements and compromises had been reached resolving the objections to the sale filed herein by CIM, HNB, and Powell, as follows:

CIM withdrew its Upset Bid for the Real Estate, thus making moot its objection based on its desire to credit bid its mechanics lien. CIM's second objection based on the amount of a proposed Break-up fee is also moot because the withdrawal of CIM's Upset Bid left the only remaining offer for the Real Estate that from Ronald Foster, so that no Break-up fee is at issue.

The objections of HNB and Powell were compromised as follows: HNB, Powell and the Trustee agreed that HNB's lien would be paid in full at the Closing of the Sale of the Real Estate, that HNB would release its liens against the 40.5 Acre tract, which is a part of the Real Estate being sold, and against a 1.47 Acre tract titled in the name of Michael Johnson and which lies

2

BOOK 1147 PG 697

within the boundaries of the Real Estate being sold, and that the compromise and releases would be without prejudice to any claims or causes of action by Powell or other parties. HNB's lien against the 1.47 acre parcel will not be released until after the Trustee has filed an Adversary Proceeding seeking recovery of the 1.47 acre parcel for the benefit of the estate.

The Court having considered the files and records herein and having heard statements of the parties and/or their counsel, and good cause appearing therefor,

NOW, THEREFORE, THE COURT HEREBY FINDS THAT:

1.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.   The agreement between the Trustee and EPA and the Corps which is set out in Paragraph E below, and the announced compromises of the objections of CIM, HNB, and Powell are reasonable and in the best interest of the bankruptcy estate, and should be accepted and approved by this Court.

4.   Notice of the Sale Motion having been given as described above is adequate under the circumstances.

5.   Ronald P. Foster (the "Purchaser") is a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code.

6.   The Trustee has reasonably exercised its sound business judgment in deciding to enter into the Purchase Agreement and to sell and transfer the Real Estate to the Purchaser. The relief requested in the Sale Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest.

3

BOOK 1147 PG 698

7.    The opportunity for upset bids afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Real Estate.

8.    The process and sale was non-collusive, fair and reasonable, conducted in good faith and resulted in the Debtor's estate obtaining the highest value for the Real Estate. The consideration to be paid by Purchaser pursuant to the Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.

9.    A reasonable opportunity to object or be heard with respect to the Sale Motion and relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Real Estate has been afforded to all parties-in-interest.

10.    The Real Estate can be sold free and clear of liens and encumbrances under Section 105(a) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

A.    The Sale Motion is granted. The compromises of the Objections of CIM, HNB, and Powell set out above are hereby accepted and approved by the Court. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled are hereby overruled on the merits for the reasons set forth on the record and as set forth herein.

B.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Real Estate to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

4

BOOK 1147 PG 699

C.     The Purchase Agreement is hereby approved in all respects and shall be deemed in full force and effect, binding and benefiting the Debtor's estate and the Purchaser. The Purchase Agreement shall not be subject to rejection.

D.     Pursuant to the provisions of §§ 105 and 363 of the Bankruptcy Code, the Trustee is authorized, empowered and directed to implement and consummate all of the transactions (the "Sale") contemplated by the Purchase Agreement with the Purchaser and to sell the Real Estate described in the Purchase Agreement, to Purchaser for the Purchase Price set forth in and determined in accordance with the Purchase Agreement.

E.     Pursuant to 11 U.S.C. § 363(f) and this Court's general equitable powers under 11 U.S.C. § 105(a), upon the Closing of the Sale, Purchaser shall take title to and possession of the Real Estate free and clear of any and all liens, claims, liabilities, interests and encumbrances. All such liens, claims, liabilities, interests and encumbrances shall attach solely to the proceeds of the Sale with the same validity and priority as they attached to the applicable Real Estate. Further, pursuant to 11 U.S.C. § 363(f) and this Court's general equitable powers under 11 U.S.C. § 105(a), the Real Estate shall be free and clear of all liability of the Purchaser to the U.S. Environmental Protection Agency ("EPA") and U.S. Army Corps of Engineers ("Corps") for Debtor's failure to obtain permits under the Clean Water Act, 33 U.S.C. § 1251 *et seq.*; all such liability of Purchaser to the EPA and Corps shall attach to the $50,000.00 remediation fund established under the Purchase Agreement; EPA and the Corps shall retain the right to pursue any and all causes of action related to the relocation of a stream located along the Northwestern corner of the Real Estate against any party other than the Purchaser and its assigns; and EPA, the Corps and other Governmental Agencies shall be prohibited from denying or restricting any permit or approval for future activity on the Real Estate, based solely on the Debtor's failure to

5

BOOK 1147 PG 700

have obtained permits for the previous relocation of the stream. EPA and the Corps shall be limited to accessing only that portion of the Real Estate within 30 feet of the toe of the fill discharged by Debtor in relocating the stream to perform remedial assessments and remedial work on the stream, and except as provided in the previous sentence, nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

F.     The Trustee has established sound business justifications in support of the Sale. After considering the circumstances of this case, the Court determines that the purchase price ("Purchase Price") presents the best opportunity for the Debtor's estate to realize the highest distribution possible to all creditors. The Purchase Price, as approved herein, is the highest and best offer for the Real Estate. The Purchase Price constitutes full and adequate consideration and reasonably equivalent value for the Real Estate. The transfer of the Real Estate on the Closing to Purchaser for the Purchase Price is in the best interest of the Debtor's estate, its creditors and all parties-in-interest.

G.     The Trustee has carried the burden of demonstrating that the proposed sale will aid the Debtor's liquidation or reorganization and that the Trustee has met the established standards regarding sales outside the ordinary course of business pursuant to 11 U.S.C. §363(b)(1).

H.     The transactions contemplated in the Sale Motion, as approved and implemented herein, are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, including but not limited to Sections 363(b), (f) and (m). The terms and conditions of the sale of the Real Estate and the other transactions approved by this Order are fair and reasonable.

6

BOOK 1147 PG 701

I.    For good and valid reasons, the Court may authorize and approve a sale of assets of the Debtor pursuant to Section 363(b) of the Bankruptcy Code without the necessity of following the procedures and making the findings required for confirmation of a plan of reorganization. Such relief is within the sound discretion of the Court in light of the existing business exigencies of the Debtor's bankruptcy case, and is both justified and appropriate in light of the legitimate and compelling reasons stated in the Sale Motion.

J.    Purchaser is a third party purchaser unrelated to the Debtor, and the terms of Purchaser's purchase of the Real Estate as set forth in the Purchase Agreement are fair and reasonable under the circumstances of this case.

K.    The transfer of the Real Estate to Purchaser represents an arms'-length transaction and has been negotiated in good faith between the parties. Purchaser, as transferee of the Debtor's property, is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code. *In re Lady H Coal Co., Inc.*, 193 BR. 233, 244 (Bankr. S.D.W.V. 1996), (citing *In re Abbots Dairies, Inc.*, 788 F.2d 143 (3d Cir. 1986)). Purchaser has proceeded in good faith in all respects in connection with this proceeding in that:

(i)    Purchaser recognized that that Trustee was free to deal with any other party interested in acquiring the Real Estate;

(ii)    All payments to be made by Purchaser in connection with the transaction have been disclosed; and

(iii)    Purchaser has not violated Section 363(n) of the Bankruptcy Code by any action or inaction.

