UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

RON FOSTER, MARKETING & PLANNING
SPECIALISTS LIMITED PARTNERSHIP, and
FOSTER FARMS, LLC.

       Plaintiffs,

v.                                    Civil Action No. 2:14-cv-16744

UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY, and GINA MCCARTHY, in her
official capacity as Administrator,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is plaintiffs' motion for leave to file a
second amended complaint, filed October 5, 2015.

<u>Background</u>

This case arises from plaintiffs' objections to
various actions taken by the United States Environmental
Protection Agency, including the content of a compliance order
and the procedures undertaken before and after its issuance.
The court set out the background and posture of the case in its
order of September 30, 2015.  See <u>Foster v. United States Envtl.</u>
<u>Prot. Agency</u>, No. 2:14-CV-16744, 2015 WL 5786771 (S.D.W. Va.
Sept. 30, 2015).

Plaintiffs Ron Foster, Marketing & Planning

Specialists, and Foster Farms initially alleged, among other claims, that their rights to substantive due process and equal protection of the law under the Fifth Amendment had been violated.  The court's order entered September 30 granted the government's motion to dismiss these two claims, while denying the motion in other respects not relevant here.

Plaintiffs now wish to amend their First Amended Complaint to resuscitate the two claims that the court previously dismissed.  In particular, plaintiffs argue that four pieces of newly discovered information should be added as allegations to the complaint.  First, they wish to add material from a deposition with Richard Hemann, an employee of the Army Corps of Engineers, which they believe establishes the unusual nature of the EPA's actions against plaintiffs.  Second, plaintiffs obtained, from the EPA's internal files, a print-out from an internet site stating that plaintiffs contributed to the campaign of a United States Congressman, with plaintiffs' name circled by hand.  They wish to add discussion of this document to the complaint.

Third, plaintiffs wish to add testimony from Bryan Scott Moore suggesting that an EPA report misrepresented Moore's statements as one part of an effort to build a record against plaintiffs.  Fourth, they wish to suggest that the EPA's

2

decision to claim privileges as to certain documents sought during discovery itself demonstrates the EPA's malevolent motives toward plaintiffs.

Plaintiffs believe that all four of these additions will support their claim that their equal protection rights were violated. They also believe that the last three additions — the campaign contributions document, the EPA's alleged distortion of Moore's statements, and the materials withheld as privileged — also support their substantive due process claim.

### Legal Standard

"The district courts have applied a two-step analysis for use when a motion to amend the pleadings is made after the deadline set in the scheduling order has passed: (1) the moving party must satisfy the good cause standard of Rule 16(b), and (2) if the movant satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a)." 3-16 Moore's Federal Practice - Civil § 16.13 (2015); see also Hawkins v. Leggett, 955 F.Supp.2d 474, 497-99 (D. Md. 2013)(stating and applying two-part test). This analysis has emerged because litigants seeking to amend their pleadings outside the court's deadlines for doing so must effectively modify the scheduling order under Rule 16 as well. Thus, "[a]lthough leave to amend a complaint should be 'freely give[n] [. . .] when justice so

3

requires,' Fed. R. Civ. P. 15(a)(2), 'after the deadlines provided by a scheduling order have passed, the good cause standard [of Fed. R. Civ. P. 16] must be satisfied to justify leave to amend the pleadings.'" RFT Mgmt. Co., LLC v. Powell, 607 F. Appx. 238, 242 (4th Cir. 2015)(alterations added and in original)(quoting Nourison Rug Co. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008)); see also Montgomery v. Anne Arundel County, 182 Fed. Appx. 156, 162 (4th Cir. May 3, 2006)(affirming denial of amendment based on Rule 16 standard where scheduling order deadline had passed).

"Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery, 182 F. Appx. at 162; see also Hawkins, 955 F.Supp.2d at 498 ("The movant satisfies the good cause requirement by showing that, despite diligence, the proposed claims could not have been reasonably brought in a timely manner.").

Rule 15(a)(2) instructs that "[t]he court should freely give leave when justice so requires," which has been held to disallow an amendment "only where it would be prejudicial, there has been bad faith, or the amendment would be futile." Nourison, 535 F.3d at 298 (citing HCMF Corp. v. Allen, 238 F.3d

4

273, 276—77 (4th Cir. 2001)).  An "amendment [is] futile when the proposed amended complaint fails to state a claim," <u>Van Leer v. Deutsche Bank Sec., Inc.</u>, 479 F. Appx. 475, 479 (4th Cir. 2012)(citation omitted), or when it otherwise "fails to satisfy the requirements of the federal rules," <u>United States ex rel. Wilson v. Kellogg Brown & Root, Inc.</u>, 525 F.3d 370, 376 (4th Cir. 2008))(rejecting complaint for failure to state a claim as well as for lack of sufficient particularity under Rule 9(b))(citation omitted).

