**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**Charleston Division**

| | | |
|---|---|---|
| RON FOSTER, MARKETING & PLANNING SPECIALISTS LIMITED PARTNERSHIP, and FOSTER FARMS, LLC, | ) ) ) | |
| | ) | No.  2:14-cv-16744 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES ENVIRONMENTAL | ) | |
| | ) | |
| PROTECTION AGENCY and GINA MCCARTHY, in her official capacity as Administrator, | ) ) ) | |
| Defendants. | ) | |

## CORRECTED SECOND AMENDED COMPLAINT

Pursuant to this Court's Memorandum Opinion and Order dated August 22, 2016 [Dkt. # 148], and the Court's Order of Spetember 15, 2016 [Dkt. #152] Mr. Ron Foster, Foster Farms, LLC, and Marketing & Planning Specialists Limited Partnership ("Plaintiffs"), by and through their counsel, now come before this Court and submit this Corrected Second Amended Complaint against the U.S. Environmental Protection Agency and Gina McCarthy, in her capacity as Administrator of the United States Environmental Protection Agency as follows:

## I. Preliminary Statement

1.       Plaintiffs, Ron Foster ("Mr. Foster"), Marketing & Planning Specialists Limited Partnership, and Foster Farms, LLC, bring this action for injunctive and declaratory relief under the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq.*, and the Administrative Procedure Act

("APA"), 5 U.S.C. § 551, *et seq*. , and the Constitution of the United States of America, as amended.

2.        Defendants United States Environmental Protection Agency ("EPA") and Gina McCarthy, as Administrator of the EPA, have issued a compliance order and jurisdictional determination under the CWA to Foster Farms, LLC, alleging that areas of property owned by Plaintiffs where the Plaintiffs conducted mass balancing earthwork are subject to the CWA, and alleging that Plaintiffs were responsible for discharging fill into unnamed tributaries of Neal Run that EPA contends are jurisdictional waters of the United States. The compliance order was issued against Foster Farms, LLC. However, Marketing & Planning Specialists Limited Partnership owns an adjacent tract of property which contains roughly half of the acreage area where the landscaping in question took place.   Marketing & Planning Specialists Limited Partnership is also the entity which conducted the landscaping in question.

3.        U.S. Army Corps of Engineers ("USACE") is an agency of the United States established under the Department of the United States Army. Except in extraordinary circumstances, USACE is the primary agency responsible dredge and fill permitting and determinations of jurisdictional waters of the United States, requiring such permitting pursuant to Section 404 of the CWA. 33 U.S.C. § 1344. USACE denied the Plaintiffs' administrative appeal of USACE's February 22, 2012 jurisdictional waters determination on the grounds that EPA's superseding of USACE's authority in the matter rendered USACE's determination a non-appealable action.

4.        The compliance order subjects Plaintiffs to civil penalties for failure to comply with the order, and was issued without providing Plaintiffs an opportunity to appeal, be heard by an impartial decision maker and to contest Defendants' findings.   EPA's 2012 jurisdictional

determination was issued without a right of appeal.  The  Supreme Court of the United States ("SCOTUS") ruled on May 31, 2016 in *USACE v. Hawkes, et al.*, 578 U.S. ____ (2016) (Case No. 15-290) that parties subject to jurisdictional determinations must be afforded a right of appeal to challenge such jurisdictional determinations.

5.     Plaintiffs therefore seek an injunction enjoining Defendants from enforcing the compliance order and the jurisdictional determination(s) without first providing them either an administrative hearing and appeal or a *de novo* appeal review before this court. Plaintiffs further seek a declaration from this court that enforcement of the order and EPA's taking "superseding" authority to render the jurisdictional determination (thereby foreclosing Plaintiffs' right of appeal before USACE) without providing an appeal as required by *Sackett* and *Hawkes* was motivated by improper animus and reckless and/or callous indifference to the Plaintiff's federally protected First Amendment rights and that the order is therefore invalid under the U.S. Constitution and must therefore be vacated.

## II. Jurisdiction and Venue

6.     This Court has jurisdiction over the subject matter of this action pursuant to Article III, Section 1 of the U.S. Constitution; 28 U.S.C. § 1331 (federal question jurisdiction); § 2201 (authorizing declaratory relief); § 2202 (authorizing injunctive relief); and 5 U.S.C. § 702 (providing for judicial review of agency action under the APA).

7.     Venue in this judicial district is proper under 28 § 1391(e)(2), because the property that is the subject of the action is situated therein.

## III. Parties

8.     The Plaintiffs are as follows:

a.     Plaintiff Ron Foster is a citizen of the United States and the State of West Virginia.   Mr. Foster resides in Putnam County, West Virginia.

b.     Plaintiff Foster Farms, LLC is a Kentucky limited liability company.

c.     Marketing & Planning Specialists Limited Partnership is a Nevada limited partnership authorized to do business in West Virginia.

d.     Plaintiffs Foster Farms, LLC and Marketing & Planning Specialists Limited Partnership, own the parcels of property (the "Property") which are the subject of EPA's alleged CWA violation. The Property is composed of two tracts located in Wood County, West Virginia.

e.     The tract owned by Foster Farms, LLC is all of those certain parcels of real estate and improvements thereon and appurtenances thereto, commonly known as Neal Run Crossing, located on West Virginia Route 68, in Lubeck district, Wood County, West Virginia, The deed, made on October 29, 2009, and recorded in Book 11447, at page 679 describes the property as follows:

> All of those certain parcels of real estate and improvements thereon and appurtenances thereto, commonly known as Neal Run Crossing, located on West Virginia Route 68, in Lubeck District, Wood County, West Virginia, consisting of the following parcels:
> 1. Four parcels containing 49.4 Acres, 2.3 Acres, 0.84 Acres and 6.75 Acres respectively, acquired by Seller by Deed dated August 30, 2006, of record in the office of the Clerk of the Wood County Commission in Deed Book 1102, at Page 766, less reservations noted therein.
> 2. One parcel containing 3.0 Acres, acquired by Seller by Deed dated November 14, 2006, of record in the said Clerk's office in Deed Book 1107, at Page 919, less reservations noted therein.