7

BOOK 1147 PG 702

In the absence of a stay of this Sale Order, if Purchaser elects to close under the Purchase Agreement at any time after entry of this Sale Order, then, with respect to the Purchase Agreement, Purchaser shall be entitled to the protections of § 363(m) of the Bankruptcy Code if this Sale Order or an authorization contained herein is reversed or modified on appeal.

L.      Subject to the fulfillment of the terms and conditions of the Purchase Agreement, at the Closing the Trustee will sell, transfer, assign and convey to the Purchaser and/or its assigns all of the Debtor's rights, title and interest in, to and under the Real Estate. The Trustee is authorized, empowered and hereby directed to deliver deeds, assignments and other such documentation that may be necessary or requested by the Purchaser in accordance with the terms of the Purchase Agreement to evidence the transfers required herein.

M.      Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and  authorization or approval issued by any agency of the West Virginia State Government to the Debtor with respect to the Real Estate, and, all such licenses, permits, registrations,  authorizations and approvals are deemed to have been, and hereby are directed to be transferred to Purchaser as of the applicable Closing Date, except to the extent otherwise provided in the Purchase Agreement.

N.      At the Closing of the Sale, the Trustee shall pay ad valorem real estate taxes; shall pay HNB in the full amount of its lien against the Real Estate in the amount of $705,265.27, plus $60.07807 per diem after October 8, 2009, and shall pay Powell in the amount of its lien for post --petition financing as approved by prior order of this Court. After the Closing and pursuant to further orders of this Court, the balance of the Purchase Price paid to the Trustee shall be disbursed by the Trustee in the amounts as determined by the Court as follows:

8

BOOK 1147 PG 703

      (i)   Payment of Trustee's bona fide costs of the sale, including the Trustee's statutory fees, expenses and attorney's fees. Such fees and expenses are determined to be reasonable costs and expenses of preserving and disposing of the Real Estate for the benefit of creditors; and

      (ii)   Payment of any claims secured by valid liens or encumbrances on the Real Estate (other than inchoate mechanics liens that have not yet been finally determined); and

      (iii)   Payment of the remainder, if any, in accordance with any additional order of this Court.

    O.   A certified copy of this Order may be filed with the appropriate Clerk and/or recorded with the Recorder to act to cancel the liens and encumbrances of record.

    P.   The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order.

    Q.   The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

    R.   There were no brokers involved with the negotiation or consummation of the Purchase Agreement, and, therefore, neither the Trustee nor the Purchaser shall be liable for any brokers' commissions.

    S.   This Court shall retain jurisdiction over this transaction for purposes of enforcing the provisions of this Order and the Purchase Agreement.

9

BOOK 1147 PG 704

T.      Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this

Order shall be effective immediately upon entry.

U.      The Clerk is directed to transmit copies of the Order to the parties in interest.

ENTERED   10-19-2009

*Pat M. Flatley*

UNITED STATES BANKRUPTCY JUDGE

Submitted by:

ROBERT L. JOHNS   [WV S.B. # 5161]
WENDEL B. TURNER [WVSB 3823]
TURNER & JOHNS, PLLC
216 Brooks Street, Suite 301
Charleston, WV 25301
*Counsel for Robert L. Johns,*
Chapter 11 Trustee

Approved by:

/s/ Austin D. Saylor
Austin D. Saylor, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, DC 20026-3986
Counsel for EPA and the Corps

/s/Richard M. Francis
Richard M. Francis, Esq.
Bowles Rice McDavid Graff & Love LLP
600 Quarrrier Street P. O. Box 1386
Charleston WV 25325
Counsel for CIM

10

BOOK 1147 PG 705

/s/ Donald J. Epperly
Donald J. Epperly, Esq.
Steptoe & Johnson PLLC
P. O. Box 2190
Clarksburg, WV 26301
Counsel for Huntington National Bank

/s/ Joseph W. Caldwell
Joseph W. Caldwell, Esq.
Caldwell & Riffe
P. O. Box 4427
Charleston, WV 25364
Counsel for J. C. Powell

George J. Cosenza, Esq.
P. O. Box 4
Parkersburg, WV 26102
Counsel for Michael Johnson

C. Blaine Myers, Esq.
P. O. Box 1472
Parkersburg, WV 26102
Counsel for Larry George

/s/ Ronald P. Foster
Ronald P. Foster
P. O. Box 467
Scott Depot WV 25560

11

Exhibit  C

BEFORE THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY
REGION III
1650 Arch Street
Philadelphia, Pennsylvania 19103

|  |  |  |
|---|---|---|
| In The Matter of: | ) | |
| | ) | |
| Foster Farms, LLC | ) | Proceeding Under Section |
| | ) | 309(a) of the Clean Water |
| | ) | Act, 33 U.S.C. § 1319(a) |
| Property Located: | ) | |
| | ) | |
| Approximately 2,300 lf south of the | ) | |
| Intersection of West Virginia | ) | |
| Route 95 and West Virginia | ) | |
| Route 68 | ) | |
| Parkersburg, West Virginia  26101 | ) | ORDER FOR COMPLIANCE |
| | ) | |
| Respondent | ) | Docket No. CWA-03-2012-0070DW |

## I. **STATUTORY AUTHORITY**

1.    This Order for Compliance is issued under the authority vested in the United States
Environmental Protection Agency (EPA) by Section 309(a) of the Clean Water Act, 33
U.S.C. § 1319(a) ("CWA" or "Act"). The Administrator has delegated this authority to
the Regional Administrator of EPA Region III who in turn has redelegated it to the
Director of the Environmental Assessment and Innovation Division pursuant to
Delegation No. 2-22 (9/1/05).

## II. **ALLEGATIONS**

2.    Respondent is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. §
1362(5).

3.    Respondent, Foster Farms, LLC, is the owner of property located 2,300 linear feet south
of the intersection of West Virginia Route 95 and West Virginia Route 68 in Parkersburg,
Wood County, West Virginia (hereafter "the Site"), further identified on the attached map
labeled Exhibit "A." The Site contains unnamed tributaries to Neal Run which flows to
the Little Kanawha River, a navigable-in-fact body of water. The streams are "waters of
the United States" within the meaning of Section 502(7) of the Act, 33 U.S.C. §1362(7);
40 C.F.R. §232.2; 40 C.F.R. §122.2.

4.    On September 9, 2010, EPA performed a CWA Section 404 inspection at the original Neal Run Crossing Development (EPA Docket No. CWA-03-2009-0222DW). Posted at the entrance to the Neal Run Site was a billboard advertising parcels for sale by Foster Farms, LLC. Based on topographic contours depicted on the billboard, construction of Pad #4, located adjacent to the Neal Run Crossing Development, appeared to require the filling of several streams. See photo attached hereto as Exhibit "B." At the Site, EPA inspectors found that the area corresponding to Pad # 4 had been recently cleared and grubbed of trees and vegetation, resulting in the disturbance of aquatic resources at the Site.