<u>Discussion</u>

As stated above, the purpose of this motion is to revive plaintiffs' claims that were previously dismissed by this court.  <u>See</u> Mem. in Supp. of Pl. Mot. for Leave to File Second Am. Compl. at *8 ("The proposed Second Amended Complaint merely pleads facts, not previously known prior to discovery, which Foster Plaintiffs believe cure the facial deficiencies in Plaintiffs' amended complaint identified by this Court in its September 30, 2015 Memorandum Opinion and Order.").  The court thus views each of plaintiffs' currently-defunct claims to determine whether the proposed amendments will breathe new life into them, and whether the amendments are permissible at this stage of litigation.

a. **The Substantive Due Process Claim**

As the court's September 30 order discussed, "[i]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental official is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); see e.g., Rochin v. California, 342 U.S. 165, 172 (1952)(forcible stomach pumping of suspect in an effort to produce swallowed evidence "shock[ed] the conscience" and was held to be a violation of substantive due process.).  This is a high standard not easily met.  As the Eighth Circuit explained in Golden ex rel. Balch v. Anders:

> Substantive due process is concerned with violations
> of personal rights [...] so severe [...] so
> disproportionate to the need presented, and [...] so
> inspired by malice or sadism rather than a merely
> careless or unwise excess of zeal that it amounted to
> brutal and inhumane abuse of official power literally
> shocking to the conscience.

324 F.3d 650, 652-53 (8th Cir. 2003)(internal quotation marks omitted).

Here, plaintiffs have offered three new facts purportedly demonstrating conduct of such extreme character. One of them, the fact that the EPA withheld documents in discovery based on a claim of privilege, Pl. Second Am. Compl. ¶ 36, comes nowhere close to shocking the contemporary conscience.

6

Plaintiffs do not even know what these documents contain.  See,
e.g., Mem. in Supp. of Pl. Mot. for Leave to File Second Am.
Compl. at *5-6 ("These documents may even discuss the substance
of the political research document, if not the document
itself.")(emphasis added).  Speculation about their possible
contents is not a factual allegation, and will not substitute
for a showing of outrageous executive overreach.

        So, too, for the allegation that the EPA
misrepresented Moore's statements.  Plaintiffs have no basis for
believing that the claimed "misrepresentation" was not merely a
mistake, and do not even assert that it was intentional.  See
Pl. Proposed Second Am. Compl. ¶ 23.  Without any suggestion of
intent, a factual error in one part of the record in a
longstanding enforcement action is perhaps best described as "a
merely careless . . . excess of zeal," Anders, 324 F.3d at 652-
53, rather than a conscience-shocking action akin to the
forcible pumping of a suspect's stomach to recover evidence.
See Rochin v. California, 342 U.S. 165.

        The EPA's hand-annotated document taking note of
plaintiffs' political contributions is a far different matter.
See Pl. Proposed Second Am. Compl. ¶ 36.  The court is troubled
by the possibility that a government agency took certain actions
against an individual because of his political beliefs or

7

activities.  And the document presented by plaintiffs, along
with allegations that the EPA's procedures were irregular in the
present case, show that this possibility cannot be discounted at
the present stage.  The government's suggestion that review of
the document was part of a legitimate effort to ascertain the
ownership of Marketing & Planning Specialists relates to the
weight of the evidence, not to its legal sufficiency in stating
a claim.

        Plaintiffs' theory regarding the political document,
however, cannot state a substantive due process claim because it
should instead have been raised under a more specific
constitutional provision: the First Amendment.  See Graham v.
Connor, 490 U.S. 386, 395 (1989).  In Graham, the plaintiffs
brought a § 1983 claim against police officers for the use of
excessive force, alleging a substantive due process violation.
Id. at 390.  The Court held that the plaintiffs' claims should
not be analyzed using substantive due process standards:

        Because the Fourth Amendment provides an explicit
        textual source of constitutional protection against
        this . . . conduct, that Amendment, not the more
        generalized notion of "substantive due process," must
        be the guide for analyzing these claims.

Id. at 395.  Thus, "Graham . . . requires that if a
constitutional claim is covered by a specific constitutional
provision . . . the claim must be analyzed under the standard

8

appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).