3. One parcel containing 5.11 Acres, acquired by Seller by Deed dated September 22, 2006, of record in the said Clerk's office in Deed Book 1103, at Page 650.

THERE IS EXPRESSLY EXCEPTED AND RESERVED FROM THE ABOVE PARCELS THE FOLLOWING:

A. Parcel containing 1.47 Acres conveyed to Michael W. Johnson by Deed dated August 30, 2006, of record in the said Clerk's Office in Deed Book 1102, at Page 770.

B. Parcel containing 1.881 Acres conveyed to Western Sizzlin, LLC by Deed dated July 17, 2007, of record in the said Clerk's Office in Deed Book 1119, at Page 596.

f.      The tract owned by Marketing & Planning Specialists Limited Partnership is 2,300 linear feet south of the intersection of West Virginia Routes 95 and 68 in Parkersburg, Wood County, West Virginia; it is 51.5 acres, and is approximately 0.75 miles northeast of the town of Lubeck. The deed was duly recorded on March 6, 2007 in Deed Book 1110 at Page 457, describing the property as:

BEGINNING at a stake in the center of the County Road concerning in line of J.C.F. Pahl and to line of George Finsley; thence N. 58 ½ W. 58 poles to a stake; thence N. 82 ½ W. 15 poles and 3 links to a stake; thence N. 9 ½ E. 26 poles to a post, corner to Robinson and Dobinson; thence S. 74 E. 44 poles and 4 links to a post; thence N. 8 E. 45 poles and 9 links to a hickory; thence S. 80 E. 103 poles to a post, corner to Tebay and Miller; thence S. 10 W. 52 poles to a post; corner to George Finsley; thence N. 73 ½ W. 74 poles to a post; thence S. 15 W. 43 2/3 poles to the place of beginning, containing 40 ½ acres, be the same more or less.

9.      Defendant EPA is an agency of the United States established pursuant to Reorganization Plan No. 3 of 1970, 84 Stat. 2086. EPA has primary responsibility for the enforcement of those aspects of the CWA not generally enforced by USACE under §404 of the CWA (33 U.S.C. §1344).  EPA can take lead enforcement authority of §404 in extraordinary circumstances.  EPA conducts, and has conducted in its dealings with Plaintiffs in this matter, aspects of its enforcement activities by and through its contract agents Arctic Slope Regional

5

Corporation ("ASRC"), ASRC Management Services, Inc., and ASRC Primus Solutions, and employees of those contract agents, including but not limited to one Anne F. Gold.[1]

10.     Defendant Gina McCarthy is the Administrator of the EPA, and oversees the EPA's enforcement of the CWA. She is sued in her official capacity only.

## IV. Factual Allegations

11.     Plaintiffs own the property, a 51.5 acre parcel of land located in Parkersburg, Wood County, West Virginia. It is located 2,300 linear feet south of the intersection of West Virginia Route 95 and West Virginia Route 68.

12.     The Property is in the vicinity of a tributary (Neal Run) which flows into the Little Kanawha River.

13.     The area of the Property where mass balance earthwork has been conducted by Marketing & Planning Specialists Limited Partnership does not substantially affect the physical, chemical, or biological integrity of Neal Run or the Little Kanawha River, nor does a visible bed and bank connect the mass balance earthwork areas on the Property with Neal Run and therefore,

---

[1]     ASRC Management Services, Inc. won a multimillion dollar contract in 2005 to provide a range of services to EPA including "support[ing] EPA at 17 sites nation-wide managing the full life cycle of EPA information including support for EPA Records, Libraries, Freedom of Information Act (FOIA), Privacy, Superfund, and EDOCKET initiatives. ASRC MS staff will manage EPA collections of scientific and technical data, respond to requests for information, develop virtual services to reach the public and agency staff at their desktops, and maintain the EPA home page www.epa.gov. Other professional services include training, document conversion, imaging, data collection/classification, indexing/abstracting, inventory control, metadata creation, records scheduling, archiving and preservation." *See* http://www.businesswire.com/news/home/20051012005871/en/ASRC-Management-Services-Wins-125M-Contract-EPA. ASRC Primus Solutions appears to be a subsidiary of ASRC Federal Primus. ASRC Federal Primus "provides federal government agencies a complete spectrum of operations and maintenance, facilities management and logistics services." EPA is listed as one of its customer base. It is unclear for what purposes, but "Business process support" in the realm of **"**Records and content management" is listed among its services. *See* http://www.asrcfederal.com/primus/pages/default.aspx.

the mass balance earthwork areas on the Property, named in subject to the compliance order are not subject to the CWA.

14.     Prior to Marketing & Planning Specialists Limited Partnership and Foster Farms, LLC's ownership of the Property, it was owned by The Endurance Group, LLC ("Endurance"). Endurance was forced into bankruptcy, Case No. 4:09-40053, in the United States Bankruptcy Court for the Southern district of West Virginia. Prior to the bankruptcy proceeding, Endurance was facing enforcement action by the EPA related to conditions on a portion of the Property unrelated to the Marketing & Planning Specialists Limited Partnership's construction work. The portion of the Property where Endurance caused a disturbance was in a "blueline" stream unnamed tributary of Neal Run, graphically designated as an intermittent stream on U.S. Geological Service ("USGS") mapping of the area.

15.     EPA was aware of Endurance's bankruptcy, and several months before the agency formally intervened in the bankruptcy, before Plaintiffs were even known to EPA, the agency had decided to "arm twist" whoever the new purchaser would be in order to help finance the remediation of the already existing issues on the Property. *See* Exhibit A.

16.     Foster Farms, LLC and Marketing & Planning Specialists Limited Partnership purchased the Property out of the bankruptcy estate on October 29, 2009, pursuant to the "AGREED ORDER AUTHORIZING THE SALE OF REAL ESTATE PURSUANT to 11 U.S.C. §363(b), (f) and (m) and §105(a), FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, INCLUDING ANY AND ALL CLAIMS OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY AND THE U.S. ARMY CORPS OF ENGINEERS AND TO ALLOW 11 U.S.C. §506(c) EXPENSES."