5.    On information and belief, on or about July 2010 through September 2010, Respondent, or persons acting on behalf of Respondent, operated mechanized equipment, including a bulldozer, which resulted in the discharge of dredged and/or fill material to waters of the United States located on the Site. Respondent' activities include discharging fill into unnamed tributaries to Neal Run.

6.    The term 'fill material' within the meaning of 40 C.F.R. § 232.2, includes any pollutant which replaces portions of 'waters of the United States' with dry land or which changes the bottom elevation of a water body for any purpose.

7.    The equipment referenced in Paragraph 6, above, which has discharged dredged and/or fill material to "waters of the United States," constitutes a 'point source' within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14).

8.    Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of dredged and/or fill material from point sources to "waters of the United States" except in compliance with a permit issued by the Secretary of the Army under Section 404 of the Act, 33 U.S.C. § 1344.

9.    At no time during the discharge of dredged and/or fill material to the "waters of the United States" located on the Site did the Respondent have a permit from the Secretary of the Army as required by Section 404 of the Act, 33 U.S.C. § 1344.

10.    Respondent, by discharging dredged and/or fill material to the "waters of the United States" without authorization, has violated Section 301(a) of the Act, 33 U.S.C. § 1311(a).

### III.  ORDER FOR COMPLIANCE

Therefore, this _24ᵀᴴ_ day of _JANUARY_ , 2012, the Respondent is hereby ORDERED, pursuant to Section 309(a) of the Clean Water Act, 33 U.S.C. § 1319(a), to do the following:

11.     Cease and desist all discharges without a permit to waters of the United States at the Site.

12.     Within forty-five (45) days of the effective date of this order, Respondent shall submit a detailed restoration plan to EPA for review and approval. The plan must include measures to restore impacted streams identified in the Wetland and Stream Delineation Report, dated March 10, 2011, to pre-disturbance grade and conditions.

13.     After review of the restoration plan, EPA will: a) approve the plan, in whole or in part; b) approve the plan upon specified conditions; c) modify the plan to cure any deficiencies; d) disapprove the plan, in whole or in part, or e) any combination of the above.

14.     If EPA disapproves all or part of the restoration plan, Respondent shall, within fourteen (14) days of receipt of EPA's disapproval, correct the deficiencies and resubmit the plan for approval. EPA retains the right, if the plan is not approved as provided in this Order, to order restoration in accordance with a plan developed by EPA. Upon approval of the plan (either with or without conditions or modifications by EPA), Respondent shall implement the plan as approved or modified by EPA as provided below. All restoration work shall be completed within ninety (90) days of EPA's approval of the plan.

15.     Respondent's failure to complete the work in a manner consistent with this Order shall be deemed a violation of this Order.

16.     The restoration plan and all other correspondence should be sent to:

> Stephanie Andreescu
> Environmental Scientist (3EA30)
> United States Environmental Protection Agency
> 1650 Arch Street
> Philadelphia, PA 19103-2029

17.     Respondent's compliance with the terms of this Order shall not relieve Respondent of its obligation to comply with all applicable provisions of the Clean Water Act or any other Federal, State or local law or regulation. Issuance of this Order is not an election by EPA to forego any civil or criminal action otherwise authorized by the Clean Water Act. EPA reserves the right to seek any remedy available under the law that it deems appropriate to the violations described herein. Compliance with this Order shall not be a defense to any action commenced pursuant to such authorities.

18.     Violation of the terms of this Order may result in further EPA enforcement action including, but not limited to, imposition of administrative penalties, pursuant to 33 U.S.C. § 1319(g) as modified by the Debt Collection Procedures Act of 1996 and the subsequent Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, and/or initiation of judicial proceedings that allow for civil penalties pursuant to 33 CFR § 1319(b) and (d) as modified by the Debt Collection Procedures Act, and/or for the

criminal sanctions of imprisonment and fines of up to $50,000 per day, 33 U.S.C. § 1319(c).

## IV. EFFECTIVE DATE

19.     The effective date of this Order shall be the date of receipt of the executed document.

## V. NOTICE OF INTENT TO COMPLY

20.     Within ten (10) days of the effective date of this Order, Respondent shall submit to EPA a Notice of Intent to Comply with the Order. The Notice shall be submitted to:

> Stephanie Andreescu
> Environmental Scientist (3EA30)
> United States Environmental Protection Agency
> 1650 Arch Street
> Philadelphia, PA 19103-2029

Date: ___1│24│2012___

John R. Pomponio, Director
Environmental Assessment
and Innovation Division

## CERTIFICATE OF SERVICE

I hereby certify that on this day I caused to be filed with the Regional Hearing Clerk, EPA Region III, the original Administrative Order for Compliance, and that copies of this document were sent to the following individuals in the manner described below:

By hand delivery:

Regional Judicial Officer
Renee Sarajian
EPA Region III
1650 Arch St.
Philadelphia, PA 19103

By first class, certified mail, return receipt requested:

Foster Farms, LLC
c/o Mr. Ron Foster
P.O. Box 467
Scott Depot, WV 25560

Date: 1\24\2012

By: _Stephanie Andreescu_ for
     Pamela Lazos
     Sr. Asst. Regional Councel
     US EPA Region III



**Exhibit A**
CWA-03-2012-0070DW



Exhibit  D



**DEPARTMENT OF THE ARMY**
HUNTINGTON DISTRICT, CORPS OF ENGINEERS
502 EIGHTH STREET
HUNTINGTON, WEST VIRGINIA 25701-2070

REPLY TO
ATTENTION OF

FEB 2 2 2012

Regulatory Division
South/Transportation Branch
LRH-2006-2326 LKR

Mr. Ron Foster
Marketing and Planning Specialist, LP
P.O. Box 364
Scott Depot, West Virginia 25560

Dear Mr. Foster:

I refer to a delineation report dated March 23, 2011, titled "Wetland and Stream Delineation Report – Neal Run Crossing Pad #4 and Pad #5", submitted on your behalf by Randolph Engineering, Inc., and additional information received on July 26, 2011. You are requesting U.S. Army Corps of Engineers (USACE) verification of jurisdictional waters of the United States (U.S.) at a 51.5-acre parcel within unnamed tributaries of Neal Run, approximately 0.75 mile northeast of the Town of Lubeck, in Wood County, West Virginia (latitude 39.24314°, longitude -81.60984°).

The USACE authority to regulate jurisdictional waters of the U.S. is based on the definitions and limits of jurisdiction contained in 33 CFR 328. Navigable waters, their tributaries and adjacent wetlands are waters of the U.S. subject to the provisions of Section 404 of the Clean Water Act (CWA). The determination of jurisdiction for streams on-site is based on the presence of an ordinary high water (OHW) mark and evidence indicating the streams exhibit surface water connections to tributary systems to navigable waters. The USACE regulates streams up to the point where they no longer exhibit an OHW mark.