The "specific constitutional provision" requirement applies to allegations of retaliatory behavior violative of the First Amendment. See Pagan v. Calderon, 448 F.3d 16 (1st Cir. 2006); Bell v. Johnson, 308 F.3d 594 (6th Cir. 2002). In Pagan, the First Circuit rejected a substantive due process claim based, in part, on a politician's alleged retaliation against a former political official because of his association with a rival political party. 448 F.3d at 25, 33-34. The court wrote that "[s]ubstantive due process is an inappropriate avenue of relief when the governmental conduct at issue is covered by a specific constitutional provision." Id. at 33. The court then explained that "political discrimination or retaliation" raises a claim under the First, not the Fourteenth, Amendment. Id. at 33-34. In Bell, the Sixth Circuit similarly concluded that First Amendment retaliation claims should be brought under the standards of that provision, and not under the "shocks the conscience" standard. 308 F.3d at 610.

Plaintiffs' complaint regarding the political contribution document is precisely the sort of theory that should have been raised as a First Amendment retaliation claim.

The purpose of discussing the document is plainly to show that the government impermissibly acted against plaintiffs on account of Foster's political speech.  Plaintiffs' proposed second amended complaint discusses at length the EPA's "political research on plaintiffs," Proposed Second Am. Compl. ¶ 36, and states that "[d]efendants have, with improper, retaliatory and animus based motivation, delay in providing a forum for hearing, and irregular sequencing of jurisdictional review, issued a compliance order against Plaintiffs."  Id. at ¶ 72.  Plaintiffs' briefing on this motion even cites First Amendment cases, such as Citizens United v. FEC, 558 U.S. 310 (2010), and makes direct reference to "political speech," as well as viewpoint discrimination, to illustrate that their rights were violated.  See Mem. in Supp. of Pl. Mot. for Leave to File Second Am. Compl. at *3 ("Political speech has been clearly recognized as a protected constitutional civil right."); Pl. Repl. at *3 (discussing government action targeting particular political viewpoints), *7-8 (discussing other First Amendment doctrine).

The court does not need to determine that plaintiffs' First Amendment claim would succeed, but merely that the harm alleged would receive relief, if at all, under that Amendment.  See Pagan, 448 F.3d at 34 ("We add only that the application of this . . . rule depends only on whether a specific

constitutional provision addresses the type of conduct at issue;
it does not depend on a prediction that the complaining party
will be successful in pursuing a claim under the applicable
provision, nor does it depend on a conclusion that the party has
a valid claim thereunder."); see also Albright v. Oliver, 510
U.S. 266, 273-75 (1994)("We express no view as to whether
petitioner's claim would succeed under the Fourth Amendment,
since he has not presented that question in his petition for
certiorari.  We do hold that substantive due process, with its
scarce and open-ended guideposts, can afford him no
relief.")(internal quotation marks and citations omitted).
Here, where plaintiffs' claim alleges impermissible government
action taken because of an individual's political activities,
the First Amendment is the appropriate channel for any relief.
"It is the First Amendment, not the Fourteenth Amendment, that
guards individuals against state-sponsored acts of political
discrimination or retaliation."  Pagan, 448 F.3d at 33-34.

     Plaintiffs, in sum, cannot effectively use the
political contribution document as part of a substantive due
process theory, because the type of wrong alleged to have arisen
from the document creates a cognizable First Amendment claim.
Accordingly, plaintiffs' amendments, inasmuch as they seek to
bolster the substantive due process claim, will not be permitted

11

because they will still fail to state a claim and are therefore futile.  See Van Leer, 479 F. Appx. at 479; Kellogg Brown & Root, 525 F.3d at 376.

###  b. First Amendment Retaliation Claim

Since the court has determined that plaintiffs' allegations of mistreatment because of their campaign contributions state a claim, if at all, under First Amendment retaliation doctrine, the court will consider whether amendment may be allowed on that basis.[1]

The United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  "'The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right.'"  Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)(quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.

---

[1] Plaintiffs' claims for relief, though less specific than one might hope, make a claim for a "U.S. Constitutional violation," which focuses on "Defendants' improper and animus based enforcement actions."  Pl. Proposed Second Am. Compl. ¶ 69.  The court believes that this language suggests a grievance that the First Amendment is designed to address, particularly in light of plaintiffs' emphasis on campaign contributions in the factual allegations of the complaint.

2000)).