17.     The deeds for the Property were made part of the property sale bankruptcy order and contained restrictions on the amount of encroachment that EPA and USACE could make in remediating the pre-existing issues on the Property ("EPA and Corps [USACE] shall be limited to accessing only that portion of the Real Estate within 30 feet of the toe of the fill discharged by the Debtor"), and also limited the monetary amount that the new owner could be required to contribute to the remediation ("all such liability of Purchaser to the EPA and Corps shall attach to the $50,000.00 remediation fund established under the Purchase Agreement[.]"*See* Exhibit B.

18.     Despite EPA's formal intervention in the bankruptcy and actual knowledge of the restrictions set forth in the deeds from the bankruptcy sale, EPA, by and through its contracted consultant, developed a remediation plan that violated the restrictive terms and conditions of the Property deeds. Rather than asking its consultant to constrain the propose remediation within the restrictions of the bankruptcy order restrictions, EPA simply forwarded the plan as it was to Ron Foster on June 7, 2010.

19.     On June 8, 2010, Mr. Foster objected to EPA's proposed remediation plan for the pre-existing issues on the Property as a violation of the restrictions in the deeds, and tendered to EPA the maximum monetary obligation that the purchaser was subject to under the term of the deeds/bankruptcy order.

20.     On June 10, 2010, Todd Lutte of EPA forwarded Mr. Foster's rejection of the proposed remediation, via email to Pam Lazos, also of EPA. The Lutte email simply says, "Let's talk." *See,* Exhibit C. Both EPA's Pam Lazos and Todd Lutte consulted with Department of Justice regarding the Property. *See infra* Exhibit R, Log entry numbers 6 and 7.

21.     A conference call was scheduled by EPA to discuss the remediation plan for the legacy Endurance bankruptcy issues. Mr. Foster's June 8, 2010 email to Todd Lutte declined to

participate in that conference call due to the unacceptable nature of the proposed remediation plan. *Id.* Sometime shortly thereafter, probably during the week of June 14, 2010, Mr. Foster had a teleconference with Pam Lazos of EPA. During this teleconference, to the best of Mr. Foster's recollection, Pam Lazos said words to the effect of "how dare" Mr. Foster unilaterally cancel the conference call.  Ms. Lazos also stated words to the effect that Mr. Foster "would pay" for his rejection of the proposed remediation plan for the legacy Endurance issues and for not taking part in the conference call.  Ms. Lazos also told Mr. Foster words to the effect of "We will see who has more authority, the Bankruptcy Court, or the EPA."  Ms. Lazos' words implicitly threatened that Plaintiffs' new activities on the Property, well removed from the location of the Endurance violations, and would now be subject to retaliatory EPA enforcement.  Based on information obtained in discovery, between July 9 and July 13, 2010  Mr. Lutte and Ms. Lazos had conversations with Stephen Field, Branch Chief, Water Law Branch, Office of Regional Counsel EPA Region III, and Austin Taylor of the U.S. Department of Justice for "assessment of filings in Endurance Group bankruptcy proceeding[.]" Upon information and belief, these conversations explored either ways to bring the Foster Plaintiffs under EPA enforcement scrutiny, and/or find other ways to force the Foster Plaintiffs to remediate Endurance legacy issues otherwise precluded by the terms of the bankruptcy order in retaliation for Plaintiffs rejecting the original proposed remediation.  Only heavily redacted versions of some of these emails have been produced in this litigation or in response to FOIA.  Pamela Lazos also kept personal notes on the case against the Foster Plaintiffs dating from June 2010 through June 2013. The initiation month of her notes corresponds to the time frame that Mr. Foster rejected the proposed mitigation plan as beyond the scope of the bankruptcy order.

22.     And indeed, within less than three months of Mr. Foster's requiring EPA to abide by the bankruptcy order and deed restrictions, the June 10, 2010 Lutte/Lazos email and the threatening phone conversation with Pam Lazos, the activities of Plaintiffs on the remainder of the Property not subject to the pre-existing remediation became the subject of new, intense EPA enforcement scrutiny.

23.     On September 9, 2010, EPA's Stephanie Andreescu (nee Chin) obtained illicit entry[2] onto the Property by relying on the representations of a trespasser (thus herself becoming a trespasser).  Ms. Andreescu and possibly other EPA representatives concluded on the basis of a billboard advertisement and (according to her summary report) representations by the trespasser, one Bryan Scott Moore, that Plaintiffs had filled streams and disturbed aquatic resources.  *See* Exhibit D.  Ms. Andreescu also reported initially, on the basis of Mr. Moore's interview that alleged fill activities had already been conducted by the Foster Plaintiffs, when in fact no cut and fill activities had as yet even been undertaken. Indeed, in deposition taken on September 16, 2015, Mr. Moore confirmed under oath that he did not represent to Ms. Andreescu that any streams had been filled. *See* Deposition Extract of Bryan Scott Moore at 69-70 (September 9, 2015), Exhibit E.  No cut and (non-jurisdictional water) fill earthwork on the site took place until approximately a month later. Regardless of timing, any and all cut and fill activities (i.e. mass balancing earthwork) were not conducted in jurisdictional waters.

24.     EPA's new enforcement efforts against the Plaintiffs began a roughly fifteen month back and forth between Plaintiffs, EPA and USACE over the issue of whether or not Plaintiffs activities had impacted jurisdictional waters.

---

[2]     Although contact information for the Property was clearly marked on a sign that both Andreescu and Lutte acknowledge they saw, both admitted that neither of them made any attempt to contact the owner at the time.  This failure to seek consent is expressly contrary to published EPA policy for entry onto private property set forth under a different program. *See*, USEPA Memorandum "Entry and Continued Access Under CERCLA" (June 5, 1987) available at http://www2.epa.gov/sites/production/files/2013-09/documents/cont-access-mem.pdf.

25.     On April 26, 2011, an email from USACE to EPA noted that EPA's own report only indicated that jurisdictional waters "may" exist at the site.  *See* Exhibit F.

26.     On January 24, 2012, Defendants issued a compliance order to Foster Farms, LLC, claiming that the Property was subject to the CWA, and alleging that Plaintiffs had illegally filled an unnamed tributary on the property. *See* Exhibit G. The compliance order was issued to Foster Farms, LLC, however both Foster Farms, LLC and Marketing & Planning Specialists Limited Partnership own parcels of land upon which the landscaping was conducted, and Marketing and Planning Specialists Limited Partnership was the only entity responsible for construction activities on the Property.