Based on the provided report, and a site visit conducted on July 26, 2011, we have determined the proposed project area contains approximately 4,800 linear feet of jurisdictional streams as indicated in the attached table and information. Therefore, the delineation report is accurate and hereby verified. This jurisdictional verification is valid for a period of five years from the date of this letter unless new information warrants revision of the determination before the expiration date.

This verification letter constitutes an approved jurisdictional determination (JD). If you are not in agreement with the approved JD you may make an administrative appeal under 33 CFR 331. Enclosed you will find a Notification of Appeal Process (NAP) fact sheet and Request for Appeal (RFA) form. If you request to appeal this decision, you must submit a completed RFA form to the Great Lakes and Ohio River Division Office at the following address:

Printed on ♲ Recycled Paper

-2-

Review Officer
U.S. Army Corps of Engineers
Great Lakes and Ohio River Division
550 Main Street, Room 10032
Cincinnati, OH  45202-3222

In order for an RFA to be accepted by the Corps, the Corps must determine that it is complete, that it meets the criteria for appeal under 33 CFR Part 331.5, and that it has been received by the Division Office within 60 days of the date of the NAP.  Should you decide to submit an RFA form, it must be received at the above address by _____APR 2 3 2012_____.  **It is not necessary to submit an RFA form to the Division office if you do not object to the decision in this letter.**

A Department of the Army authorization is required prior to the discharge of dredged or fill material into the identified jurisdictional waters of the U.S. at the proposed project area.  Based on correspondence from the United States Environmental Protection Agency (USEPA) received in this office on January 30, 2012, the USEPA is the lead agency for enforcement action related to the unauthorized discharge of fill material at this property.  Upon completion of requirements set forth by the USEPA, any request for after-the-fact authorization must be accompanied by a completed tolling agreement (copy enclosed).  If you have any questions concerning the above, please contact Richard Hemann of the South/Transportation Branch at (304) 399-5710.

Sincerely,

Michael E. Hatten
Acting Chief, South/Transportation Branch

Enclosures

Copy Furnished:

Ms. Stephanie Andreescu
United States Environmental Protection Agency
1650 Arch Street
Philadelphia, Pennsylvania 19103-2029

Mr. Michael Zeto
West Virginia Department of Environmental Protection
601 57th Street, SE
Charleston, West Virginia 25304

-3-

| 2006-2326 Jurisdictional Streams | | | | | | |
|---|---|---|---|---|---|---|
| Reach | Designation(s) | RPW | Classification | Length | Latitude | Longitude |
| RR1 | SAR3c | N | Ephemeral | 330' | 39.2436 | -81.6121 |
| RR2 | SAR3b1+ SAR3b2 | N | Ephemeral | 555' | 39.2438 | -81.6105 |
| RR3 | SAR3a1+SAR3a2 | N | Ephemeral | 700' | 39.2438 | -81.6089 |
| RR4 | SAR3 | Y | Intermittent-Seasonal | 740' | 39.2431 | -81.6110 |
| RR5 | SAR1+SAR1-1 | Y | Intermittent-Seasonal | 915' | 39.2424 | -81.6089 |
| RR6 | SAR2d | N | Ephemeral | 230' | 39.2423 | -81.6067 |
| RR7 | SAR2c | N | Ephemeral | 260' | 39.2442 | -81.6063 |
| RR8 | SAR2b | N | Ephemeral | 245' | 39.2438 | -81.6060 |
| RR9 | SAR2a | N | Ephemeral | 215' | 39.2432 | -81.6058 |
| RR10 | SAR2 | Y | Intermittent-Seasonal | 610' | 39.2433 | -81.6062 |

| | |
|---|---|
| Total Intermittent-Seasonal | 2,265' |
| Total Ephemeral | 2,535' |
| **Total** | **4,800'** |



Exhibit  E

Received 4/23/12 - slc

| Applicant: Marketing and Planning Specialist, LP | File Number: 2006-2326 | Date: |
|---|---|---|
| Attached is: | | See Section below |
| | INITIAL PROFFERED PERMIT (Standard Permit or Letter of permission) | A |
| | PROFFERED PERMIT (Standard Permit or Letter of permission) | B |
| | PERMIT DENIAL | C |
| X | APPROVED JURISDICTIONAL DETERMINATION | D |
| | PRELIMINARY JURISDICTIONAL DETERMINATION | E |

**A: INITIAL PROFFERED PERMIT:** You may accept or object to the permit.

* **ACCEPT:** If you received a Standard Permit, you may sign the permit document and return it to the district engineer for final authorization. If you received a Letter of Permission (LOP), you may accept the LOP and your work is authorized. Your signature on the Standard Permit or acceptance of the LOP means that you accept the permit in its entirety, and waive all rights to appeal the permit, including its terms and conditions, and approved jurisdictional determinations associated with the permit.

* **OBJECT:** If you object to the permit (Standard or LOP) because of certain terms and conditions therein, you may request that the permit be modified accordingly. You must complete Section II of this form and return the form to the district engineer. Your objections must be received by the district engineer within 60 days of the date of this notice, or you will forfeit your right to appeal the permit in the future. Upon receipt of your letter, the district engineer will evaluate your objections and may: (a) modify the permit to address all of your concerns, (b) modify the permit to address some of your objections, or (c) not modify the permit having determined that the permit should be issued as previously written. After evaluating your objections, the district engineer will send you a proffered permit for your reconsideration, as indicated in Section B below.

**B: PROFFERED PERMIT:** You may accept or appeal the permit

* **ACCEPT:** If you received a Standard Permit, you may sign the permit document and return it to the district engineer for final authorization. If you received a Letter of Permission (LOP), you may accept the LOP and your work is authorized. Your signature on the Standard Permit or acceptance of the LOP means that you accept the permit in its entirety, and waive all rights to appeal the permit, including its terms and conditions, and approved jurisdictional determinations associated with the permit.

* **APPEAL:** If you choose to decline the proffered permit (Standard or LOP) because of certain terms and conditions therein, you may appeal the declined permit under the Corps of Engineers Administrative Appeal Process by completing Section II of this form and sending the form to the division engineer. This form must be received by the division engineer within 60 days of the date of this notice.

**C: PERMIT DENIAL:** You may appeal the denial of a permit under the Corps of Engineers Administrative Appeal Process by completing Section II of this form and sending the form to the division engineer. This form must be received by the division engineer within 60 days of the date of this notice.

**D: APPROVED JURISDICTIONAL DETERMINATION:** You may accept or appeal the approved JD or provide new information.

* **ACCEPT:** You do not need to notify the Corps to accept an approved JD. Failure to notify the Corps within 60 days of the date of this notice, means that you accept the approved JD in its entirety, and waive all rights to appeal the approved JD.

* **APPEAL:** If you disagree with the approved JD, you may appeal the approved JD under the Corps of Engineers Administrative Appeal Process by completing Section II of this form and sending the form to the division engineer. This form must be received by the division engineer within 60 days of the date of this notice.

**E: PRELIMINARY JURISDICTIONAL DETERMINATION:** You do not need to respond to the Corps regarding the preliminary JD. The Preliminary JD is not appealable. If you wish, you may request an approved JD (which may be appealed), by contacting the Corps district for further instruction. Also you may provide new information for further consideration by the Corps to reevaluate the JD.