"A plaintiff seeking to recover for First Amendment retaliation must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." Constantine, 411 F.3d at 499 (citing McGraw, 202 F.3d at 686). The Fourth Circuit's Constantine opinion explained that the "adverse[] effect" on First Amendment rights may be shown by conduct that would tend to "chill the exercise of constitutional rights":

> We have never held that a plaintiff must prove that
> the allegedly retaliatory conduct caused her to cease
> First Amendment activity altogether.  The cause of
> action targets conduct that tends to chill such
> activity, not just conduct that freezes it completely.
> . . . .  Thus, for purposes of a First Amendment
> retaliation claim under § 1983, a plaintiff suffers
> adverse action if the defendant's allegedly
> retaliatory conduct would likely deter "a person of
> ordinary firmness" from the exercise of First
> Amendment rights.  Washington v. County of Rockland,
> 373 F.3d 310, 320 (2d Cir.2004); Keenan v. Tejeda, 290
> F.3d 252, 258 (5th Cir.2002); Carroll v. Pfeffer, 262
> F.3d 847, 850 (8th Cir.2001); Smith v. Plati, 258 F.3d
> 1167, 1176 (10th Cir.2001); Suppan v. Dadonna, 203
> F.3d 228, 235 (3d Cir.2000); Bloch v. Ribar, 156 F.3d
> 673, 678 (6th Cir.1998); Bart v. Telford, 677 F.2d
> 622, 625 (7th Cir.1982).  While the plaintiff's actual
> response to the retaliatory conduct provides some
> evidence of the tendency of that conduct to chill
> First Amendment activity, it is not dispositive.

411 F.3d at 500 (citations abridged)(emphasis in original).

Plaintiffs' complaint contains material that supports a claim under the First Amendment retaliation doctrine.  In particular, plaintiff alleges the following facts:

> [A]t some time during 2012, someone at EPA conducted unprecedented political research on plaintiffs Ron Foster and Marketing and Planning Specialists, LP.  [A document recovered during discovery] shows a list of 2009 to 2010 political campaign contributions and contributors in Putnam County, West Virginia.  On the second page of the document, plaintiffs Ron Foster and Marketing and Planning Specialists, LP are circled and underlined, respectively, for their March 3, 2010 $250.00 contribution to "McKinley for Congress." Despite the Foster Plaintiffs' deposing a half dozen EPA employees, no one could identify the origin of the document. . . . Only Pamela Lazos, admitted to recollecting that she had seen the document prior to discovery.  Ms. Lazos stated that she could not recollect where or how she obtained the document, but stated that she did believe it had been in her files. . . .  Numerous documents related to EPA's preparation of responses to Congressional inquiries have been withheld, some or all of which may address the response to Congressman McKinley's inquiry to the agency on behalf of Ron Foster fall within time frames for which it is reasonable to believe that the political research on Ron Foster and Marketing & Planning Specialists, LP may have been conducted.  Ms. Lazos' withheld personal notes also bridge the timespan when the unprecedented, highly irregular, and indeed shocking, political research (which Ms. Lazos stated in deposition that she recalled being in her files) had to have been conducted or received.

Pl. Proposed Second Am. Compl. ¶ 36.

Plaintiffs' proposed amended complaint alleges that they "engaged in protected First Amendment activity," the first element of a retaliation claim, in the form of "their March 3, 2010 $250.00 contribution to 'McKinley for Congress,'" Pl.

Proposed Second Am. Compl. ¶ 36. The Supreme Court has explained
that "the First Amendment safeguards an individual's right to
participate in the public debate through political expression
and political association," and "[w]hen an individual
contributes money to a candidate, he exercises both of those
rights: The contribution 'serves as a general expression of
support for the candidate and his views' and 'serves to
affiliate a person with a candidate.'" McCutcheon v. Fed.
Election Comm'n, 134 S. Ct. 1434, 1448 (2014).  See also Buckley
v. Valeo, 424 U.S. 1, 14 (1976)("[C]ontribution . . .
limitations operate in an area of the most fundamental First
Amendment activities.  Discussion of public issues and debate on
the qualifications of candidates are integral to the operation
of the system of government established by our Constitution.").

     Second, the complaint states that the government
thereafter took a set of irregular and burdensome enforcement
measures against plaintiffs, thus asserting that "the defendants
took some action that adversely affected [plaintiffs'] First
Amendment rights."  As stated above, "a plaintiff suffers
adverse action if the defendant's allegedly retaliatory conduct
would likely deter 'a person of ordinary firmness' from the
exercise of First Amendment rights."  Constantine, 411 F.3d at
500.  Here, plaintiff states that the EPA took the very unusual