27.     The order also required Plaintiffs to submit a detailed restoration plan within forty-five (45) days of the effective date of the order (the day on which Mr. Foster received the order).

28.     Defendants further stated that any violation of the order could result in criminal sanctions (imprisonment) and fines of up to $50,000 per day.

29.     EPA has made clear that the agency relied solely upon a private consultant's preliminary opinion of jurisdictional status over the site in question in support of its compliance order in violation of 33 U.S.C. § 1311(a).  *See* Exhibit H.  This consultant, Jacob White of Randolph Engineering, did not take the factors of the *Rapanos* decision into consideration in rendering its preliminary opinion. Later, after taking the *Rapanos* factors into consideration, the consultant's final determination concluded that the area at issue was not in fact jurisdictional. EPA has arbitrarily ignored the consultant's final determination and instead relies upon the consultant's disavowed preliminary finding to support the agency's allegation that the earthwork performed by Marketing & Planning, LP constitutes an unauthorized discharge of dredged or fill

material to waters of the United States.  Significantly, during discovery, Mr. White was deposed and stated that after considering a later consultant's assessment of the adjacent property, he additionally stated under oath that he *no longer* considered the area in question to even be jurisdictional under the CWA for the same reasons that the later consulting firm reached the same conclusion. *See* Deposition Extract of Jacob White at 135-138 (June 10, 2015), <u>Exhibit I</u>.

30.     Beginning at least by February 15, 2012 and extending into at least February of 2013, Defendant representatives conducted internal email discussions amongst themselves concerning the nature of the corporate Plaintiffs' legitimacy (Pam Lazos told Anne Gold in an email dated February 15, 2012 that she thought Plaintiff Marketing & Planning Specialists Limited Partnership "is a fly-by-night"), the ownership of the Property, the basis of EPA's "significant nexus" finding, mitigation on pre-bankruptcy purchase areas of the Property,  and EPA's jurisdictional determination.  Within this same time frame, EPA representatives also communicated with representatives of West Virginia's Senator Manchin's office concerning the extent to which EPA could try to force pre-bankruptcy purchase issues to be rectified through enforcement activities against the Plaintiffs.

31.     On February 22, 2012, USACE, wrote Mr. Foster explaining that a Clean Water Act jurisdictional determination had been made that Mr. Foster's property contained "4800 linear feet of jurisdictional streams[.]" Interestingly, this determination was based on the same delineation by Jacob White which has since been disavowed twice by Mr. White.  *See* <u>Exhibit J</u>. The letter invited Mr. Foster to make an administrative appeal pursuant to 33 C.F.R. SECTION 331 not later than April 20, 2013.

12

32.     On April 20, 2012, Marketing & Planning Specialists Limited Partnership timely filed an administrative appeal of the February 22, 2012 USACE jurisdictional determination. *See*, Exhibit K.

33.     On April 5, 2012, EPA notified Mr. Foster that it was "superseding [USACE's] authority to verify the jurisdictional status of aquatic resources at the [Property]." *See* Exhibit H.

34.     On May 29, 2012, USACE informed Mr. Foster that it had timely received Marketing & Planning Specialists Limited Partnership's Request for Appeal of USACE's February 22, 2012 jurisdictional determination, but that due to EPA's April 5, 2012 superseding of jurisdictional determination authority, the earlier USACE determination was no longer an appealable action.  USACE stated that EPA's superseding thus precluded the Plaintiffs from pursuing their due process right to administratively challenge the jurisdictional determination. *See* Exhibit L.  During discovery, when asked about EPA superseding USACE's authority in a Clean Water Act Section 404 jurisdictional determination USACE's Rick Hemann stated that this instance is the only time he has personally seen such action taken by EPA in his twenty (20) years of experience as a regulator. *See* Deposition Extracts of Rick Hemann at 158-159 (June 17, 2015) Exhibit M. When asked whether USACE's foreclosure of an after-the-fact Clean Water Act Section 404 permit application submitted by Foster Plaintiffs to USACE due to EPA's interjection in the case Mr. Hemann stated,  "None of this is common, what happens here." *Id.*  . at 127.

35.     On March 21, 2012, the U.S. Supreme Court handed down the seminal decision in *Sackett v. EPA*. The holding of that decision requires that persons subject to EPA compliance orders must be given a right to appeal and review of such orders. 132 S.Ct. 1367, 1374 (2012).

36.     On June 5, 2012 and June 11, 2012, Mr. Foster wrote Defendant in response to the compliance order. This was responded to by the EPA on June 27, 2012. In those letters, Mr. Foster asked to EPA for clarification on the jurisdictional determination and "significant nexus of the Site." In its response, Defendants claimed that "EPA has no additional information to provide to you in this regard and is basing its jurisdictional determination upon the extensive information gathered by the [USACE] as well as EPA's visits to the site." *See* Exhibit N.

37.     Upon information and belief gathered during discovery in this case, at some time during 2012, someone at EPA conducted unprecedented political research on plaintiffs Ron Foster and Marketing and Planning Specialists, LP.  The document USEPA 002570-002573 shows a list of 2009 to 2010 political campaign contributions and contributors in Putnam County, West Virginia. *See* Exhibit O. On the second page of the document, plaintiffs Ron Foster and Marketing and Planning Specialists, LP are circled and underlined, respectively, for their March 3, 2010 $250.00 contribution to "McKinley for Congress." Despite the Foster Plaintiffs' deposing half dozen EPA employees, no one could identify the origin of the document.  Most said they had never seen the document prior to preparing for deposition.  Only Pamela Lazos, admitted to recollecting that she had seen the document prior to discovery. Ms. Lazos stated that she could not recollect where or how she obtained the document, but stated that she did believe it had been in her files.   *See* Deposition Extract of Pamela Lazos at 28-29 (August 20, 2015) Exhibit P.  Jeffrey Lapp, EPA Region III's Associate Director for the Office of Environmental Programs, deposed that he had "never seen a document like this before." Moreover, Mr. Lapp testified that he could see no reason why anyone's political contributions would be relevant to an EPA enforcement matter, and that if anyone suggested the conducting of such political research he "would vehemently reject that proposal."   *See* Deposition Extract of

Jeffrey Lapp at 179-182 (July 9, 2015) Exhibit Q. Numerous documents related to EPA's preparation of responses to Congressional inquiries have been withheld (*see* EPA Privilege Log, Exhibit R), some or all of which may address the response to Congressman McKinley's inquiry to the agency on behalf of Ron Foster fall within time frames for which it is reasonable to believe that the political research on Ron Foster and Marketing & Planning Specialists, LP was conducted.[3]   Ms. Lazos' withheld personal notes also bridge the timespan when the unprecedented, highly irregular, and indeed shocking, political research (which Ms. Lazos stated in deposition that she recalled being in her files) had to have been conducted or received. Anne Gold is also implicated in the political research conducted.