**REASONS FOR APPEAL OR OBJECTIONS:** (Describe your reasons for appealing the decision or your objections to an initial proffered permit in clear concise statements. You may attach additional information to this form to clarify where your reasons or objections are addressed in the administrative record.)

See Attached :

**ADDITIONAL INFORMATION:** The appeal is limited to a review of the administrative record, the Corps memorandum for the record of the appeal conference or meeting, and any supplemental information that the review officer has determined is needed to clarify the administrative record. Neither the appellant nor the Corps may add new information or analyses to the record. However, you may provide additional information to clarify the location of information that is already in the administrative record.

| If you have questions regarding this decision and/or the appeal process you may contact: | If you only have questions regarding the appeal process you may also contact: |
|---|---|
| Ginger Mullins, Chief, Regulatory Branch, 304-399-5710<br>Rebecca Rutherford, Chief, North Regulatory Section, 304-399-5210<br>Mark Taylor, Chief, Energy Resource Section, 304-399-5610<br>LuAnne Conley, Chief, South Regulatory Section, 304-399-5710<br>Address:  U.S. Army Corps of Engineers<br>　　　　　　Regulatory Branch<br>　　　　　　502 8th Street<br>　　　　　　Huntington, WV  25701 | Appeals Officer<br>U.S. Army Corps of Engineers<br>Great Lakes and Ohio River Division<br>550 Main Street, Room 10032<br>Cincinnati, OH  45202-3222<br>TEL (513) 684-6212; FAX (513) 684-2460 |

**RIGHT OF ENTRY:** Your signature below grants the right of entry to Corps of Engineers personnel, and any government consultants, to conduct investigations of the project site during the course of the appeal process. You will be provided a 15 day notice of any site investigation, and will have the opportunity to participate in all site investigations.

| _Ron Foster_<br>Signature of appellant or agent. | Date:<br>4-20-12 | Telephone number:<br>304-206-7901 |
|---|---|---|

Exhibit F



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION III**
**1650 Arch Street**
**Philadelphia, Pennsylvania 19103-2029**

APR 0 5 2012

Mr. Ron Foster
Marketing and Planning Specialist, LP
P.O Box 364
Scott Depot, West Virginia 25560

      Re:    EPA Docket No. CWA-03-2012-0070DW
               Neal Run Crossing Pad #4

Dear Mr. Foster:

      The U.S. Environmental Protection Agency (EPA) has reviewed the Wetland and Stream Delineation Report for Pads #4 and #5, dated March 10, 2011, provided by Randolph Engineering (Randolph) to the U.S. Army Corps of Engineers' Huntington District (Corps) on behalf of Marketing and Planning Specialist, LP. Due to the issuance of EPA's Order for Compliance dated January 24, 2012 for the site designated as Neal Run Crossing Pad #4 (the Site), the EPA is superseding the Corps' authority to verify the jurisdictional status of aquatic resources at the Site.

      The wetland and stream delineation report identifies a total of eleven streams at Pads #4 and #5. Three of the streams, totaling 1,965 linear feet (lf) were classified in the report as intermittent (SAR 1, SAR 2, and SAR 3) and eight of the streams, totaling 2,835 lf, were classified as ephemeral (SAR 1-1, SAR 2a, SAR 2b, SAR 2c, SAR 2d, SAR 3a, SAR 3b, and SAR 3c). Based upon information provided by Randolph and a site visit conducted by the Corps on July 26, 2011, the EPA classifies SAR 1-1 as an extension of SAR 1; together SAR 1 and SAR 1-1 total approximately 915 lf.

      The EPA considers SAR 1, SAR 2, and SAR 3 to be intermittent features that predictably flow during some portion of every non-drought year (RPWs) and are thus jurisdictional waters of the United States. The EPA considers the streams classified as "ephemeral", with the exception of SAR 1-1, to be jurisdictional based on a significant nexus between these streams and the nearest traditional navigable water (TNW) located approximately 3.2 miles downstream. These streams total approximately 2,535 lf.

      The EPA concurs with Randolph Engineering's professional opinion that "the eleven streams are believed to be jurisdictional 'waters' and are regulated by the Corps under the CWA" and verifies that the 4,800 lf of stream channel on site, which include both intermittent and ephemeral streams, are jurisdictional. EPA also agrees that fill has been discharged into approximately 1,970 lf of stream channel due to construction activities for Pad #4.

♻ *Printed on 100% recycled/recyclable paper with 100% post-consumer fiber and process chlorine free.*
*Customer Service Hotline: 1-800-438-2474*

If you disagree with the EPA's decision on this matter, please provide reasoning as to why the streams at the Site are not jurisdictional resources. If you have any questions or concerns, please feel free to contact me at (215) 814-2747 or andreescu.stephanie@epa.gov.

Sincerely,

*Stephanie Andreescu*

Stephanie Andreescu
Office of Environmental Programs

cc:     Ms. Luanne Conley, USACE, Huntington District
        Mr. Rick Hemann, USACE, Huntington District

♻ *Printed on 100% recycled/recyclable paper with 100% post-consumer fiber and process chlorine free.*
*Customer Service Hotline: 1-800-438-2474*

Exhibit G



**DEPARTMENT OF THE ARMY**
U.S. ARMY ENGINEER DIVISION, GREAT LAKES AND OHIO RIVER
CORPS OF ENGINEERS
550 MAIN STREET, ROOM 10023
CINCINNATI, OHIO 45202-3222

REPLY TO
ATTENTION OF

Mr. Ron Foster
Marketing and Planning Specialist, LP
P.O. Box 364
Scott Depot, West Virginia 25560

29 May 2012

Dear Mr. Foster:

On April 23, 2012, I received your Request for Appeal (RFA) of an approved jurisdictional determination issued by the Huntington District Corps of Engineers (Corps file no. LRH-2006-2326). You wish to appeal the District's determination related to waters identified on a 51.5-acre parcel in the Town of Lubeck, Wood County, West Virginia.

Your RFA has been reviewed and I have determined that it is not acceptable because it is not associated with an appealable action. The final Federal jurisdictional determination, issued by the U.S. Environmental Protection Agency (EPA) on April 5, 2012 (attached), supersedes the Corps determination. Regulations at 33 Code of Federal Regulations (CFR) Part 331 define approved jurisdictional determinations subject to appeal as "a Corps document...". The jurisdictional determination you are appealing is not an appealable action within the meaning of the Corps appeal regulations.

A copy of this letter has been provided to Ms. Ginger Mullins of the Huntington District Corps of Engineers.

If you have any questions, you may contact Ms. Suzanne Chubb, Regulatory Program Manager, via telephone at (513) 684-7261, e-mail at Suzanne.L.Chubb@usace.army.mil, or in writing at the above address.