step of "superseding," or assigning to itself, the usual
authority of the Army Corps of Engineers to "verify the
jurisdictional status of aquatic resources at" plaintiffs'
property.  Proposed Second Am. Compl. ¶¶ 32, 43.  The effects of
this decision, plaintiffs claim, were, first, to remove the
Corps of Engineers' power to issue an after-the-fact permit
under Section 404 of the Clean Water Act, which would have
resolved the compliance issues in the case, and, second, to
remove plaintiffs' right to appeal the government's
determination that the land was covered under the Clean Water
Act.  Proposed Second Am. Compl. ¶ 33.  In addition, the EPA
told plaintiffs that the "case had been referred to the U.S.
Department of Justice for 'civil prosecution,'" and, based on
plaintiffs' past conduct, "a civil penalty in the amount of
$414,830.00 would be an appropriate fine."  Proposed Second Am.
Compl. ¶ 40.  Plaintiffs maintain that the government's
enforcement action, and particularly its irregularities, are not
justifiable by legitimate law enforcement rationales.  See,
e.g., Proposed Second Am. Compl. ¶ 61.  A person of "ordinary
firmness" would certainly be deterred from engaging in First
Amendment activity when faced with unjustifiable law enforcement
activity, particularly in the form of nearly half a million
dollars in fines and the foreclosure of valuable legal options
available to other persons.  See Tobey v. Jones, 706 F.3d 379,

387 (4th Cir. 2013)(ruling that plaintiff had adequately pled
retaliatory conduct by stating that police seized him without
probable cause).

          Third, the complaint adequately alleges causation at
this stage.  Plaintiff has here stated that the EPA's political
research took place "at some time during 2012."  Proposed Second
Am. Compl. ¶ 36.  All of the government's enforcement actions
against plaintiffs, and all of the alleged irregularities in the
process, took place in 2012 or later, which was a marked change
from the government's actions before that time.  In the years
prior to 2012, plaintiffs' interactions with the government were
limited to negotiation regarding obligations to remediate
certain land purchased from a bankruptcy estate that had been
the subject of past EPA enforcement action, and the EPA's
investigation of other land in the same parcel – land which was
not previously subject to enforcement – to determine whether it
was within the jurisdiction of the Clean Water Act.  See
Proposed Second Am. Compl. ¶¶ 11-24.  As late as April 2011, the
government's internal correspondence suggests that officials
were not even satisfied that they had jurisdiction over some of
plaintiffs' land.  Proposed Second Am. Compl. ¶ 25.

          Things changed immediately, and drastically, in 2012.
"On January 24, 2012, Defendants issued a compliance order to

                                17

Foster Farms, LLC, claiming that the Property was subject to the
CWA, and alleging that Plaintiffs had illegally filled an
unnamed tributary on the property."  Proposed Second Am. Compl.
¶ 26.  As the court's prior order noted, violation of such a
compliance order can be fined by tens of thousands of dollars
per day.  Foster v. United States Envtl. Prot. Agency, 2015 WL
5786771, at *8.  In April 2012, the EPA told plaintiffs that
appeal of its assertion of jurisdiction over the property was
impermissible because the EPA had superseded the Army Corps of
Engineers' authority in the matter.  Proposed Second Am. Compl.
¶¶ 31-33.  Later, the EPA informed plaintiffs that $414,830.00
would be an appropriate fine for the conduct in the case.
Proposed Second Am. Compl. ¶¶ 40.

        The Fourth Circuit has stated that "the temporal
proximity" of the retaliatory behavior to the time when the
government gained knowledge of First Amendment activity may
allow the court to infer causation at the motion-to-dismiss
stage.  Tobey, 706 F.3d at 387; see also Trulock v. Freeh, 275
F.3d 391, 405 (4th Cir. 2001)("the timing of the search raises
an inference of retaliatory motive").  Although plaintiffs have
not stated exactly when in 2012 the political research took
place, it seems enough, at this juncture, to assert that it
occurred within that year.  Because of the striking change in

                              18

the government's behavior that came about in 2012, the court
will infer that the government's actions took place in
retaliation against plaintiffs' political speech.

Plaintiffs have thus satisfied the three elements of a
First Amendment retaliation claim.  Accordingly, the court
concludes that permitting amendment on that basis would not be
futile.

The government contends that plaintiffs have unduly
delayed their amendment, and that the government would be
prejudiced by an amendment at this late stage in litigation.
Def. Opp. to Pl. Mot. for Leave to File Second Am Compl.
(hereinafter "Def. Opp.") at 3-4.  Regarding undue delay, the
government states that plaintiffs knew of both the "political
research" document and Richard Hemann's testimony in June of
2015, but waited until October, after the court's order on the
government's motion to dismiss, to propose an amendment.  Id. at
4-7.  Plaintiffs respond that there is not usually a continuing
requirement to amend the facts in a complaint to support its
existing legal theories, particularly where a litigant believes
that those theories are sufficient to withstand the motion to
dismiss.  Rep. in Supp. of Pl. Mot. for Leave to File Second Am.
Compl. at 1-2.