38. Mr. Foster contacted EPA Region III on numerous occasions requesting an appeal but was never given any information on how to pursue Plaintiffs right of appeal. Mr. Foster has notified EPA in writing requesting information on how to file an administrative appeal of the compliance order but has never received any explanation from EPA on how to do so. *See* Exhibits V through Y.

39. Despite the clear restrictions of the 2009 Endurance bankruptcy order, on August 20-21, 2012 Ms. Lazos discussed with other EPA personnel the possibility of crafting

---

[3]     These documents may also help explain why Ms. Lazos inexplicably redacted certain USACE email content (Exhibits S & T) that made clear that USACE opposed a suggested mitigation plan ***not*** due to the "the extent of violations" as represented by EPA Regional Administrator Shawn Garvin in an August  13, 2012 letter to Congressman McKinley (Attachment U).  Rather, the unredacted emails show that USACE simply did not want to verify a jurisdictional delineation if EPA was unwilling to consider work by Foster Plaintiffs on Endurance legacy areas as a valid mitigation offset for the Foster Plaintiffs' alleged unauthorized work.  Ms. Lazos also likely drafted the Garvin letter to McKinley.  Regardless who the author of the language in the letter is, EPA misrepresented to Congressman McKinley the basis for USACE's reluctance to pursue the required jurisdictional delineation (i.e. EPA's opposition to mitigation credit, as opposed to the alleged "extent of violations").

remediation plans for pads 4-5 that incorporate mitigation on the Endurance (bankruptcy debtor/prior owner) legacy areas. *See* Exhibit Z (USEPA002787, MPS003380-MPS003381).[4]

40. On or about October 25, 2013, Mr. Foster received a letter from counsel for EPA stating that its jurisdictional determination was not a "final" agency action and therefore no appeal was required. EPA utterly failed to address the appeal of the compliance order per *Sackett* in its letter. *See* Exhibit AA.[5]

41. On or about May 12, 2014, Mr. Foster received a letter dated May 8, 2014, stating that his case had been referred to the U.S. Department of Justice for "civil prosecution" and stating that EPA believes that a civil penalty in the amount of $414,830.00 would be an appropriate fine to be imposed upon the Plaintiffs. EPA yet again completely ignored Mr. Foster's request for instructions on how to appeal the compliance order and instead simply notified Mr. Foster that he was being recommended to face prosecution and a penalty of almost a half a million dollars. *See* Exhibit BB.

42. In addition to the very real and present threat of the civil penalty proposed by EPA, and the cost of remediation should EPA prevail, the Foster Plaintiffs have also suffered other real and ongoing costs and losses. Due to the delay in the completion of the construction project because of the compliance order, the storm water permitting has had to remain in place, adding renewal fee and monitoring costs well beyond planned timeframes. The compliance

---

[4] These documents also strongly suggests that other EPA representatives (i.e. Stephen Field and possibly Todd Lutte) were encouraging that representations be made to Senator Manchin (and/or his constituent Mr. Blackwell) that the agency was open to pursuing remedies unconstrained by the limitations of the Bankruptcy Court order in the Endurance matter. EPA's willingness to circumvent Bankruptcy Court order constraints can only be viewed as improper, and presumably (let us hope) unique or uncommon.

[5] Of note is the fact that EPA relied upon the district court case of *Hawkes v. USACE*, 963 F. Supp. 2d 868 (Minn. 2013) as authority for its position that EPA's April 5, 2012 jurisdictional determination could not be appealed. That district court opinion has now been overruled by both the U.S. 8th Circuit Court *Hawkes v. USACE*, 782 F.3d 994 (8th Cir. 2015) and the U.S. Supreme Court, *USACE v. Hawkes*, (Case No. 15-290) (Slip Op., filed May 31, 2016) . *See* [Dkt. #44] and [Dkt. #143].

order has also required revised fill materials handling on the development pads which has increased cost of the project and rendered some portions of the property unusable. The pending enforcement of the compliance order has effectively frozen the property, rendering it commercially undesirable to potential purchasers or lessees.

43.    On May 31, 2016, in *United States Corps of Engineers v. Hawkes*, (Case No. 15-290) (Slip Op., filed May 31, 2016), the U.S. Supreme Court unanimously ruled that landowners have a right to appeal when any agency issues a jurisdictional determination that their property is subject to federal jurisdiction under the Clean Water Act.

## V. Legal Background

44.    In 1972, Congress enacted the CWA to regulate the navigable waters of the United States. 33 U.S.C. § 1251, *et seq.*

45.    Section 404 of the CWA, 33 U.S.C. § 1344, authorizes the USACE to issue permits for the discharge of dredge and fill material into the navigable waters of the United States. In extraordinary circumstances, EPA is authorized to supersede the authority of USACE for Section 404 permitting. 33 U.S.C. § 1344.

46.    Section 301(a), *id.* § 1311(a) prohibits the unpermitted discharge of dredge and fill material into the navigable waters of the United States.

47.    Sections 308 and 309, *id.* §§ 1318, 1319(a) authorize the EPA to issue compliance orders for violations of the CWA, including unpermitted discharges of dredge and fill material into the navigable waters of the United States.

48.     Administrative processes already exist for reviewing findings and actions such as jurisdictional waters determinations and compliance orders.  *See generally*, 33 CFR Part 331 and 40 CFR Part 22.