Sincerely,

*Margaret W. Burcham*

Margaret W. Burcham
Brigadier General, U.S. Army
Commanding

Exhibit H



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION III**
**1650 Arch Street**
**Philadelphia, Pennsylvania 19103-2029**

June 27, 2012

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Ron Foster
Foster Farms, LLC
Marketing and Planning Specialists, LP
P.O. Box 364
Scott Depot, West Virginia 25560

     Re:   <u>Foster Farms Site</u>

Dear Mr. Foster:

    We have received your letters of June 5, 2012 and June 11, 2012 written in response to EPA's Show Cause letter dated May 30, 2012.  As you requested in your June 5, 2012 letter, ▆▆▆▆▆▆▆▆ ▆▆▆▆▆ A document for your review.

    EPA acknowledges receipt of engineering drawings regarding mitigation associated with Pads 4 and 5, dated March 30, 2012, and provided in response to EPA Docket No. CWA-03-2012-0070DW, issued on January 24, 2012.  In order to properly review and comment upon these drawings, EPA requires a narrative description of the proposed mitigation. Your letter states that there has been no communication from EPA regarding the disposition of this mitigation plan, however, without the narrative, EPA is unable to reach any conclusions as to the sufficiency of the plan.  Please provide this information within fourteen (14) days of receipt of this letter.  EPA will then render an opinion regarding the feasibility of the mitigation plan.

    Your letter also states that you have requested information from EPA on numerous occasions and have not yet received it.  The information you requested had to do with the jurisdictional determination and significant nexus at the Site.  This information was provided to you in a letter dated March 21, 2012 by the Huntington Corps District.  EPA has no additional information to provide to you in this regard and is basing its jurisdictional determination upon the extensive information gathered by the Corps as well as EPA's visits to the Site.  If there is a specific document to which you are referring, please advise Ms. Andreescu.

    With respect to your contention that there are no violations at the Site and that EPA lacks jurisdiction, your consultant, Randolph Engineering's report of March 10, 2011, concluded that there were jurisdictional waters on the Site that had been impacted by many feet of fill. In addition, the

♻ *Printed on 100% recycled/recyclable paper with 100% post-consumer fiber and process chlorine free.*
*Customer Service Hotline: 1-800-438-2474*

various corroborating information such as aerial photographs and NWI maps, taken in conjunction with several Site visits have demonstrated that the channels in question are clearly jurisdictional. EPA agrees with Randolph Engineering as well as the Corps' initial determination regarding the Site being jurisdictional.

Your letter of June 11, 2012 requests a meeting with EPA. We invite you to meet with us in our Philadelphia office. If you like we can go over all the information provided by the Corps as well as that gathered during EPA's Site visits. If you would prefer a conference call in this matter, that can also be arranged. However as a practical matter, we request an opportunity to review the missing narrative from the restoration plan prior to any meeting. In this manner, we can be assured our call will be a productive one. In the interim, please note that EPA reserves all of its enforcement rights as set forth in the Show Cause letter dated May 30, 2012.

Thank you for your attention to this matter. Please contact at (215) 814-2658 to make arrangements for a meeting or teleconference.

Very truly yours,

Pamela J. Lazos
Senior Assistant Regional Counsel
US EPA Region III

Print                                                                                  Page 1 of 1

**From:** Lazos.Pamela@epamail.epa.gov (Lazos.Pamela@epamail.epa.gov)
**To:** jmccoy@belttransfer.com; ronpfoster@yahoo.com;
**Date:** Wed, June 8, 2011 11:16:06 AM
**Cc:** Lutte.Todd@epamail.epa.gov; Chin.Stephanie@epamail.epa.gov;
**Subject:** Foster Farms

Hello All,

This will serve to confirm that after separate discussions with Mr. Foster and Mr. McCoy, it has been agreed that
Mr. McCoy will perform the work required under the Administrative Order without a separate written agreement as
between the parties.  After the work has been completed, Mr. Lutte and/or Ms. Chin will inspect the Site and sign
off on the restoration work, assuming it has been completed to EPA's satisfaction.  If at that time, EPA finds that
any areas of the property have been impacted that were not the intent of the AO, then EPA will ask CIM to restore
those areas before signing off on the restoration work.  I trust that this will not be an issue, and note it only for
purposes of moving this matter along.

To reiterate, the remaining area of the Site, other than the restoration area, will be left in the same condition as it
is when CIM arrives to do the restoration work.

Please advise EPA when all the work has been completed so we may conduct a post-restoration work inspection.


Thank you and let me know if there are any other issues you would like to discuss.  Perhaps we can schedule a
conference call to resolve those potential issues.  My number is (215) 814-2658.

Pam Lazos

Exhibit I - L

Subject:   Jurisdictional Determination Letter Dated 11-26-2012

From:      Ron R Foster (ronpfoster@yahoo.com)

To:        andreescu.stephanie@epa.gov;

Cc:        ronpfoster@yahoo.com; lazos.pamela@epamail.epa.gov;

Date:      Friday, January 18, 2013 5:33 PM

Stephanie,

We have just received the information under FOIA requested by myself in a letter dated 12-10-2012.
After reviewing the information provided there is nothing in the documents provided that changes our
conclusions that channels are NOT jurisdictional. EPA and USACE have failed to overcome the
threshold of "Significant Nexus" required under the Rapanos decision. The documents only utilize
proximity to the TNW as a basis for "has the capacity to significantly affect the chemical, physical and
biological integrity of the TNW". That basis is not sufficient to overcome the more than "speculative"
requirement as outlined by Kennedy in the Rapanos decision.

EPA has superceded the USACE in this matter and has therefore prevented us from having an avenue
for appeal. We are formally requesting an appeal on this determination. We further request under the
Freedom of Information Act the EPA's standard written policies and procedures for appeal of
juridictional determinations made by EPA when they have superceded the USACE. Also under this
FOIA we request that if there is no such policies and procedures that the EPA state that none are
available. We further request all email addresses utilized by Stephanie Andreescu, Todd Lutte, and
Richard Hemann from their office computers or other computers used in connection with their duties for
EPA not limited to the primary email address assigned to them by EPA.

Sincerely,

Ron Foster
Marketing & Planning Specialists, LP

(Copy)

Page 1 of 2

Answers
To Jeffrey
Lapp
le Her
DTD 9-30-12

**Subject:** Questions regarding upcoming conference call

**From:** Ron R Foster (ronpfoster@yahoo.com)

**To:** lazos.pamela@epa.gov; Lazos.Pamela@epamail.epa.gov;

**Cc:** bturman@jbtengineering.com; jw@randolphengineering.com; dmetheny@foxengineering.net;

**Date:** Thursday, November 8, 2012 12:17 PM

Hello Pam,

My group including Brad Turman with Turman Engineering, Jacob White with Randolph Engineering and Dan Meatheny with Fox Engineering will be available the week of November 26th to discuss our project with you. We may also include one of our attorneys in on the meeting as well. Please provide specific dates and times that your staff will be available so we may finalize a time before one of us gets scheduled elsewhere.

To expedite the process we request a list of issues that EPA would like to discuss in advance of the meeting such that we may properly prepare.