The government also claims that allowing amendment

would "unfairly prejudice the United States" because it has
"invested significant resources into briefing its Motion to
Dismiss."  Def. Opp. at 7.  The government points out that it
has now filed two motions to dismiss, and suggests that it may
need to file a third such motion should the amendment be
allowed.  Id. at 7-8, 8 n.4.

The court first notes that the government's claim
regarding "unfair prejudice" is not persuasive.  Even on the
government's own account, plaintiffs did not receive the new
facts that are the subject of this amendment, including the
political research document, until June 2015.  By that time, the
government had already filed its second motion to dismiss.
Unless the government wishes to take the unsustainable position
that plaintiffs should never, at any time, have been permitted
to file an amended complaint based on the political research
document, then the government's investment of time into the
briefing of prior motions to dismiss is not relevant.  Moreover,
the court would note that it has determined, above, that the
proposed amendment is not futile, which will thus relieve the
government of any further need to move for dismissal, at least
under Rule 12(b)(6).

Regarding the government's claims of undue delay, the
court notes that, while plaintiffs could have amended their

20

complaint earlier, they presumably would not have wished to do so had their substantive due process claim not been dismissed. The court recognizes that plaintiffs previously included significant factual material supporting the substantive due process claim, and that knowing when such a claim has been successfully pled presents a difficult line-drawing problem. Counsel's erroneous belief that the substantive due process claim was properly pled is forgivable.  The First Amendment retaliation claim is essentially a substitute for the substantive due process cause of action, relying on many of the same facts.  Perhaps most importantly, the rights guaranteed by the First Amendment are sufficiently important that the court is willing to accommodate some delay should it be necessary for their vindication.

### c. The "Class of One" Equal Protection Claim

The court's September 30 opinion also outlined the law governing "class of one" claims under the Equal Protection clause.  Foster v. United States Envtl. Prot. Agency, 2015 WL 5786771 at *25-28.  In Village of Willowbrook v. Olech, the Supreme Court held that an equal protection claim arises for a "class of one" when a "plaintiff . . . has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment."

528 U.S. 562, 564 (2000)(per curiam).  The Fourth Circuit's opinion in <u>Ruttenberg v. Jones</u>, a case where the plaintiff alleged gross and systematic police misconduct based on an officer's personal distaste for a nightclub owner, dismissed a class-of-one claim because "the complaint fail[ed] to allege the existence of similarly situated individuals."  283 F. App'x 121, 131 (4th Cir. 2008).

The initial complaint did not expressly describe any "similarly situated" individuals, or even allege, as a generality, that the government had treated some similarly situated persons differently.  To the contrary, the complaint alleged that the EPA had also taken action against the previous owners, who were "about as 'similarly situated' as one could be to the current plaintiffs."  <u>Foster v. United States Envtl. Prot. Agency</u>, 2015 WL 5786771 at *28.  The court thus dismissed the claim.

The amended complaint adds facts supporting a generalized allegation that plaintiffs were treated differently from others against whom regulatory action was taken, although it still fails to point out, by name, description, or otherwise, any individual who was similarly situated but treated differently.  <u>See</u> Proposed Second Am. Compl. ¶ 33.  Plaintiffs first give a new explanation of why this enforcement action was

22

unusual, stating that the EPA superseded the authority of the U.S. Army Corps of Engineers to determine whether jurisdiction over the property existed under the Clean Water Act.  Proposed Second Am. Compl. ¶ 33.  Plaintiffs state that the EPA's action made the jurisdictional determination unappealable where it otherwise could have been challenged, and also foreclosed plaintiffs' ability to apply for an after-the-fact permit.  <u>See id.</u>; <u>see also</u> Mem. in Supp. of Pl. Mot. for Leave to File Second Am. Compl. at *2.  The proposed amendments then refer to testimony from Richard Hemann, an employee of the Corps of Engineers, stating that the EPA's actions in this case were highly uncommon.  <u>See</u> Proposed Am. Compl. ¶ 33 ("None of this is common, what happens here.").  He evidently went so far as to say that, in twenty years as a regulator, he had never before personally seen these actions taken.  <u>Id.</u>

     The complaint, in other words, compares plaintiffs to the group of persons within Hemann's knowledge against whom the EPA has taken regulatory action because of alleged violations of the Clean Water Act, but it does not name any of them or their circumstances in particular.  Thus, the core question in determining if the "class of one" theory states a claim is whether the abstraction plaintiffs have presented, namely, the group of persons known to Hemann who are regulated by the EPA,

but not identified by name or otherwise as being similarly situated to plaintiffs, will suffice.