49.     In *Rapanos v. United States*, the Supreme Court explained that the CWA does not provide the EPA with jurisdiction over certain wetlands that are connected to non-navigable tributaries of traditional navigable waters. 547 U.S. 715 (2006).

50.     Subsequently, the United States Court of Appeals for the Fourth Circuit held that the controlling standard for CWA jurisdiction is the "significant nexus" test.  *Precon Dev. Corp., Inc. v. U.S. Army Corps of Engineers*, 633 F.3d 278, 283 (4th Cir. 2011) (citing *Rapanos*, 547 U.S. at 780).

51.     The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Due process and equal protection constitutional violations by the Government are actionable as improper agency action under the APA for being "arbitrary, capricious, an abuse of discretion[,] not in accordance with law . . . [,] contrary to constitutional right.  .  . in excess of statutory.  .  . authority .  .  . [and/or] without observance of procedure required by law… [and/or] unsupported by substantial evidence … [and/or] unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court [.]"  5 U.S.C. § 706(2)(A)-(F).

52.     In *Sackett v. Environmental Protection Agency*, a decision handed down on March 21, 2012, the United States Supreme Court held that an EPA's compliance order was a "final agency action" for which Constitutional due process requires that a right to appeal, review and challenge the compliance order must be provided under the Administrative Procedure Act.

132 S.Ct. 1367, 1374 (2012). The Court further held that nothing in the CWA precluded judicial review. *Id.*

53.     In *United States Corps of Engineers v. Hawkes*, (Case No. 15-290) (Slip Op., filed May 31, 2016) the United States Supreme Court unanimously affirmed the Eighth Circuit's ruling in *Hawkes v. United States Corps of Engineers*, 782 F.3d 994 (8ᵗʰ Cir. 2015) that an immediate right of appeal of exists for CWA jurisdictional determinations due to the very real and onerous burdens, costs and risks such determinations impose and/or how they constrain otherwise lawful activity.

54.     USACE has administrative processes established for providing review and appeal of jurisdictional determination such as at issue in this case.   *See generally*, 33 CFR Part 331.

55.     The United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "'The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right.'" *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)(quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)).

56.     "A plaintiff seeking to recover for First Amendment retaliation must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." Constantine, 411 F.3d at 499 (citing McGraw, 202 F.3d at 686). The Fourth Circuit's Constantine opinion explained that the "adverse[] effect" on First Amendment rights may be shown by conduct that would tend to "chill the exercise of constitutional rights":

We have never held that a plaintiff must prove that the allegedly retaliatory conduct caused her to cease First Amendment activity altogether. The cause of action targets conduct that tends to <u>chill</u> such activity, not just conduct that <u>freezes</u> it completely. . . . . Thus, for purposes of a First Amendment retaliation claim … a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter "a person of ordinary firmness" from the exercise of First Amendment rights. *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir.2004); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir.2002); *Carroll v. Pfeffer*, 262 F.3d 847, 850 (8th Cir.2001); *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir.2001); *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir.2000); *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982).

411 F.3d at 500 (citations abridged)(emphasis in original).

57.     "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association," and "[w]hen an individual contributes money to a candidate, he exercises both of those rights: The contribution 'serves as a general expression of support for the candidate and his views' and 'serves to affiliate a person with a candidate.'" *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1448 (2014). *See also Buckley v. Valeo*, 424 U.S. 1, 14 (1976)("[C]ontribution . . . limitations operate in an area of the most fundamental First Amendment activities. Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution.").


## VI. <u>Injunctive Relief Allegations</u>


58.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 57 as though fully set forth herein.

59.     If an injunction does not issue enjoining the Defendants to vacate the compliance order against Plaintiffs pending the appeal of the underlying jurisdictional determination(s),

20

Plaintiffs will be irreparably harmed. Plaintiffs are presently and continuously injured by the compliance order's issuance because the enforcement forces Plaintiffs to continue to maintain ongoing permitting and monitoring expenses, continue suffering increased costs in earth materials handling and property use sterilization, continue suffering commercial inviability of the property, and to restore the property to its original condition at great expense, or, be subjected to severe civil and criminal penalties before the propriety of EPA's claim that jurisdictional waters are even present has been properly adjudicated.

60.    Plaintiffs have no speedy, adequate, and plain remedy at law.

61.    If not enjoined by the Court, Defendants will continue to threaten to—and actually enforce—the compliance order in derogation of Plaintiffs' due process rights.

62.    Defendants' compliance order is a final agency action subject to timely right of appeal and review. *Sackett*, 132 S.Ct. at 1374.  The underlying February 22, 2012 (USACE) and April 5, 2012 (EPA) jurisdictional determinations are also final agency actions subject to timely right of appeal and review.  *Hawkes v. United States Corps of* Engineers, (Case No. 15-290) (Slip Op., filed May 31, 2016, 2015).


## VII. First Claim of Relief (declaratory and/or injunctive relief)

60.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 62 as though fully set forth herein.

61.    An actual and substantial controversy exists between Plaintiffs and Defendants over Defendants' improper, animus based, and retaliatory enforcement the CWA and failure to comply with the U.S. Constitution in: (i) determining that Plaintiffs' property is subject to the CWA (jurisdictional determination); (ii) seeking to hold Plaintiffs liable for violation of the

CWA, and the compliance order by an administrative enforcement process tainted by irrational animus and improper retaliatory motivation; (iii) improperly pre-empting Plaintiffs appeal right before USACE; and (iv) without the Defendants affording Plaintiffs an opportunity to appeal and be heard in order to challenge the compliance order and CWA jurisdictional determination(s).

62.    The dispute at hand is justiciable because Defendants' failure to comply with these laws is the direct result of final agency action that has caused and will continue to cause immediate and concrete injury to Plaintiffs. Plaintiffs are presently and continuously injured by the arbitrary, capricious, abusive, and unconstitutional issuance of the compliance order and jurisdictional determination(s) and because the enforcement has forced Plaintiffs to continue to maintain ongoing permitting and monitoring expenses, continue suffering increased costs in earth materials handling and property use sterilization, continue suffering commercial inviability of the property, and to be exposed to catastrophic costs to restore the property to its original condition at great expense, and/or, be subjected to severe civil and criminal penalties.