Here are some questions that we would like to have answered before the meeting:

First, it is not possible to provide an appropriate mitigation plan without the Jurisdictional Determination on the Pads 1 through 3 portion of the property. It has been requested multiple times and expected by Jeffrey Lapp to be delivered to us the latter part of June of this year. It is now more than 4 months past that date. The original request was made in June of 2011 more than 16 months ago. Please provide us with an update on your progress on the JD

Second, in the last paragraph of a letter dated 9-20-2012 from Jeffrey Lapp to myself it states: Currently the submitted plan mitigation does not seem to adequately compensate for the loss of functions and values of impacted waters. It appears that the site selection may not be appropriate considering the current site conditions and constraints." Provided we follow the guidelines outlined in the "West Virginia Stream and Wetlands Valuation Metric" will our revised mitigation plan be accepted if the naturalized stream remains in the approximate location as shown in our original proposal? Will mitigation along the fill slope (in a step pool configuration) be accepted if Redi-Rock is removed and native material is used in its place?
If this configuration (horizontal and vertical) will not be acceptable, what options/alternatives are available that will allow us the opportunity to complete our earthwork operations/construction of PAD 4 and provide necessary mitigation?

Third, our position is that EPA does not have jurisdiction and the Approved Jurisdictional Determination forms have not only been altered but that they are also flawed. We request an appeal of the determination and also request a copy of your written appeal process. This request is being made under the Freedom of Information Act. It is a valid request in light of the fact that EPA denied us of our right to appeal the original USACE determination by superceding them in this matter.

Fourth, our position is that because EPA does not have jurisdiction the mitigation plan requested is not required and we reserve the right to withdraw any mitigation plan if litigation is required to finally resolve this issue.

Fifth, please provide any site specific chemical and or biological data related to our site that idicates any impact on the nearest TNW. If there is none please state so. This biological and chemical data should be specific to our site as the mitigation plan that you request from us is also to be site specific.

Sixth, please provide any qualitative or quantitative analysis upon which EPA bases its belief that our proposed naturalized stream construction will "primarily function as hydrologic conveyance channels and will not adequately replace lost stream functions".

Seventh, please provide qualitative or quantitative analysis upon which EPA bases the following; "EPA does not consider groin ditches to be acceptable mitigation as there is a lack of evidence demonstrating that these artificial, rock lined structures effectively replace lost stream functions. Provided the step pool configuration proposed along the PAD 4 fill slope will use native rock in place of Redi-Rock cascade contruction and additionally eliminate the rock lined pool, which will expose native material, will this configuration be acceptable? Further please provide evidence in the possession of EPA or USACE that demonstrates that "these artificial, rock lined structures" do not effectively replace lost stream functions. Please review Flexamat product lines at flexamat.com to see if EPA would accept it as an alternate to the rock groins shown on our mitigation plan and provide written comment on the product. Could this product be utilized in conjunction with other naturalized stream methods?

Eighth, our proposed ditch associated with Phase 1 operations does bypass the sediment pond, however the sediment pond remains as a functioning unit. Does that fully answer the question provided in Jeffrey Lapp's letter in regards to the proposed ditch alignment?

Ninth, does EPA have in its possession any plans to control invasive species that are on other projects in the same general area?

Tenth, please provide information that EPA has in its possession that shows the property in question has ever had any type of monitoring plan prior to 2009, if not please state so. Does the EPA have any data on the subject property that idicates it had 80% survival rate of existing vegetation, 400 stems per acre, 85% aerial coverage for herbaceous stratum at the time of purchase in November of 2009 or before? If so please provide. If not please indicate so.

Eleventh, is the EPA suggesting that we title a portion of our land to others as a precondition to allowing additional work at the site? To whom is the EPA suggesting that we provide conservation easements to. What type of restrictive covenants is EPA suggesting?

Thank you for your cooperation,

Ron Foster

Marketing& Planning Specialists LP
PO Box 364
Scott Depot, West Virginia 25560

July 5, 2013

Mark Bolender, Esq.
Assistant Regional Counsel Region III
U. S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA 19103-2029

RE:    EPA Docket No. CWA-03-2012-00070DW
       ORDER FOR COMPLIANCE - Foster Farms Site

Dear Mr. Bolender,

We are in receipt of a letter dated June 17, 2013 from Pam Lazos where she notifies us that you are now the attorney assigned to the above listed case. We are looking forward to working with you to resolve the remaining issues related to the case.

The very first thing we need is to have our right to an appeal addressed. We are still awaiting EPA's formal written process for appeal in circumstances where EPA has superceded USACE. We have formally requested this documentation on multiple occasions including through the use of FOIA yet as of today's date we have not received a copy of the written process.

On November 8th, 2012 Pam Lazos was sent a list of questions along with answers from us regarding a letter from Jeffrey Lapp to us dated 9-30-2012. As of today's date most of our questions remain unanswered. Please provide written responses to all questions raised in that communication between me and her. A copy has been enclosed for your convenience.

To date no information provided by EPA or USACE shows any channels on our property are jurisdictional. In fact just the opposite is true even though EPA has claimed jurisdiction. Documentation provided by the USACE and EPA clearly shows that the channels in question are NOT jurisdictional when Rapanos is applied. Once again we are requesting that EPA remove the Administrative Order so we can restart our project under the permit provided by the State of West Virginia.

Additionally we need your assistance in another matter. We have made multiple attempts to get some assistance from the Ombudsman's office to help resolve this issue as well. Although there mission statement clearly states that they are to help "reduce the regulatory burden on small business" we have been unable to make contact with anyone in the office. When we contact them by phone a "contract firm" answers the phone and takes information but there is no follow up by

{C2370699.1}

*Letter to Ms. Lazos*
July 13, 2012
Page 2

the Ombudsman's office. We have written two letters by US mail to Joan B. Rogers as well with no reply. Please help us with information where we may actually have human contact with the Ombudsman's office.

Sincerely,

Ron Foster

Marketing& Planning Specialists LP
PO Box 364
Scott Depot, West Virginia 25560

August 30, 2013

Mark Bolender, Esq.
Assistant Regional Counsel Region III
U. S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA 19103-2029

RE:   EPA Docket No. CWA-03-2012-00070DW
      ORDER FOR COMPLIANCE - Foster Farms Site

Dear Mr. Bolender,

We have received no reply from you related to our letter dated July 5, 2013. In that letter
we requested answers to questions that were presented to Ms Pam Lazos on November 8th, 2012
in an email to her. EPA requires us to meet deadlines in a timely manner sometimes as short as a
few days, normally in thirty days yet I doubt the agency would allow me to not respond to a
request from November 8th, 2012 until now.

The issues related to the EPA Docket No. above have dragged on far too long. We
requested the standard written policies and procedures that EPA has in place for an appeal in a
situation like ours where EPA has superceded the USACE months prior. In fact we did a FOIA
request through Ms Stephanie Andreescu on January 18, 2013 asking for those policies. EPA is
in violation of FOIA for not providing the documents in the time frame required. Once again we
request the written policies and procedures for appealing EPA's jurisdictional determination. If
EPA does not have them, we request that you state so in writing.