The Fourth Circuit has not had occasion to provide a clear standard as to how concretely and specifically a plaintiff must compare himself to others to state a class-of-one claim. The court of appeals has, of course, allowed class-of-one claims to go forward where a particular, similarly-situated person is identified. Such was the case in Willis v. Town of Marshall, N.C., where a woman claimed that she was singled out for negative consequences because of her dancing, while her dance partner, who was engaged in the same activity, received no such consequences. 426 F.3d 251, 263 (4th Cir. 2005)(reversing grant of summary judgment to defendant). On the other hand, the unpublished Ruttenberg opinion, cited above, characterizes the complaint it reviewed as follows:

> The complaint alleges that Mayor Jones, Chief Evans, Detective L, and Detective W "selectively enforced the ABC laws and narcotics laws" in violation of Appellants' equal protection rights. The district court dismissed this claim because the "conclusory allegations" were "plainly insufficient" and "d[id] not allege the existence of any similarly situated persons, nor ... that [Appellants] were treated differently from any such persons."

Ruttenberg, 283 F. App'x at 131 (alterations in original) (internal citations omitted). The court then stated that the district court's dismissal of the claim should be affirmed, in

part, because "the complaint fails to allege the existence of similarly situated individuals." Id. From this analysis, it is evident that a mere allegation of "selective[] enforcement" of the law is insufficient to state a class-of-one claim. Inasmuch as the allegation attributed to Hemann lacks specificity, this case falls somewhere near Ruttenberg.

Most other courts of appeals directly confronting the pleading standard for a class-of-one claim – particularly those addressing it after Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009) – apparently require plaintiffs to name specific parties or to assert facts at the motion-to-dismiss stage showing that there is a reasonably close similarity between those parties and the plaintiffs. See Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013)(noting, at motion-to-dismiss stage, that "[w]e have held that class-of-one claims require an extremely high degree of similarity between [the plaintiffs] and the persons to whom they compare themselves. In the land-use context, this means more than point[ing] to nearby parcels in a vacuum and leav[ing] it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated.")(internal quotations and citations omitted)(alterations in original); Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 60

(2d Cir. 2010)(affirming district court's grant of motion to dismiss where plaintiffs named particular parties for comparison, but court was unsatisfied that they were sufficiently similar); TexCom Gulf Disposal, L.L.C. v. Montgomery Cty., 623 F. App'x 657, 661 (5th Cir. 2015)(affirming dismissal where the complaint "alleges that other applicants were not subjected to this intensive review . . . [but] does not identify these alleged other applicants or allege that the same regulations have been overlooked in other specific cases"); Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 684 (6th Cir. 2011)(affirming dismissal of class-of-one claim where plaintiffs named a particular person, but court believed that person's situation was not sufficiently similar to plaintiffs'); Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist., 813 F.3d 1124, 1129-30 (8th Cir. 2016)(affirming dismissal where electrician claimed that the fire district treated him "differently from other similarly situated electrical contractors," but failed to "allege[] [that] another contractor, whose employees were members of a different union, was identical or directly comparable to [him] in all material aspects")(internal quotations omitted); Andy's BP, Inc. v. City of San Jose, 605 F. App'x 617, 618-19 (9th Cir. 2015)(affirming dismissal of class-of-one claim, noting that "[p]laintiff cannot state an equal protection claim based on the different treatment that Andy's BP

26

and Moe's Stop received because the two gas stations are not
similarly situated"; and affirming rejection of amended
complaint on grounds of futility because the amendment "failed
to . . . show . . . that the gas stations are similarly
situated"); Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210,
1219 (10th Cir. 2011)(affirming dismissal where plaintiff stated
that it was treated differently from "other, similarly situated
property owners" within its county but did not name any in
particular, and including in the opinion a discussion of
heightened pleading standards under Iqbal and Twombly for class-
of-one claims); Leib v. Hillsborough County Pub. Transp. Comm'n,
558 F.3d 1301, 1307 (11th Cir. 2009)(affirming dismissal upon
flat assertion that plaintiff was treated differently from
others similarly situated, and noting that "plaintiffs are not
permitted simply to 'rely on broad generalities in identifying a
comparator'").