63.    Further, Defendants' compliance order is a final agency action subject to timely right of appeal and review. *Sackett*, 132 S.Ct. at 1374.  The underlying February 22, 2012 (USACE) and April 5, 2012 (EPA) jurisdictional determinations are also final agency actions subject to timely right of appeal and review.  *United States Corps of Engineers v. Hawkes*, (Case No. 15-290) (Slip Op., filed May 31, 2016).

64.    Grounds for APA judicial review include review improper agency action under the APA for being "arbitrary, capricious, an abuse of discretion[,] not in accordance with law . . . [,] contrary to constitutional right [retaliation for exercise of First Amendment right of political speech and participation]  .  .  . in excess of statutory  .  .  . authority  .  .  . [and/or] without observance of procedure required by law… [and/or] unsupported by substantial evidence …

[and/or] unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court [.]" 5 U.S.C. § 706(2)(A)-(F)."

65.     Declaratory and/or injunctive relief is, therefore, appropriate to resolve this controversy, and Plaintiffs therefore seek a declaratory order and injunctive relief as follows:

a.       Declaring that the EPA compliance order is invalid under the U.S. Constitution and/or APA, vacating the compliance order and granting an injunction barring EPA from pursuing enforcement action or imposing any penalty against the Plaintiffs due to EPA's violation of procedural due process, demonstrated improper animus and retaliation for free exercise of First Amendment rights; and

b.       Declaring that the EPA jurisdictional determination is invalid under the U.S. Constitution and/or APA, vacating the jurisdictional determination and granting an injunction barring EPA from making the jurisdictional determination in this case relating to the Plaintiffs' activities due to EPA's violation of procedural due process, demonstrated improper animus and retaliation for free exercise of First Amendment rights; and either

c.       Ordering that, due to EPA's violation of procedural due process, demonstrated improper animus and retaliation for free exercise of First Amendment rights, improper commandeering of the jurisdictional determination role from USACE, and in issuing the compliance order:

(i) That this Court, shall rule on all issues raised in this litigation, including the merits of the CWA basis of the jurisdictional determination(s) and compliance order, after a trial *de novo*, or alternatively,

(ii) That this Court shall remand this matter back to USACE and restore wholly and without prejudice all of the Plaintiffs' rights to pursue their right to a fair and impartial

administrative appeal of the jurisdictional determination made by USACE, pursuant to USACE's administrative appeal process, which was unlawfully precluded by EPA's unconstitutional actions; or

d.      Declaring upon either the pleadings or summary judgment that due to EPA's violation of procedural due process, demonstrated improper animus and retaliation for free exercise of First Amendment rights, improper commandeering of the jurisdictional determination role from USACE, and the facts plead and/or submitted in dispositive motions and memoranda, that both the compliance order; and EPA's decision that the area(s) of the Property at issue in the compliance order constitute CWA jurisdictional waters of the United States are in error and void as a matter of law.

## VIII. Second Claim for Relief (statutory violation)

66.      Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 65 as though fully set forth herein.

67.      Plaintiffs' property is not subject to the CWA because under *Rapanos* and *Precon*, the property (1) does not substantially affect, either by itself, or in combination with similar properties in the area, the physical, chemical, and biological integrity of any traditional navigable waters, and (2) it is not connected to any other body of water such that one cannot discern where that body of water ends and the property begins.  Moreover, the evidence supports that Defendants' treatment of Plaintiffs is improperly motivated and evinces an abuse of process.

68.      Defendants unconstitutionally denied Plaintiffs their due process right of an immediate right of appeal of exists for the CWA jurisdictional determinations due to the very real and onerous burdens, costs and risks such determinations impose and/or how they constrain

otherwise lawful activity. *United States Corps of Engineers v. Hawkes*, (Case No. 15-290) (Slip Op., filed May 31, 2016).

69.     Defendants' determination that Plaintiffs' property is subject to the CWA is, therefore, "arbitrary, capricious, an abuse of discretion[,] not in accordance with law . . . [,] contrary to constitutional right [retaliation for exercise of First Amendment right of political speech and participation] .  .  . in excess of statutory .  .  .authority .  .  . [and/or] without observance of procedure required by law… [and/or] unsupported by substantial evidence … [and/or] unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court [.]"  5 U.S.C. § 706(2)(A)-(F).


## XI. Third Claim for Relief (U.S. Constitutional violation—First Amendment Retaliation)


70.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraph 1 through 69 as though fully set forth herein.

71.     Plaintiffs engaged in protected First Amendment activity in the form of their March 3, 2010 $250.00 contribution to 'McKinley for Congress.'

72.     In 2012, some agent or agents of the Defendants conducted political research on the Plaintiffs, including, but not limited to, the March 3, 2010 $250.00 contribution to 'McKinley for Congress.'

73.     In 2012, the Defendants took a set of irregular and burdensome enforcement measures against Plaintiffs which are not justifiable by legitimate law enforcement rationales and adversely affect Plaintiffs' First Amendment rights.

74.     Defendants' retaliatory behavior is temporally proximate to the time when the Defendants gained knowledge of Plaintiffs' protected First Amendment activity.

75.     There is a causal relationship between Plaintiffs' protected First Amendment activity and Defendants' conduct evinced by the fact that Defendants' retaliatory behavior is temporally proximate to the time when the Defendants gained knowledge of Plaintiffs' protected First Amendment activity.

76.     Defendant's conduct constitutes reckless and/or callous indifference to the Plaintiff's federally protected First Amendment rights.

77.     Plaintiffs, as persons of "ordinary firmness" are deterred from engaging in protected   First Amendment political activity due to their fear of retaliatory enforcement sanctions brought against them, including, but not limited to, the nearly half a million dollars in fines and the foreclosure of valuable legal options available to other persons.