The recent ruling by the US Supreme Court in the Sackett case requires that EPA offer an
appeal process. EPA has not provided us with an avenue for appeal and is therefore not in
compliance with Sackett. We are formally requesting answers to the questions presented to Ms
Lazos outlined above and to our FOIA request for written policies and procedures for appeal.

Finally we have hired a third engineering firm to review the area in question. GAI
Consultants, Inc. out of Charleston West Virginia has arrived at the same conclusions that the
two previous qualified engineering firms did. The conclusion is that when applying Raponos
relatively permanent flow standard to our property, the channels in question are NOT
jurisdictional. A copy of this report is enclosed for your review. Based upon the overwhelming
evidence we have presented in this matter and considering the fact that your own documentation
clearly does not reach the threshold required to overcome the "speculative" or "significant

{C2370699.1}

*Letter to Ms. Lazos*
July 13, 2012
Page 2

nexus" requirements we request you have the Administrative Order lifted so we may go back to work under our West Virginia DEP permit.

We will allow 30 days for a formal response from EPA before proceeding to have this issue resolved by any other means at our disposal.

Sincerely,

Ron Foster

Cc: Shawn Garvin
    Congressman David McKinley

{C2370699.1}

Exhibit M



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION III**
**1650 Arch Street**
**Philadelphia, Pennsylvania 19103-2029**

OCT 2 5 2013

Mr. Ronald Foster
Marketing & Planning Specialists Limited Partnership
PO Box 364
Scott Depot, West Virginia 25560

      Re:    EPA Docket No. CWA-03-2012-0070DW
              Order for Compliance - Foster Farms Site

Dear Mr. Foster:

    This letter is in response to your letters dated July 5, 2013 and August 30, 2013. Regarding your request for written policies and procedures governing appeals of EPA jurisdictional determinations, courts have consistently ruled that such jurisdictional determinations are not "final" agency actions, and therefore not subject to judicial review. See, for example, *Hawkes Co. v. United States Army Corps of Eng'rs*, 2013 U.S. Dist. LEXIS 107858 (D. Minn. Aug. 1, 2013); *Belle Co., LLC v. United States Army Corps of Eng'rs*, 2013 U.S. Dist. LEXIS 27546 (M.D. La. Feb. 28, 2013); and *Fairbanks N. Star Borough v. United States Army Corps of Eng'rs*, 543 F.3d 586 (9th Cir. 2008). EPA, therefore, does not grant appeals of jurisdictional determinations and no such policies or procedures exist.

    EPA has reviewed the reports prepared by Fox Engineering and GAI Consultants that you have submitted regarding the waters located on the Site. After careful consideration, EPA finds both reports to be unpersuasive and declines to withdraw the above-captioned Order.

                          Regards,

                          Mark Bolender
                          Senior Assistant Regional Counsel

Exhibit  N



**U.S. Department of Justice**

Environment and Natural Resources Division

*Environmental Defense Section*
*P.O. Box 7611*
*Washington, DC 20044*

*Telephone (202) 514-2219*
*Facsimile (202) 514-8865*

May 8, 2014

Mr. Ronald P. Foster
4847 Teays Valley Road
Scott Depot, WV 25560

   Re: Unauthorized discharges of dredged and fill material at Neal Run Crossing Pad 4

Dear Mr. Foster:

   As you know, the United States Environmental Protection Agency (EPA) has determined that unauthorized discharges of dredged and fill materials have been made to waters of the United States at the property known as Neal Run Crossing Pad 4, in Parkersburg, West Virginia (hereinafter referred to as the Site). Those discharges have now been referred for potential civil prosecution to the United States Department of Justice, Environmental Defense Section. I am the attorney who has been assigned to address this matter and, if appropriate, bring suit against those persons or entities believed to be responsible for the unlawful discharges at the Site, including Foster Farms, LLC; Marketing & Planning Limited Partnership; and yourself.

   Based upon the available information, the United States believes that the above-referenced unauthorized discharges of dredged and fill material by, *inter alia*, Foster Farms, LLC (of which I understand you are the principle) are violations of the Clean Water Act (CWA). Section 301 of the CWA prohibits the discharge of a "pollutant" into "waters of the United States" without a permit issued under section 404 of the CWA. 33 U.S.C. §§ 1311(a), 1344, 1362. "Persons" include individuals as well as corporations, 33 U.S.C. § 1362(5), and section 301 applies to persons with control over unlawful activities, as well as the persons who actually perform those activities. *See United States v. Lambert*, 915 F. Supp. 797, 802 (S.D. W. Va. 1996). A "pollutant" is any "dredged or fill material," such as rock or dirt, *see* 33 U.S.C. §§ 1344(a), 1362(6), and a "point source" includes "any discernible, confined, and discrete conveyance," such as a bulldozer or other earthmoving equipment, *see* 33 U.S.C. § 1362(14).

   Where a court finds a violation of CWA section 301(a), civil monetary penalties "shall" be imposed. 33 U.S.C. § 1319(d). Section 309 of the CWA authorizes the EPA to bring suit for civil penalties of up to $37,500 per day. 33 U.S.C. § 1319(d). Upon referral from the EPA, the United States Department of Justice is authorized to bring such suits against persons and entities believed to have violated section 301 of the CWA.

As noted above, the EPA has now referred the unauthorized discharges discovered at the Site to the Department of Justice for potential civil prosecution. The EPA and the Department of Justice would prefer to resolve this matter amicably, and we are open to engaging in discussions to that end. However, to be clear, any potential amicable resolution of this matter would necessarily include two components:

(1) injunctive relief, in the form of restoration of the Site and/or mitigation measures compensating for the loss of aquatic resources, and;

(2) civil monetary penalties which, per above, are mandatory under the CWA where there has been a section 301 violation.

In regard to the first of these key components of any settlement of this matter, the EPA would require the submission of a restoration plan that fully restores impacted streams to pre-disturbance grade and conditions. To the extent you can show that full restoration is not feasible, the EPA would require the submission of a mitigation plan that adequately compensates for the loss of aquatic resources at the Site. Such a mitigation plan should include use of the West Virginia Stream and Wetland Valuation Metric to determine the number of credits necessary to offset impacts to streams, and the identification of an appropriate compensatory mitigation project. The EPA is happy to discuss the specifics of these requirements with you at greater length, but restoration (and mitigation, if full restoration is determined to be infeasible) is a necessary component of any potential settlement agreement.

In regard to the second key component of any potential settlement agreement – civil monetary penalties – the EPA believes, based on its analysis of factors including, among other things, the gravity of the violation, the economic benefit to the violator, the environmental impacts of the violation, the duration of the violation, and the degree of culpability of the violator, that a penalty of $414,830.00 is appropriate here. Again, however, the EPA is willing to discuss this proposed penalty amount with you in the context of good-faith settlement discussions between the parties.

Please let me know if you have counsel representing you in this matter to whom I can direct this letter as well as any future correspondence or communications. I look forward to working with you and the EPA to resolve this matter.

Sincerely,

Amanda Berman
Attorney, United States Department of Justice
Environmental Defense Section