The most persuasive opinions written by those courts
of appeals adopting the majority rule note that the heightened
pleading standards in Twombly and Iqbal, when combined with the
elements of a class-of-one claim, require that pleadings specify
similarly-situated parties and state facts explaining why they
are situated similarly.  See Kansas Penn Gaming, 656 F.3d at
1220.  In Olech, a successful class-of-one claim, the Supreme

27

Court stated that "the plaintiff alleges that she has been intentionally treated differently from others similarly situated."  528 U.S. at 564.  When the Supreme Court decided Olech in the year 2000, pleading requirements could be satisfied simply by putting opposing parties on notice of a claim.  But the Supreme Court has more recently held in 2007 and again in 2009 that, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  The claim must amount to "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Thus, "[a]fter Twombly and Iqbal, it is insufficient [to state a class-of-one claim] to simply allege that other, unidentified properties have 'comparable' or 'similar' conditions — the claim must be supported by specific facts plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects."[2] Kansas Penn Gaming, 656 F.3d at 1220.

---

[2] It is not clear whether the plaintiffs in Olech provided specific descriptions of similarly situated persons in their complaint.  Although the Third Circuit's opinion in Phillips states that "Olech herself did not 'name names' in her complaint," 515 F.3d 224, 244 (quoting DeMuria v. Hawkes, 328 F.3d 704, 707 (2d Cir. 2003)), this detail appears nowhere in the Supreme Court's opinion.

This rule is not shared by the Seventh Circuit or a 2008 decision by the Third Circuit.  See Miller v. City of Monona, 784 F.3d 1113, 1120 (7th Cir. 2015)("[W]e have repeatedly confirmed that '[p]laintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints.'")(citing Capra v. Cook Cnty. Bd. of Review, 733 F.3d 705, 717 (7th Cir.2013)); Geinosky v. City of Chicago, 675 F.3d 743, 748 (7th Cir. 2012)("Even in a case where a plaintiff would need to identify a similarly situated person to prove his case . . . we see no basis for requiring the plaintiff to identify the person in the complaint. . . . Rule 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Even the more demanding pleading requirements under Iqbal and Twombly do not require a plaintiff to identify specific comparators in a complaint.") (emphasis in original); Phillips v. Cty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008)(noting that "the Olech decision does not establish a requirement that a plaintiff identify in the complaint specific instances where others have been treated differently for the purposes of equal protection," and instructing district court to permit amendment of complaint where it contained no allegation that plaintiff was treated differently from others); but see Spiker v. Whittaker, 553 F.

App'x 275, 280 (3d Cir. 2014)(unpublished opinion)(affirming
dismissal of claim where plaintiff stated that he was situated
similarly to twenty other sex offenders, but court believed that
the alleged similarity was insufficient); Pioneer Aggregates,
Inc. v. Pennsylvania Dep't of Envtl. Prot., 540 F. App'x 118,
124 (3d Cir. 2013)(unpublished opinion)(dismissing claim where
insufficient similarity between plaintiff and other named
person).

      Although the court is not entirely persuaded that a
successful class-of-one plaintiff must "name names" of specific
comparators in the complaint, the heightened pleading standards
announced in Twombly and Iqbal will preclude a claim based on
plaintiffs' quite general allegations in this case.  Plaintiffs
simply give no information in the proposed amended complaint
about any regulated entities or properties to which Hemann
refers, and thus no information from which the court may
determine that those to whom he refers were situated similarly
to plaintiffs.

      In addition, Hemann's testimony, as mentioned in the
complaint, fails to suggest that enforcement outcomes were
different for other regulated entities or properties than they
were for plaintiffs.  Hemann mentions only the procedural
differences between plaintiffs' case and others, and does not

suggest that others received lower fines or otherwise had better ultimate outcomes.  Because Hemann does not suggest that any other persons received better final results than plaintiffs, his testimony fails to support an allegation that plaintiffs were "treated differently" from others similarly situated.[3]

### Conclusion and Order

The court concludes that plaintiffs will be permitted to amend their complaint to include a First Amendment retaliation claim, but not to include a substantive due process or "class of one" equal protection claim.  To effectuate this conclusion, the court ORDERS that:

- Plaintiffs submit, within fifteen days, a revised Second Amended Complaint that more explicitly includes a First Amendment retaliation claim among the causes of action, along with the amended factual material presented in the proposed second amended complaint.

- Plaintiffs' motion for leave to file a second amended complaint be, and it hereby is, granted to the extent set forth above, and is otherwise denied.

It is so ORDERED.

---

[3] Moreover, it is noted that the previous complaint did not even present an unadorned allegation that plaintiffs were situated similarly to other persons.  See Foster v. United States Envtl. Prot. Agency, 2015 WL 5786771 at *25-28.  In fact, the complaint suggested that plaintiffs were treated much like the property's prior owner, who was situated very similarly to plaintiffs for obvious reasons.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

ENTER: August 22, 2016

John T. Copenhaver, Jr.
United States District Judge