78.     Defendants' improper and animus based jurisdictional determination and enforcement actions, undue delay in providing a forum for hearing, irregular sequencing of jurisdictional review, preclusion of other appeal and review of jurisdictional determination, and issuance of a compliance order threatening imminent imposition of civil and criminal penalties without providing Plaintiffs a just, fair and impartial enforcement process and without giving Plaintiffs' a timely opportunity to appeal and be heard, and in retaliation against Plaintiffs for the exercise of their First Amendment rights of political speech and participation guaranteed to all citizens by the Constitution of the United States of America.  *See* U.S. CONST. amend. I. violate Plaintiffs' constitutionally protected rights.

79.     The jurisdictional determination(s) and compliance order are therefore null and void, and without legal effect, must be vacated.

## X. <u>Fourth Claim for Relief (U.S. Constitutional violation—Procedural Due Process)</u>

80.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraph 1 through 79 as though fully set forth herein.

81.     Defendants' improper and animus based enforcement actions, retaliation for free exercise of First Amendment rights, delay in providing a forum for hearing, irregular sequencing of jurisdictional review and issuance of a compliance order threatening imminent imposition of civil and criminal penalties, improper commandeering of the jurisdictional determination role from USACE, all without providing Plaintiffs a just, fair and impartial enforcement process and thus obfuscating and precluding Plaintiffs' from having the opportunity to appeal and be heard in a timely and meaningful manner, violates Plaintiffs' procedural due process rights, including but not limited to the impartial and fair process, of law guaranteed to all citizens by the Constitution of the United States of America. *See* U.S. CONST. amend. V.

82.     The compliance order and EPA jurisdictional determination are therefore in error, null and void, without legal effect, and must be vacated.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiffs pray for judgment as follows:

1.     A declaratory order and injunction from the Court directing relief as follows:

a.     Declaring that the EPA compliance order is invalid under the U.S. Constitution and/or APA, vacating the compliance order and granting an injunction barring EPA from pursuing enforcement action or imposing any penalty against the Plaintiffs due to EPA's

violation of procedural due process, demonstrated improper animus and retaliation for free exercise of First Amendment rights; and

b.        Declaring that the EPA jurisdictional determination is invalid under the U.S. Constitution and/or APA, vacating the jurisdictional determination and granting an injunction barring EPA from making the jurisdictional determination in this case relating to the Plaintiffs' activities due to EPA's violation of procedural due process, demonstrated improper animus and retaliation for free exercise of First Amendment rights; and either

c.        Ordering that, due to EPA's violation of procedural due process, demonstrated improper animus and retaliation for free exercise of First Amendment rights, improper commandeering of the jurisdictional determination role from USACE, and in issuing the compliance order:

(i) That this Court, shall rule on all issues raised in this litigation including the merits of the CWA basis of the jurisdictional determination(s) and compliance order after a trial *de novo*, or alternatively,

(ii) That this Court shall remand this matter back to USACE and restore wholly and without prejudice all of the Plaintiffs' rights to pursue their right to a fair and impartial administrative appeal of the jurisdictional determination made by USACE, pursuant to USACE's administrative appeal process, which was unlawfully precluded by EPA's unconstitutional actions; or

d.        Declaring upon either the pleadings or summary judgment that due to EPA's violation of procedural due process, demonstrated improper animus and retaliation for free exercise of First Amendment rights, improper commandeering of the jurisdictional determination role from USACE, and the facts plead and/or submitted in dispositive motions and memoranda,

that both the compliance order; and EPA's decision that the area(s) of the Property at issue in the compliance order constitute CWA jurisdictional waters of the United States are in error and void as a matter of law.

4.      For an award of damages as allowed by law, attorneys' fees, expenses, costs; and

5.      For an award of punitive damages; and

6.      For such other relief as the Court deems just and proper.

Plaintiffs request trial by jury.

Respectfully submitted,

**RON FOSTER, FOSTER FARMS, LLC and
MARKETING & PLANNING SPECIALISTS
LIMITED PARTNERSHIP**

By SPILMAN THOMAS & BATTLE, PLLC

_____*/s/ John C. Wilkinson, Jr.*_____
James S. Crockett, Jr. (WV State Bar No. 9229)
John C. Wilkinson, Jr. (WV State Bar No. 8869)
Spilman Thomas & Battle, PLLC
P.O. Box 273
Charleston, WV  25321-0273
Telephone: (304) 340-3800
Facsimile: (304) 340-3801
jcrockett@spilmanlaw.com
jwilkinson@spilmanlaw.com

29

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

RON FOSTER, MARKETING & PLANNING )
SPECIALISTS LIMITED PARTNERSHIP, and )
FOSTER FARMS, LLC, )
                           )
       Plaintiffs/Counter-Defendant, )
                           )      No. 2:14-cv-16744
     v. )
                           )
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY and GINA )
MCCARTHY, in her official capacity as )
Administrator, )
                           )
       Defendants/Counter-Claimant. )

## CERTIFICATE OF SERVICE

       I, J. C. (Max) Wilkinson, hereby certify that on September 16, 2016, I served the **CORRECTED SECOND AMENDED COMPLAINT**, with counsel of record with the Clerk of the Court via the CM/ECF system as follows:

| | |
|---|---|
| Carol A. Casto<br>Acting United<br>States Attorney<br>c/o Gary Call<br>Assistant United States Attorney<br>United States Attorney's Office<br>300 Virginia St, E, Rm 4000 \|<br>Charleston, WV 25301<br>V: (304) 345-2200 \| F: (304) 347-5443<br>Email: gary.call@usdoj.gov | John C. Cruden<br>Assistant Attorney General<br>Environment and Natural Resources Division<br>c/o Amanda Shafer Berman<br>United States Department<br>of Justice 600 D St. NW,<br>Ste 8000<br>Washington D.C. 20004<br>Telephone: 202-514-1950<br>Email:<br>amanda.berman@usdoj.gov |

*Counsel for Plaintiffs,*
/s/ John C. Wilkinson, Jr.
James S. Crockett, Jr. (WV State Bar No. 9229)
John C. Wilkinson, Jr. (WV State Bar No. 8869)
Gordon L. Mowen (WV State Bar No. 12227)
Spilman Thomas & Battle, PLLC
Post Office Box 273
Charleston, West Virginia 25321-0273
Telephone: (304) 340-3800
Facsimile: (304) 340-3801 (fax)
jcrockett@spilmanlaw.com

jwilkinson@spilmanlaw.com