.IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

RON FOSTER, MARKETING & PLANNING )
SPECIALISTS LIMITED PARTNERSHIP, and )
FOSTER FARMS, LLC, )
                                              )      No. 2:14-cv-16744

     Plaintiffs and Counterclaim Defendants, )
                                              )

     v. )
                                              )    **AMENDED**

UNITED STATES ENVIRONMENTAL )   **PROPOSED INTEGRATED**
PROTECTION AGENCY and SCOTT )    **PRETRIAL ORDER**
PRUITT, in his official capacity as )
Administrator, )
                                              )

     Defendants and Counterclaim Plaintiffs. )

## ~~AMENDED PROPOSED~~ INTEGRATED PRETRIAL ORDER

       Pursuant to Local Rule of Civil Procedure 16.7(b), Plaintiffs and Counterclaim Defendants

Ron Foster, Marketing & Planning Specialists, L.P. and Foster Farms, LLC (collectively,

"Plaintiffs") and Defendants and Counterclaimants the United States Protection Agency ("EPA")

and Administrator Scott Pruitt in his official capacity (collectively "Defendants" or the "United

States") submit this proposed integrated pretrial order.

**(1)**     <u>**RULE 26(A)(3) PRETRIAL DISCLOSURES AND OBJECTIONS**</u>

        (i)     The name and, if not previously provided, the address and telephone number
               (only new or known changes in contact information is listed) of each witness—
               separately identifying those the party expects to present and those it may call if
               the need arises;

           **(A)**    **For Plaintiffs and Counterclaim Defendants**

              1.  Expected to call:

                   a.  Ronald Foster

                   b.  Seth Walters

                   c.  Larry Carr

       d.  Larry George

       e.  Doug Hatfield

       f.  Jacob White

       g.  Daniel A. Metheny, P.E., PDC Services, PLLC, 4185 Cavin Fork Road, Ravenswood, WV 26164, (304) 532-8038.

       h.  Dane Pehrman, 411 Glen Avenue, Laurel Springs, NJ 08021 (215) 563-4220

       i.  Todd Lutte, USEPA

       j.  Richard Hemann, USACE

2. May call if needed:

       a.  Arnold Starnes, USEPA

Plaintiffs reserve the right to call any other witness or expert disclosed by Defendants. Plaintiffs also reserve the right to call any other witness or expert disclosed by the Plaintiffs by deposition transcript in addition to or in lieu of live testimony.

**(B)**     **For Defendants/Counterclaimants ("United States")**

1. Expected to call:

       a.  Todd Lutte, Environmental Scientist, Environmental Assessment and Innovation Division, EPA Region III;

       b.  Jeffrey Lapp, EPA Region III;

       c.  Rick Hemann, Regulatory Project Manager, Huntington District;

       d.  Peter Stokely, Clean Water Act Section 404 Coordinator, EPA Office of Civil Enforcement;

       e.  David Arscott, Stroud Water Research Center;

       f.  Charles Dow, Stroud Water Research Center;

       g.  Dave Walters, Walters Excavating;

       h.  Larry Carr; and

           i.   Ronald Foster.

(ii)     Witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition.

     **(A)**    **For Plaintiffs and Counterclaim Defendants**

     1.   Stephanie Andreescu

     2.   Bryon Scott Moore

     3.   Jayme Fuller.

     **(B)**    **For United States**

     1.   Stephanie Andreescu; and

     2.   Bryon Scott Moore.

(iii)    Identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

     **(A)**    **For Plaintiffs and Counterclaim Defendants**

     See attached Plaintiffs' Updated Exhibit List

Plaintiffs may amend this list to designate as an exhibit any document or item in the Administrative Record ("AR") or produced in discovery by either party if deemed necessary for Plaintiffs case. In addition, the Plaintiffs also reserve the right to use any exhibit identified by Defendants in their Rule 26(a)(3)(A)(iii) disclosures that is not objected to by the Plaintiffs. The Plaintiffs hereby reserve their rights, pursuant to Fed. R. Civ. P, 26(e), to supplement or correct the foregoing disclosures, if appropriate, including but not limited to revision necessary or appropriate upon any ruling of the Court on either parties motions for summary judgment.

     **(B)**    **For United States**

     *See* the United States' Third Amended Rule 26(a)(3) pretrial disclosures, attached here as Attachment A, for the identification of the exhibits the United States' expects to use at trial.

The United States reserves the right to use any exhibit identified by Plaintiffs in their Rule 26(a)(3)(A)(iii) disclosures that is not objected to by Defendants. The United States also reserves the right to present additional evidence for the purpose of impeachment or rebuttal. The United States hereby reserves its rights, pursuant to Fed. R. Civ. P, 26(e), to supplement or correct the foregoing disclosures, if appropriate, including but not limited to revision necessary or appropriate upon any ruling of the Court on either Party's motions for summary judgment.

(iv)     Objections to Rule 26(a)(3) Pretrial Disclosures

    **(A)     For Plaintiffs and Counterclaim Defendants**

1.  Objection to U.S. Ex. 20, lack of foundation and irrelevant as Jacob White has repudiated in later deposition his prior conclusions as to CWA jurisdiction represented in this document.

2.  Objection to U.S. Ex 34, lack of foundation and irrelevant, confusing and misleading, this document purports to show "streams" by blueline graphics on the mapping, but there is no foundation for the basis of these graphics nor any foundation as to how the state addressing and mapping board has any competence to so designate such features

3.  Objection to U.S. Ex 74, as inauthentic due to incompleteness, the missing flow chart can be found in Exhibit A to Plaintiffs' Response to Defendants' Motion for Leave and Surreply ECF Doc. 141-1, Page ID 1822 (see Plaintiffs' Exhibit item number 22 above)

4.  Objection to U.S. Ex. 174, lack of foundation and inauthentic due to incompleteness, no witness was able to identify the source document for this list

5.  Objection to U.S. Exs. 220-225, lack of foundation, irrelevant, misleading, use of aerial imagery to establish CWA jurisdiction is insufficient under agency guidance without ground validation for the required physical factors establishing jurisdiction

6.  Objection to U.S. Exs. 303-A, 303-B and 303-C, lack of foundation and irrelevant, confusing and misleading, this document purports to show "streams" by blueline graphics on the mapping, but there is no foundation for the basis of these graphics nor any foundation as to how for 303-B and 303-C the state addressing and mapping board has any competence to so designate such features

    **(B)     For United States**

4

1. The United States objects to Plaintiffs' broad reservation to amend its list to designate "any document or item" produced by either party if deemed necessary to Plaintiffs' case. The United States reserves its right to object to the untimely identification of such documents and to challenge their admissibility under the Federal Rules of Evidence.

2. The United States' objects to the following exhibits:

    i.  Plaintiffs' Exhibit 28 – Hearsay
    ii.  Plaintiffs' Exhibit 63 – Hearsay
    iii.  Plaintiffs' Exhibit 71 – Hearsay
    iv.  Plaintiffs' Exhibit 74 – Hearsay
    v.  Plaintiffs' Exhibit 107 – Hearsay
    vi.  Plaintiffs' Exhibit 110 – Hearsay
    vii.  Plaintiffs' Exhibit 111 – Hearsay
    viii.  Plaintiffs' Exhibit 113 – Hearsay (excluding NOAA data)
    ix.  Plaintiffs' Exhibit 128 – Hearsay
    x.  Plaintiffs' Exhibit 139 – Hearsay
    xi.  Plaintiffs' Exhibit 151 – Hearsay
    xii.  Plaintiffs' Exhibit 152 – Hearsay
    xiii.  Plaintiffs' Exhibit 153 – Hearsay
    xiv.  Plaintiffs' Exhibit 154 – Hearsay; and
    xv.  Plaintiffs Exhibits 162 to 164, 167 to 173, 176, 182, 185, 194, 198 and 205 -- Hearsay (audio in the videos)[1]

## (2)   CONTESTED ISSUES OF LAW REQUIRING A RULING BEFORE TRIAL

### (A)   For Plaintiffs and Counterclaim Defendants

1.   None.

### (B)   For United States

None.

## (3)   ESSENTIAL ELEMENTS THAT MUST BE PROVED TO ESTABLISH A CLAIM OR DEFENSE AND DAMAGES OR RELIEF SOUGHT

A realistic and brief statement by counsel for Plaintiffs of essential elements which must be proved to establish any meritorious claim remaining for adjudication and the damages

---

[1] The United States has reviewed Plaintiffs' revised exhibit list sent on the morning of August 14, 2017 and has attempted to revise its objections to reflect Plaintiffs' new exhibit list designations. However, the United States' reserves the right to maintain an objection on an exhibit previously objected to in attachment B to the Parties' original Proposed Integrated Pretrial Order filed on July 24, 2017.

or relief sought, accompanied by supporting legal authorities; and by counsel for Defendants of essential elements which must be proved to establish any meritorious defense(s), accompanied by supporting legal authorities. Corresponding statements must also be included for counterclaims and cross-claims;

**(A)     For Plaintiffs and Counterclaim Defendants**

1.     Essential Elements for Claims.  (*See also* section 4(a), *infra*)

a.   Clean Water Act

That loss of bed, bank, and ordinary highwater mark downgradient of the area of Plaintiffs' work in the Pad 4 area severs Clean Water Act jurisdiction because loss of surface connectivity and infrequency of surface flow establishes that the Pad 4 area is not part of either a relatively permanent water, nor does it have a significant nexus to the nearest traditional navigable water.  Mere hydrologic connectivity is insufficient to establish status as a "water of the United States." *Rapanos v. United States,* 547 U.S. 715 (2006).

b.   Administrative Procedures Act ("APA") and Procedural Due Process

EPA personnel were improperly motivated out of a desire to circumvent the restrictions of a lawful Bankruptcy Court order and later by personal animus and/or political motivation and took irregular measures not consistent with agency enforcement policies in order to unlawfully coerce Plaintiffs to perform tasks they should have been shielded from performing by the bankruptcy order.  EPA's actions also precluded Plaintiffs' right of appeal of the initial jurisdictional determination and caused such delay and expense to Plaintiffs that EPA's actions are "arbitrary, capricious, an abuse of discretion[,] not in accordance with law . . . [,] contrary to constitutional right. . . in excess of statutory. . . authority . . . [and/or] without observance of procedure required by law… [and/or] unsupported by substantial evidence … [and/or] unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court [.]" 5 U.S.C. § 706(2)(A)-(F). Both in terms of imposition of affirmative obligations upon Plaintiffs' property by both the JD and compliance order, and in terms of risks of crushing penalties, Plaintiffs property interests have most certainly by deprived by the EPA's actions. Both agency actions have also imposed very real and substantial legal costs upon the Plaintiffs and thus deprived the Plaintiffs of protected property interests. *Sackett v. Environmental Protection Agency*, 132 S.Ct. 1367 (2012); *United States Corps of Engineers v. Hawkes*, 136 S.Ct. 1807 (2016).

2. Fees Under the Equal Access to Justice Act 28 U.S.C. § 2412.

    a. The claimant must be a prevailing party "Party" means an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed or the owner of a business/organization whose net worth did not exceed $7,000,000 at the time the civil action was filed.

    b. The government position must not be "substantially justified" Government must have a reasonable basis in both fact and law. "Justified to a degree that could satisfy a reasonable person"

    c. There must be no special circumstances that exist that would make the award unjust "

    d. The fee application must be submitted to the court within 30 days of final judgment and be supported by an itemized statement.

    e. *See Crawford v. Sullivan*, 935 F.2d 655, 656 (4th Cir. 1991); *Nken v. Holder*, 385 F. App'x 299, 302 (4th Cir. 2010)

**(B)    For United States**

1. Essential Elements for United States' CWA Counterclaim

To prove that a CWA violation has occurred, the United States must show that Plaintiffs are (i) persons that (ii) discharged a pollutant, (iii) from a point source, (iv) to a water of the United States, (v) without a CWA section 404 permit. 33 U.S.C. §§ 1311(a) & 1344(a).

The CWA's definition of "person" includes individuals, partnerships, and corporations. 33 U.S.C. § 1362(5). A person is liable under CWA section 301(a) if he has either (1) performed the work or (2) exercised responsibility for or control over performance of the work. *See Sierra Club v. MasTec North America*, Nos. 03-1697 & 06-6071, 2007 WL 4387428 (D. Or. Dec. 12, 2007) ("Liability is predicated on either performance of the work or control over performance of the work . . . . ").

The CWA defines the term "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source . . . ." 33 U.S.C. § 1362(12). The CWA defines pollutants broadly to include, inter alia, fill material such as rock, soil, and dirt. 33 U.S.C. § 1362(6) (definition), §§ 1311(a) & 1344(a) (prohibiting discharge of dredged and/or fill material without a permit); *United States v. Pozsgai*, 999 F.2d 719, 724 (3d Cir. 1993) (fill material is a pollutant); *United States v. Bradshaw*, 541 F. Supp. 880, 882-83 (D. Md. 1981) (same).

"Point source" means "means any discernible, confined and discrete conveyance 33 U.S.C. § 1362 (14). Courts have held that bulldozers, dump trucks, and other earthmoving

equipment, are point sources. *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 922 (5th Cir. 1983) (earth-moving equipment is a point source); *United States v. Lambert*, 915 F. Supp. 797, 802 n.8 (S.D.W. Va. 1996) (bulldozers and other earthmoving equipment are point sources); *United States v. Tull*, 615 F. Supp. 610, 622 (E.D. Va. 1983) (bulldozers and dump trucks are point sources), *aff'd*, 769 F.2d 182 (4th Cir. 1985), *rev'd on other grounds*, 481 U.S. 412 (1987).

Following the Supreme Court's fractured opinion in *Rapanos v. United States*, 547 U.S. 715 (2006), streams or tributaries are "waters of the United States" if they either (a) are relatively permanent (i.e., flow at least seasonally) and connected to downstream traditional navigable waters ("relative permanence standard"), or (b) affect the chemical, physical, and biological integrity of the downstream traditional navigable water ("significant nexus standard"). *See United States v. Donovan*, 661 F.3d 174 (3d Cir. 2011); *United States v. Bailey*, 571 F.3d 791, 797-99 (8th Cir. 2009); *United States v. Johnson*, 467 F.3d 56 (1st Cir. 2006), *cert. denied*, 552 U.S. 948 (2007).

2.      Relief Sought for United States' CWA Counterclaim

The United States seeks (1) to permanently enjoin the Counterclaim-Defendants from discharging pollutants into waters of the United States without a permit in violation of CWA section 301(a), 33 U.S.C. § 1311(a); (2) to require Counterclaim-Defendants, at their own expense and at the direction of EPA, to effect complete restoration of the waters of the United States and/or to conduct mitigation for the irreversible environmental damage and/or temporary losses of aquatic resources, and/or undertake other action as necessary to bring the Site into compliance with the CWA; and (3) to require Counterclaim-Defendants to pay civil penalties for each day of violation as provided in CWA section 309(d), 33 U.S.C. § 1319(d). Unless enjoined, Counterclaim-Defendants' discharges are likely to continue to remain in waters of the United States in violation of CWA section 301, 33 U.S.C. § 1311. The United States also seeks an award of costs and disbursements in this action and such other relief as the Court may deem just and proper.

CWA section 309(b) authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a). CWA section 309(d), 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a). Each day that dredged and/or fill material remains in place constitutes a separate violation of CWA section 301(a), 33 U.S.C. § 1311(a). Under CWA sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), Counterclaim-Defendants are liable for a civil penalty of up to $25,000 per day for each violation of CWA section 301(a), 33 U.S.C. § 1311(a). Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, 69 Fed. Reg. 7121 (February 13, 2004), and 74 Fed. Reg. 626 (January 7, 2009), the Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, EPA may seek civil penalties of up $37,500 per day for each violation occurring after January 12, 2009, and $51,570 per day per violation of the CWA for violations occurring after November 2, 2015. CWA section 309(d) provides: "In determining the amount of a civil penalty the court shall consider the seriousness

of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C. § 1319(d).

3.      Essential Elements for Defenses

a.      Fees Under the Equal Access to Justice Act 28 U.S.C. § 2412

The United States objects to the inclusion of Plaintiffs' claim for fees under the Equal Access to Justice Act ("EAJA") as part of this Pretrial Order. Such a claim is not properly litigated during the trial or summary judgment phase of this case. Rather, Plaintiffs' claims for fees are properly presented pursuant to Federal Rule of Civil Procedure 54(d)(2).

The only legal authority for an award of fees based on the claims asserted by Plaintiffs is one of the provisions of the Equal Access to Justice Act ("EAJA"). *See* 28 U.S.C. § 2412(d)(1)(A). Eligibility for an award of fees under this section of EAJA requires that: (1) the claimant be a "prevailing party"; (2) the government's position was not "substantially justified"; (3) no "special circumstances make an award unjust"; and (4) the fee application be submitted to the court within 30 days of final judgment and be supported by an itemized statement. *Crawford v. Sullivan*, 935 F.2d 655, 656 (4th Cir. 1991).

For a plaintiff to qualify as a prevailing party in a case resolved by litigation (instead of settlement), that plaintiff "must obtain an enforceable judgment against the [government]." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (citation omitted). EAJA does not provide for attorney's fees, even to prevailing parties, if "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). A court must make a single substantial justification inquiry, looking at the case as a whole. *See Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir.) ("[W]hen determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation.") *cert. denied*, 510 U.S. 864 (1993).

EAJA requires that a party seeking attorney's fees and expenses under § 2412(d) must submit an application that "shows that the party is . . . eligible to receive an award under [the] subsection." 28 U.S.C. § 2412(d)(1)(B). The eligibility requirement refers to the EAJA's definition of "party," which means "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or . . . any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." *Id.* at § 2412(d)(2)(B). The court must "determine the number of eligible plaintiffs and award fees based on the ratio of eligible plaintiffs to total plaintiffs. *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 393-94 (2d Cir. 1985)

Attorney's fees under EAJA are not determined by prevailing market rates. *See Sullivan v. Sullivan*, 958 F.2d 574, 578 (4th Cir. 1992). Instead, EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

(4)     **A BRIEF SUMMARY OF THE MATERIAL FACTS AND THEORIES OF LIABILITY OR DEFENSE**

       (A)     **For Plaintiffs / Counterclaim Defendants**

             1.     Material Facts

This case involves property in Wood County, West Virginia that Plaintiffs purchased the out of the bankrupt estate of The Endurance Group, LLC (hereafter "Endurance"). The bankruptcy filing prohibited EPA from forcing Endurance to remediate the conditions underling a pre-petition enforcement action against Endurance. An adjacent landowner, the Blackwells, complained that Endurance's stream relocation had negatively impacted their property. In May of 2009, Pamela Lazos ("Lazos") wrote Todd Lutte ("Lutte") of EPA that she had spoken with the prior site owner Endurance's Larry George and noted that remediation prospects were low "*unless [EPA] can twist the arm of the next guy* who intends on buying the site[.]" (emphasis added). The subsequent Bankruptcy Court order authorizing the sale of the Site restricted any future remediation of Endurance era issues to no more than 30 feet from the toe of the fill that Endurance had placed and restricted the purchaser's exposure to no more than $50,000.

The particular location at issue is known as the "Pad 4 area." The Pad 4 area runs down gradient into an adjacent hayfield. As the drainage gradient extends into the hayfield, all bed, bank and ordinary high water mark features disappear, flattening out into a quintessential upland hayfield or swale. On the other end of the hayfield, after a gap of approximately 121 feet, the topography begins to dip again, forming a small divot with a short channel that drops into an unnamed intermittent tributary that has been referred to as Blackwell Creek.

In June 2010, Foster rejected an EPA proposal to remediate pre-bankruptcy issues on the site because it exceeded the limits contained in Judge Pearson's order. Shortly thereafter, Foster received a heated phone call from Lazos, berating him for cancelling a conference call on the rejected proposal and threatening "We'll see who has more authority, the EPA or the Bankruptcy Court," or words to that effect. Foster took Lazos' statements to imply that he would soon have to contend with his own dealings with EPA. Other EPA employees made similar statements to other persons.

On September 9, 2010, EPA's Stephanie Andreescu and Lutte visited the Site, allegedly to check on the Blackwell complaint. EPA policy requires the obtaining of owner permission to enter private property. Even though the Site entrance had a large sign with Plaintiffs' contact telephone number prominently displayed, neither Lutte nor Andreescu made any effort to contact the

Plaintiffs or to obtain their permission to enter. Instead they went almost immediately onto the southern tract of the Site to the Pad 4 area, which is not even visible from the sign at the Site entrance (on the northern tract of the Site, and near the Blackwell property). At no time during their visit at the Site did Lutte or Andreescu inform anyone at the Site that a violation of the Clean Water Act had actually occurred.

At EPA and Corps' suggestion, Plaintiffs retained Randolph Engineering ("Randolph") in 2011 to conduct a Clean Water Act delineation report. A delineation is a non-binding, preliminary analysis for purposes of assessing potential Clean Water Act jurisdiction. The agency considers delineations in reaching its jurisdictional determination ("JD"). Randolph's JD concluded that the Pad 4 area where the Plaintiffs construction activities had taken place were likely jurisdictional. However, Randolph's delineation assessment took place only up gradient of the Site's property boundary, and therefore never recognized or analyzed the 121 foot break in bed, bank and ordinary high water mark in the adjacent hayfield. Randolph assumed that the channelization in the steep slope Pad 4 area remained constant from the worksite to Blackwell Creek. It does not.

Randolph engineer Jacob White ("White") conducted the 2011 delineation. After discovery in this litigation commenced in 2015, White was deposed concerning his 2011 delineation report for Randolph. In his deposition, White was introduced to the fact of the 121 foot break in surface channel that a separate independent consultant had identified in 2013. After reviewing the findings of that report, White recanted his original recommendation that Clean Water Act jurisdiction was likely. Instead, White testified that had he known of 121 foot break in bed, bank and ordinary high water mark down gradient from the Pad 4 area in 2011 he would have recommended at that time a finding that the Pad 4 area did not contain Clean Water Act jurisdictional waters.

More than a year of delay occurred from the initial site inspection while Corps and EPA wrangled over how to approach the issue at the Plaintiffs' Site. Finally, in early January of 2012, Lazos informed Foster that "the case [against Plaintiffs] is ours [EPA's]," and promised to provide Foster with proposed figures for a penalty to resolve the matter in early January of 2012, no proposed administrative penalties were ever forwarded to the Plaintiffs until almost two and a half years later. Less than a month later, however, EPA issued its administrative enforcement order against the Plaintiffs. See EPA Order No. CWA-03-2012-0070DW dated January 24, 2012.

Strangely, even though the delineation by Randolph's Jacob White had been completed and submitted since spring of 2011, no formal Clean Water Act JD for the Site had yet been made. U.S. Army Corps of Engineers ("Corps ") rectified this omission by issuing a JD on February 22, 2012. This JD provided an administrative appeal process to the Plaintiffs. Plaintiffs timely filed an appeal, but in the interim, EPA notified Foster that it was taking "superseding" authority of the case and issuing its own JD. Significantly, EPA's JD did *not* allow for an administrative appeal. Due to EPA's taking "superseding" authority, Corps informed Foster that it could not hear his administrative appeal on Corps' JD. EPA and Corps and held several meetings, calls and emails shortly before and after EPA's issuance of its JD. Why this activity took place is unclear (no EPA witnesses could recall even having any such calls or meetings, let alone the content of the discussions) though the appointment document plainly reads "Bankruptcy, JDs, Mitigation and

Huntington's [Corps'] role[.]" EPA's actions undeniably precluded Plaintiffs' ability to appeal the original Corps JD.

In March of 2012, in between Corps' JD and EPA's JD, the Supreme Court handed down it decision in *Sackett v. EPA*, 132 S. Ct. 1367 (2012), holding that such determinations were appealable. Foster did not become aware of the decision until sometime later. He then began a long sequence of requests through 2012-2013 to EPA asking how he might appeal the enforcement order. Significantly, in 2013, EPA issued its own internal guidance on how to alter its administrative compliance order language to account for the *Sackett* decision. Although Lazos testified in deposition that she had seen the memorandum she acknowledged that she had not informed Foster of its existence or content.

On May 8, 2014, Foster received a letter from the Department of Justice on behalf of EPA, proposing that the Plaintiffs pay a $414,830.00 penalty, be prepared remediate the situation on the ground or face enforcement litigation and even more severe penalties.

In June of 2015, the Defendants produced a document in discovery showing that at some time during 2012, someone at EPA conducted unprecedented political research on plaintiffs Ron Foster and Marketing and Planning Specialists, LP. This document (*see* Attachment III) shows a list of 2009 to 2010 political campaign contributions and contributors in Putnam County, West Virginia. On the second page of the document, plaintiffs Ron Foster and Marketing and Planning Specialists, LP are circled and underlined, respectively, noting a relatively small $250.00 contribution to "McKinley for Congress" on March 3, 2010. Despite the Foster Plaintiffs' deposing half dozen EPA employees, no one could identify the origin of the document. All but one EPA employee said they had never seen the document prior to preparing for deposition. Only Pamela Lazos, admitted to recollecting that she had seen the document prior to discovery. Ms. Lazos stated that she could not recollect where or how she obtained the document, but stated that she did believe it had been in her files.

Jeffrey Lapp, EPA Region III's Associate Director for the Office of Environmental Programs, deposed that he had "never seen a document like this before." Moreover, Mr. Lapp testified that he could see no reason why anyone's political contributions would be relevant to an EPA enforcement matter, and that if anyone suggested the cenducting of such political research he "would vehemently reject that proposal." Numerous documents related to EPA's preparation of responses to Congressional inquiries were withheld. Some were released after *in camera* review, and a subset of these address the response to Congressman McKinley's inquiry to the agency on behalf of Ron Foster. These documents and communications fall within time frames for which it is reasonable to believe that the political research on Ron Foster and Marketing & Planning Specialists, LP was conducted. Ms. Lazos' withheld personal notes also bridge the timespan when the highly irregular political research had to have been conducted or received.

2.    Theories of liability or defense

Both as to their affirmative claim for declaratory judgment and their defense of the counterclaim under the Clean Water Act, Plaintiffs contend that the areas filled on Pad 4 were not and are not waters of the United States. Defendants bear the burden of proof on this issue.

The presence of the hayfield -- and its complete lack of bed, back and ordinary high water mark -- between Pad 4 and Blackwell Creek defeats the EPA's claim of jurisdiction over Pad 4.

The improper motivation, personal animus, procedural irregularities and delays in EPA's enforcement actions against the Plaintiffs are unlawful under the APA and unconstitutional deprivations of Plaintiffs' constitutionally protected property interests.

EPA's utilization of research into the political contributions of the Plaintiffs during the agency's coercive enforcement against the Plaintiffs, have had a chilling effect on the Plaintiffs' First Amendment rights of freedom of speech and association and is an unconstitutional retaliation against and violation of Plaintiffs' First Amendment rights.

**(B)    For United States**

Before Ron Foster purchased the Neal Run Crossing property in Wood County, WV, in 2009, it was owned by the Endurance Group, LLC. In the course of developing the property, the Endurance Group impacted approximately 1,065 linear feet of perennial and intermittent streams in violation of the CWA. As part of those violations, Endurance Group rerouted a stream at the northwest corner of the property to the edge of the property line shared with Linda and Philip Blackwell. In 2006, Endurance Group applied to the U.S. Army Corps of Engineers ("Corps") for an after-the-fact permit to address its CWA violations. (The Corps issues permits under the CWA.) After the Endurance Group failed to respond to the Corps' requests regarding the violations, the Corps referred the Endurance Group's CWA violations to EPA for an enforcement action. Before EPA could begin formal enforcement proceedings, Endurance Group declared bankruptcy for reasons unrelated to the violations. In September 2009, EPA issued an administrative compliance order to the Endurance Group. The bankruptcy court permitted the sale of the Neal Run Crossing property to Mr. Foster, provided that $50,000 be set aside in a trust to fund restoration work to address the Endurance Group's violations, confined to within 30 feet of the stream at issue. Mr. Foster assigned approximately 40.5 acres of the 90 acre property to Marketing and Planning Specialists, LP, of which he is the general partner's representative, a limited partner, and an employee. Mr. Foster assigned that balance of the property to Foster Farms, LLC, of which he is member.

After the Corps referred the Endurance Group's violations, EPA received regular calls from the Blackwells complaining that the rerouted stream caused flooding of their property. On September 9, 2010, while in West Virginia for other unrelated site inspections, EPA inspectors Stephanie Andreescu and Todd Lutte decided to visit the Neal Run Crossing property for the first time to inspect the Endurance Group's violations that were causing the Blackwell's complaints. While the EPA inspectors were at the property, they observed a billboard advertising the property for sale and depicting a development plan superimposed on a topographic map. The billboard showed proposed development in an area of the property known as "Pad 4" (the "Site") that appeared from the contour lines of the topographic map to contain streams. After inspecting the Endurance Group's violations, the EPA inspectors went to look at Pad 4. To reach Pad 4, the EPA inspectors followed the stream channel where the Endurance Group violations had occurred (identified as "Blackwell Stream" or the "First Unnamed Tributary to Neal Run") upstream and crossed an adjoining hayfield. Upon arriving,

the inspectors observed that Pad 4 had been recently cleared and that a stream channel (later identified as SAR3/RR4) appeared to have been disturbed; specifically, dirt and vegetation had been pushed into the stream, burying it. During the visit, the inspectors encountered a neighbor, Bryon Scott Moore, who represented that he had permission to be on the property to collect firewood and berries. He confirmed that a stream previously flowed where the EPA inspectors observed the channel. Also during that visit, the EPA inspectors encountered Plaintiffs' contractor, Dave Walters from Walters Excavating, who said that he had been working on the Site. EPA asked if a permit from the Corps had been obtained for the work. When Mr. Walters responded in the negative, they advised him that a permit was likely required.

As the EPA investigators left the Site, they observed that the stream channel exited the Pad 4 area and continued downstream into the neighboring field. The field is an actively maintained hayfield that is routinely mowed and raked, and has been for nearly a half century. In the center of the hayfield, the EPA investigators observed that the channel lost some stream characteristics, such that it did not appear to have a bed, bank, and ordinary high water mark, but there was a concave pathway in the landscape through which water flowed, which reformed more distinct characteristics downstream, such as a more distinct channel with bed, bank, and ordinary high water mark that joined the Blackwell Stream.

After the EPA investigators left, Mr. Walters called Dan Metheny of Fox Engineering, which had been retained by Mr. Foster to draw up plans for the construction on the Site. Mr. Walters advised Mr. Metheny that EPA had been at the property and notified him that a permit might be needed for the work that Walters Excavating had begun on Pad 4. That same day, Mr. Metheny emailed Mr. Foster, relayed the conversation that Mr. Walters had with EPA, and provided Mr. Foster with some information about CWA section 404. Despite EPA's statements, neither Plaintiffs nor Mr. Metheny contacted the Corps or otherwise attempted to obtain a permit. Within a short time after EPA's September 9, 2010 visit, Plaintiffs continued to work on the Site filling additional streams. Specifically, Walters Excavating used heavy machinery to clear brush, dig out tree stumps, construct a sediment pond, and place excavated dirt and rocks as fill material on Pad 4.

After the September 9, 2010 visit, Ms. Andreescu confirmed with the Corps that a CWA section 404 permit had not been obtained for the work on Pad 4. As part of her usual practice, Ms. Andreescu then reviewed publically available geographic information system data for the Site, including but not limited to historic aerial images, topographic contour lines, digital elevation data, and United States Geological Survey mapping. She also considered scientific literature on the importance of headwater streams. In addition to her observations during the September 9, 2010 Site visit, this "desktop" review of data and her consideration of literature informed her conclusion that the stream channel she saw on the Site was a relatively permanent stream with a significant nexus with downstream waters. In December 2010, EPA sent information requests pursuant to CWA section 308, 33 U.S.C. § 1318, to Plaintiffs and Fox Engineering requesting information regarding their work at the Site; Plaintiffs and Fox Engineering responded in December 2010.

In February 2011, EPA held a conference call with Mr. Foster, Mr. Metheny, and Mr. Foster's counsel to discuss the activities at the Site. Prior to that call, counsel for EPA provided EPA's photographs taken during the September 9, 2010 visit to Mr. Foster's counsel. Thereafter, in March 2011, Plaintiffs hired a consultant, Randolph Engineering, to conduct a stream and wetland delineation to assist in identifying whether the Site and the adjacent area, "Pad 5" (which had not been disturbed), contain waters protected by the CWA. Plaintiffs' consultant identified a total of eleven "stream assessment reaches" or "SARs," four of which had been filled and substantially disturbed on the Site. The consultant's report stated that the filled streams appeared to be covered by the CWA. On behalf of Plaintiffs, the consultant submitted the delineation report to the Corps for a jurisdictional determination. The Corps then provided the delineation report to EPA for review. In May 2011, EPA visited the Site at Plaintiffs' request. During that Site visit, EPA observed that Plaintiffs had placed substantially more fill in the area and had filled additional streams (later identified as SAR3c/RR1, SAR3b1/RR2, and SAR3a1/RR3) beyond the one that EPA had observed during the September 2010 Site visit. In June 2011, Rick Hemann from the Corps visited the Site and independently verified the consultant's findings and determined that the filled streams (which the Corps renamed "relevant reaches" or RR1, RR2, RR3, and RR4[2]) are protected by the CWA. EPA again visited the Site in September 2011. Between April 2011 and December 2011, EPA and the Corps exchanged information about their investigations into the Plaintiffs' impacts to the streams and their determinations that the streams are jurisdictional. For several months, Plaintiffs, EPA, and the Corps engaged in discussions trying to resolve the issues. During the same time, EPA and the Corps had internal discussions to determine which agency would take the lead on addressing the violations at the Site. On January 4, 2012, EPA informed Mr. Foster that EPA had the lead. EPA issued an administrative compliance order ("ACO") to Plaintiff Foster Farms, LLC, on January 24, 2012, on the grounds that it had discharged fill material to "waters of the United States" on the Site.

In February 2012, Mr. Foster notified EPA by telephone and in writing that the ACO should have been issued to Marketing and Planning Specialists, LP. As is its usual practice, EPA proceeded to research the corporate structure of Marketing and Planning Specialists and initially found scant information about it. In a letter received by EPA on February 14, 2012, Mr. Foster requested information from EPA explaining the Agency's determination that the filled streams on Pad 4 are jurisdictional and an explanation as to why EPA had made the determination rather than the Corps. Around the same time, Mr. Foster contacted the Corps and requested that they complete the verification of Randolph Engineering's delineation report and provide a jurisdictional determination. On February 22, 2012, the Corps sent Mr. Foster a letter notifying him that it had determined, as EPA had, that the streams on Pad 4 are covered by the CWA. Shortly thereafter, Mr. Foster sent EPA another letter again requesting information supporting EPA's jurisdictional determination. On April 5, 2012, Ms. Andreescu responded to Mr. Foster's letter reiterating that EPA (rather than the Corps) had the lead and providing the summary explanation of EPA's prior determination of regulatory jurisdiction requested by Mr. Foster. In response to additional inquiries from Mr. Foster, EPA provided additional explanations in a letter dated May 30, 2012, and then offered to meet with Mr. Foster to discuss the ACO. Mr. Foster submitted additional written information from

---

[2] RR1 is SAR3c, RR2 is SAR3b, RR3 is SAR3a, and RR4 is SAR3.

Randolph Engineering and Fox Engineering to support his assertion that the streams were not covered by the CWA. EPA considered those materials but they did not alter the Agency's conclusion.

After Plaintiffs initiated this lawsuit, the United States retained David Arscott, Ph.D and Charles Dow, Ph.D who are experts in the fields of stream ecology, biology, hydrology, and geographic information systems. Drs. Dow and Arscott visited the Neal Run Crossing property on May 12, 2015. While on Site, Drs. Dow and Arscott observed the unfilled reaches of RR2 and RR3 on the Site as well as undisturbed streams on Pad 5. Drs. Arscott and Dow documented the presence of water and aquatic life in the unburied reaches of RR2 and RR3. They measured the chemical properties of the water in RR2 and RR3 as well as water emerging from the fill material and took a water sample from RR2 for laboratory analysis. EPA's national expert in aerial photographic interpretation, Peter Stokely, confirmed (based on pre-activity aerial photos) EPA's initial interpretation that streams were present on the Site prior to filling and that water flowed in a concentrated fashion across the adjacent hayfield.

2.      Theories of liability or defense

With respect to the United States' CWA counterclaim, Plaintiffs do not dispute that they (1) are "persons" within the meaning of the CWA, who (2) discharged fill material (dirt, brush, and rock) – which are "pollutants" under the CWA – using (3) heavy equipment – which is a "point source" under the CWA – into (4) "stream assessment reaches" (as identified by their consultant) without (5) a CWA section 404 permit. The streams into which Plaintiffs discharged the dirt, rock, and other fill materials are "waters of the United States." Specifically, RR4 satisfies the relative permanence standard because it flowed seasonally and is connected to a traditional navigable water (Neal Run and the Little Kanawha River). Additionally, RR1, RR2, RR3, and RR4 influence chemical, physical, and biological integrity of those downstream traditional navigable waters and, thus, satisfy the significant nexus standard. Despite Plaintiffs' assertion, a short distance (approximately 120 feet) where the stream characteristics of RR4's bed, bank, and ordinary high water mark ("OHWM") become less distinct within the center of a hayfield that is routinely mowed and raked does not sever CWA jurisdiction. Neither the CWA nor its implementing regulations require the unbroken presence of an OHWM for a stream to qualify as a "water of the United States." Rather, the Corps' post-*Rapanos* instructions for identifying jurisdictional waters acknowledge that "a natural or manmade discontinuity in the OHWM does not necessarily sever jurisdiction (e.g. where the stream temporarily flows underground, or where the OHWM has been removed by development or agricultural practices)." The Corps' instructions advise inspectors to look upstream and downstream from the break for indicators of flow, which, if present, demonstrate a continued hydrologic connection through the break. Here, a defined channel with bed, bank, and OHWM exists both upstream and downstream from the break identified by Plaintiffs.

**(5)     FOR EACH PARTY, A SINGLE LISTING OF THE CONTESTED ISSUES OF FACT; AND A SINGLE LISTING OF THE CONTESTED ISSUES OF LAW, TOGETHER WITH CASE AND STATUTORY CITATIONS:**

**(A)     For Plaintiffs and Counterclaim Defendants**

1.    Contested issues of fact

    a) Clean Water Act Issues:

        i.    Does RR4 have a relatively permanent surface connection to the nearest Traditional Navigable Waters?

        ii.   Does the hayfield constitute a 121 foot break in bed, bank and ordinary high water mark?

        iii.  Is the area in question a non-jurisdictional swale with only episodic run off?

        iv.   Does RR4 have fluid (non-percolating) subterranean flow?

        v.    Does agricultural activity account for loss of bed, bank and ordinary high water mark in the hayfield?

    b) APA Issues:

        i.    Is EPAs data relied upon for agency claim that RR4 is jurisdictional under the CWA arbitrary and capricious??

    d) Equal Access to Justice Act Issues:

        i.    Amount of Plaintiffs' fees.

2.    Contested issues of law

    a) Clean Water Act Issues:

        i.    Is RR4 a jurisdictional "waters of the United States" under the Clean Water Act?  33 U.S. Code § 1344; *Rapanos v. U.S.*, 547 U.S. 715 (2006); *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers*, 531 U.S. 159 (2001) ("*SWANCC*"); *U.S. v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985); *Precon Dev. Corp. v. United States Army Corps of Eng'rs*, 633 F.3d 278 (4th Cir. 2011) (parties agreeing that Justice Kennedy's test governs); *Deerfield Plantation Phase II-B Prop. Owners Ass'n v. United States Army Corps of Eng'rs*, 501 Fed. App'x 268 (4th Cir. 2012).

ii.        Does the 121 foot break in bed, bank and ordinary high water mark in the hayfield sever Clean Water Act jurisdiction?  33 CFR 328.4 (c)(1)

b)  APA Issues:

      i.        Is EPA's ACO arbitrary and capricious with regard to RR4? 5 U.S.C. § 706(2)(A)-(F).

**(B)    For United States**

1.    Contested issues of fact

a)  CWA Counterclaim

      i.        Do the filled streams affect the chemical, physical, and biological integrity of the downstream traditional navigable waters?

      ii.        Does a hydrologic connection exist from where RR4 exits Pad 4 through the hayfield to Blackwell Tributary?

      iii.       Does water predictably travel from Pad 4 through the hayfield to the Blackwell tributary for some portion of every non-drought year?

      iv.      What is the economic benefit gained by Plaintiffs resulting from the CWA violations?

      v.       Is restoration of the impacted streams feasible?

      vi.      What mitigation would compensate for the loss of the impacted streams if restoration is not feasible?

      vii.    What penalty is sufficient to appropriately punish Plaintiffs and to deter similarly situated persons from violating the CWA?

b)  Equal Accesses to Justice Act Claim

      i.        As noted above, the United States objects to inclusion of this claim in the Pretrial Order because fee claims should only be resolved post-trial.  Nonetheless, the following is the United States' submission of contested facts on this

claim:

    1. Do Plaintiffs' net worth disqualify one or all of them from an EAJA claim?

    2. Which Plaintiff(s) paid the attorneys' fees in this matter?

    3. What is the amount of reasonable attorneys' fees charged in this matter?

2.    Contested issues of law

    a)    CWA Counterclaim

        i.    Are the filled streams "waters of the United States" if they satisfy either (a) the relative permanence standard, or (b) Justice Kennedy's "significant nexus" standard? *Rapanos v. United States*, 547 U.S. 715 (2006); *United States v. Donovan*, 661 F.3d 174, 182-84 (3d Cir. 2011) (holding that CWA regulatory jurisdiction exists if either the plurality's relatively permanent waters standard or Justice Kennedy's significant nexus standard is satisfied); *United States v. Bailey*, 571 F.3d 791, 797-99 (8th Cir. 2009) (same); *United States v. Johnson*, 467 F.3d 56, 66 (1st Cir. 2006) (same). *See Precon Corporation v. U.S. Army Corps of Eng'rs*, 633 F.3d 278 (4th Cir. 2011) (*Precon I*) (holding that a water that satisfies Justice Kennedy's "significant nexus" standard is a "water of the United States."); *Deerfield Plantation Phase II-B Property Owners Ass'n v. U.S. Army Corps of Eng'rs*, 501 F. App'x 268, 275 (4th Cir. 2012) (rejecting a challenge to a Corps finding of no jurisdiction using the *Rapanos* plurality standard).

        ii.    Are the Filled Streams subject to the CWA's jurisdiction even though one of the streams connecting them to a traditionally navigable water lacks an ordinary high water mark for approximately 120 feet?

        iii.    If the relevant permanence standard is applied, is the language in *Rapanos* stating that a *wetland* must have a "surface connection" inapplicable to this case, where jurisdiction over wetlands is not at issue?

    b)    Equal Access to Justice Act Claim

i.    Is the United States' position in this litigation
      "substantially justified"?

ii.   To the extent one or more of the Plaintiffs is not eligible
      under EAJA, does that render the other Plaintiffs ineligible
      to recover under EAJA?

## (6)   STIPULATIONS

1.   Plaintiff Ron Foster is a citizen of the United States and the State of West
     Virginia. Mr. Foster resides in Putnam County, West Virginia.

2.   Plaintiff Foster Farms, LLC is a Kentucky limited liability company.

3.   Plaintiff Marketing & Planning Specialists Limited Partnership ("Marketing &
     Planning Specialists") is a Nevada limited partnership authorized to do business
     in West Virginia.

4.   Plaintiffs Foster Farms, LLC and Marketing & Planning Specialists own adjacent
     parcels of property located in Wood County, West Virginia, which form part of an
     area that has been customarily referred to in this litigation as the "Neal Run
     Crossing" property, which consists of five "pads." The alleged Clean Water Act
     violations at issue in this litigation occurred on the portion of the Neal Run
     Crossing property known as Pad 4.

5.   Ron Foster entered a purchase agreement with the bankruptcy trustee on August
     6, 2009 which authorized assignment of the Neal Run Crossing property in Wood
     County, West Virginia upon approval of the bankruptcy sale by the Bankruptcy
     Court. Upon the approval of the sale, the Neal Run Crossing property was
     assigned to Marketing & Planning Specialists and Foster Farms, LLC on October
     29, 2009.

6.   Prior to the purchase of the Neal Run Crossing property by Ron Foster, the
     property was owned by Endurance Group, LLC.

7.   Prior to Mr. Foster's purchase of the Neal Run Crossing property, Endurance
     Group, LLC filled and altered the course of a stream on an area knowns as "Pad
     1" of the property without a CWA section 404 permit. The neighboring property
     owners, Philip and Linda Blackwell, contacted EPA and the U.S. Army Corps of
     Engineers on numerous occasions claiming that Endurance Group's work in the
     stream on Pad 1 caused flooding to occur more frequently on their property.

8.   EPA issued an administrative compliance order, signed on September 3, 2009,
     and transmitted on September 4, 2009, to Endurance Group, LLC for alleged
     violations of the Clean Water Act ("CWA") for discharging fill into

approximately 600 linear feet of a perennial tributary to Neal Run and filling and rerouting 465 linear feet of an intermittent tributary to Neal Run.

9. Prior to the issuance of EPA's administrative order for compliance Endurance Group, LLC filed for bankruptcy, on March 3, 2009.

10. After a telephonic hearing on October 8, 2009 the Bankruptcy Court entered an order authorizing the sale of the Neal Run Crossing property to Ron Foster free of all pre-bankruptcy liability on October 19, 2009 with the sole exception that $50,000 to be set aside in trust for the remediation of the Endurance Group's pre-existing CWA violation. The bankruptcy court's order limited EPA and the U.S. Army Corps of Engineers' remediation of those violations to within 30 feet of the toe of the fill discharged by Endurance Group, LLC. The deeds conveying the property were executed on October 29, 2009.

11. Upon the bankruptcy court's approval of the sale, on October 29, 2009, Ron Foster, as authorized by the terms of the sale agreement, assigned ownership of 40.5 acres of the approximately 90-acre Neal Run Crossing property to Marketing & Planning Specialists. Ron Foster assigned ownership of the balance of the Neal Run Crossing Property to Foster Farms, LLC.

12. Ron Foster oversees the day to day operations of Marketing & Planning Specialists. Ron Foster is Marketing & Planning Specialists' general partner's representative; one of Marketing & Planning Specialists' limited partners; one of Marketing & Planning Specialists' employees; and a creditor of Marketing & Planning Specialists. The other limited partners of Marketing & Planning Specialists are Ron A. Foster, Mallory Foster, and Geoff Foster, all of whom are Mr. Foster's children. These roles with and relationships to Marketing & Planning Specialists of Ron Foster predate the Plaintiffs' involvement with the Neal Run Crossing property.

13. Ron Foster is one of five member/beneficiaries of Foster Farms, LLC. The other member/beneficiaries are Ronald A. Foster, Geoffrey B. Foster, Mallory D. Foster and Sterling D. Foster, all of whom are Mr. Foster's children.

14. Plaintiff Marketing & Planning Specialists is developing Neal Run Crossing for commercial use.

15. The Neal Run Crossing property has been divided into five proposed "Pads" for development purposes.

16. The area of the Neal Run Crossing property intended for the construction of "Pad 4" is owned in part by Marketing & Planning Specialists and in part by Foster Farms, LLC.

17.     Ron Foster hired Walters Excavating to conduct mechanized land clearing, including using earth moving equipment to clear, fill, and level portions of Pad 4 (and other Pads) and to construct a sediment basin in a portion of the Pad 4 area of the Neal Run Crossing property.

18.     Beginning no later than September 2010, Walters Excavating used heavy machinery to clear brush, dig out tree stumps, construct a sediment pond, and place excavated dirt and rocks on Pad 4.

19.     Prior to the construction of the sediment pond on a portion of the Pad 4 area, a channel existed, which forked off to the right and left upgradient.

20.     Ron Foster hired Randolph Engineering to conduct a stream and wetland delineation for Pads 4 and 5.

21.     Randolph Engineering submitted a stream and wetland delineation report dated March 10, 2011 to the U.S. Army Corps of Engineers.

22.     In the March 10, 2011 stream and wetland delineation report, Randolph Engineering identified eleven "stream assessment reaches" or "SARs" on Pads 4 and 5 of the Neal Run Crossing Site.

23.     In the March 10, 2011 stream and wetland delineation report, Randolph Engineering identified SAR 3, SAR 3a1, SAR 3a2, SAR 3b1, SAR3b2, and SAR 3c on Pad 4.

24.     The U.S. Army Corps of Engineers re-designated the SARs identified by Randolph Engineering as "relevant reaches" ("RR"). Specifically, RR 1 refers to SAR 3c; RR 2 refers to SAR 3b1 and SAR 3b2; RR 3 refers to SAR 3a1 and 3a2; and RR 4 refers to SAR 3.

25.     The channel of the first unnamed tributary to Neal Run (Blackwell tributary) joins into the channel of the second unnamed tributary of Neal Run.

26.     The second unnamed tributary to Neal Run is a relatively permanent water, which flows into Neal Run.

27.     Neal Run is a relatively permanent water, which flows into the Little Kanawha River, which flows into the Ohio River at Parkersburg. A portion of Neal Run, extending 2.4 miles from its mouth at the Little Kanawha River, has been identified by the U.S. Army Corps of Engineers as a "navigable water of the United States" for purposes of Section 10 of the Rivers and Harbors Act of 1899.

28. The Little Kanawha River is navigable-in-fact, and has been identified by the U.S. Army Corps of Engineers as a "navigable water of the United States" for purposes of Section 10 of the Rivers and Harbors Act of 1899.

29. On January 24, 2012, EPA issued an Administrative Compliance Order ("ACO") to Foster Farms, LLC based on its finding that there had been unauthorized discharges of fill material to waters of the United States at Pad 4.

30. Shortly after EPA issued the ACO to Foster Farms LLC, Mr. Foster informed EPA that it should have been issued to Marketing & Planning Specialists.

31. The printout from campaignmoney.com (USEPA002570) was printed in or after 2012.

32. Mr. Larry Carr owned the hayfield adjacent and downgradient of the Pad 4 area from the 1960s to 2000.

33. A contact telephone number for Foster Farms, LLC was displayed on the sign near the main entrance to the Neal Run Crossing site when EPA's Todd Lutte and Stephanie Andreescu made their site visit on September 9, 2010.

34. On September 9, 2010, neither Todd Lutte nor Stephanie Andreescu attempted to call the contact telephone number on the sign near the main entrance to the Neal Run Crossing site to obtain permission to enter the Neal Run Crossing site.

35. Neither Todd Lutte, nor Stephanie Andreescu attempted to contact the owner of the hayfield before crossing upon it.

36. The Approved Jurisdictional Determination completed by the U.S. Army Corps of Engineers for RR1, RR2, RR3, and RR4 did not contain any information entered under the headings for "Biological Characteristics" and "Chemical Characteristics" data.

37. In making jurisdictional determinations, both EPA and the U.S. Army Corps of Engineers considered Randolph Engineering's March 2011 stream and wetland delineation report.

38. On limited occasions some EPA personnel utilized personal email accounts while conducting business.

39. The United States' expert witnesses did not walk across the hayfield adjacent to the Pad 4 area in preparation for their reports in this litigation.

## (7) SUGGESTIONS FOR THE AVOIDANCE OF UNNECESSARY PROOF AND CUMULATIVE EVIDENCE

(A)     **For Plaintiffs and Counterclaim Defendants**

      1.     Because the case is being tried to the Court, the Court should allow all examination of a witness for any reason pertinent to the trial to be conducted when a witness is first called by either party.

      2.     An objection by one plaintiff should be construed to be an objection for all plaintiffs.

(B)     **For United States**

None.

**(8)     SUGGESTIONS FOR SPECIAL PROCEDURES & UNUSUAL PROOF**

Suggestions concerning any need for adopting special procedures for managing potentially difficult or protracted aspects of the trial that may involve complex issues, multiple parties, difficult legal questions or unusual proof problems.

(A)     **For Plaintiffs and Counterclaim Defendants**

Agreed evidentiary stipulations should be accomplished between the parties to the maximum extent possible.

(B)     **For United States**

None.

**(9)     A LIST OF SPECIAL VOIR DIRE QUESTIONS, IF ANY, THAT COUNSEL REQUEST BE ASKED OF THE JURY PANEL**

**Not Applicable**

**(10)     A STATEMENT SETTING FORTH A REALISTIC ESTIMATE OF THE NUMBER OF TRIAL DAYS REQUIRED**

(A)     **For Plaintiffs and Counterclaim Defendants**

5 to 7 days

(B)     **For United States**

4 to 5 days

**(11)     ANY COURTROOM TECHNOLOGY REQUESTED FOR USE AT TRIAL**

Any courtroom technology requested for use at trial and a certification that the court's technology staff has been notified regarding such use no later than 7 days before the scheduled commencement of trial;

**(A)    For Plaintiffs and Counterclaim Defendants**

Plaintiffs and Counterclaim Defendants intend to use the Elmo and computer screen projector, and they will provide the court's technology staff with the required notice in a timely manner

**(B)    For United States**

The United States intends to use the Elmo and computer projector, and will provide notice to the Court's technology staff no later than 7 days before the commencement of trial.

**(12)    ANY OTHER MATTERS RELEVANT FOR PRETRIAL DISCUSSION OR DISPOSITION, INCLUDING THOSE SET FORTH IN FR CIV P 16**

**(A)    For Plaintiffs and Counterclaim Defendants**

**(B)    For United States**

1.  Plaintiffs' claim for fees under the Equal Access to Justice Act ("EAJA") is not properly litigated during the trial or summary judgment phase of this case. Rather, Plaintiffs' claims for fees are properly presented pursuant to Federal Rule of Civil Procedure 54(d)(2).

Respectfully submitted,

| | |
|---|---|
| RON FOSTER, MARKETING & PLANNING SPECIALISTS LIMITED PARTNERSHIP and FOSTER FARMS, LLC | UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and SCOTT PRUITT, in his official capacity as Administrator |
| /s/ J.C. (Max) Wilkinson, Jr. <br> James S. Crockett, Jr. (WV State Bar No. 9229) <br> J. C. (Max) Wilkinson, Jr. (WVSB No. 8869) <br> 300 Kanawha Boulevard, E. (Zip 25301) <br> P. O. Box 273 <br> Charleston, WV 25321-0273 <br> jwilkinson@spilmanlaw.com | CAROL A. CASTO <br> United States Attorney <br><br> Gary L. Call <br> Assistant United States Attorney <br> W.V. State Bar No. 589 <br> United States Attorney's Office |

| Telephone: (304) 340-3800<br>Facsimile: (304) 340-3801 | P.O. Box 1713<br>Charleston, W.V. 25326<br>Phone: 304-345-2200<br>Fax: 304-347-5440<br>Email: Gary.Call@usdoj.gov<br><br><br>JEFFREY H. WOOD<br>Acting Assistant Attorney General<br>Environment and Natural Resources Division<br><br>/s/Laura J. Brown<br>Laura J. Brown<br>Sonya J. Shea<br>Kent E. Hanson<br>United States Department of Justice<br>601 D St. NW, Ste 8000<br>Washington D.C. 20004<br>202-514-3376 (Brown)<br>202-514-2741 (Shea)<br>206-639-5544 (Hanson)<br>laura.j.s.brown@usdoj.gov<br>sonya.shea@usdoj.gov<br>kent.hanson@usdoj.gov |
| --- | --- |

DATED: August 30, 2017

United States District Court Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| RON FOSTER, FOSTER FARMS, LLC, and MARKETING & PLANNING SPECIALISTS LIMITED PARTNERSHIP, | )<br>)<br>)<br>)   No. 2:14-cv-16744 (JTC)<br>) |
| Plaintiffs & Counterclaim-Defendants | )<br>) |
| v. | )<br>) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and SCOTT PRUITT, in his official capacity as Administrator, | )<br>)<br>)<br>)<br>) |
| Defendants and Counterclaimants. | )<br>)<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2017, I served the foregoing Proposed Integrated

Pretrial Order on the following counsel for Plaintiffs via the Court's CM/ECF service:

> James S. Crockett, Jr, Esquire
> John C. Wilkinson, Jr, Esquire
> Spilman Thomas & Battle, PLLC
> P.O. Box 273
> Charleston, W.V. 25231-0273
> JCrockett@spilmanlaw.com
> JWilkinson@spilmanlaw.com

/s/ Laura J. Brown

Dated: August 14, 2017

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

RON FOSTER, FOSTER FARMS, LLC, and )
MARKETING & PLANNING SPECIALISTS )
LIMITED PARTNERSHIP, )
                             )
         Plaintiffs, )
                             )
         v. )          CASE NUMBER: **2:14-cv-16744**
                             )
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY and SCOTT )
PRUITT, in his official capacity as )
Administrator, )
                             )
       Defendants and Counterclaimants. )
_____ )

## UNITED STATES' THIRD AMENDED PRETRIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(3)(A), the United States of America,

including Defendants and Counterclaimants the United States Environmental Protection Agency

("EPA"), and Scott Pruitt, in his official capacity as administrator of the EPA (collectively, the

"United States") hereby make the following second amended pretrial disclosures:

    **1.**     **Fed. R. Civ. P. 26(a)(3)(A)(i): "The name and, if not previously provided, the**

**address and telephone number (only new or known changes in contact information is**

**listed) of each witness—separately identifying those the party expects to present and those**

**it may call if the need arises"**

United States' Response:

The United States expects to present the following witnesses at trial:

         a.   Jeffrey Lapp, EPA Region III;

         b.   Todd Lutte, EPA Region III;

         c.   Rick Hemann, Regulatory Project Manager, Huntington District;

d. Peter Stokely, Clean Water Act Section 404 Coordinator, EPA Office of Civil Enforcement;

e. David Arscott, Stroud Water Research Center;

f. Charles Dow, Stroud Water Research Center;

g. Dave Walters, Walters Excavating;

h. Larry Carr; and

i. Ron Foster.

The United States reserves the right to call any other witness or expert disclosed by Plaintiffs. The United States also reserves the right to call any other witness or expert disclosed by the Plaintiffs by deposition transcript in addition to or in lieu of live testimony.

**2. Fed. R. Civ. P. 26(a)(3)(A)(ii): "Witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition"**

United States' Response:

a. Stephanie Andreescu, , Environmental Scientist, Environmental Assessment and Innovation Division, EPA Region II; and

b. Bryon Scott Moore.

**3. Fed R. Civ. P. 26(a)(3)(A)(iii): "Identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises."**

United States' Response: Below is a table identifying the documents or other exhibits that the United States expects to offer at trial. In addition, the United States also reserves the right to use any exhibit identified by Plaintiffs' in their Rule 26(a)(3)(A)(iii) disclosures that is not objected to by the United States.

| U.S. Ex. | Begin Bates | End Bates | Document Description | Date |
|---|---|---|---|---|
| 1 | AR0000107 | AR0000108 | Email exchange between Richard Berkes, USACE; Stephanie Chin, USEPA; and Todd Lutte, USEPA | Date range: March 27, 2009 – March 30, 2009 |
| 2 | AR0000122 | AR0000127 | Order for Compliance, EPA Docket No. CWA-03-2009-0222DW, issued to Endurance Group, LLC and Central Industrial Maintenance, Inc. | 9/4/2009 |
| 3 | USEPA001705 | USEPA001735 | Andreescu telephone log | Varies |
| 4 | AR0000322 | AR0000322 | Correspondence from Todd Lutte, USEPA, to Joe McCoy, Central Industrial Maintenance, Inc. | 2/1/2010 |
| 5 | AR0000657 | AR0000667 | Printed copies of GIS Layers Maps | Consulted between September 9, 2010 and January 24, 2012 |
| 6 | AR0001076 | AR0001081 | Photographs taken by EPA during September 9, 2010 site visit | 9/9/2010 |
| 7 | USEPA001234 | USEPA001260 | Photos from 9/9/2010 Site visit (selection) USEPA001248 - 50; 52-54; 57; 60; 37-39 | 9/10/2010 |
| 8 | USEPA002934 | USEPA002936 | Andreescu Field Notebook | |
| 9 | AR0000350 | AR0000357 | Summary of Violation at Foster Farms, LLC, Pad #4, Parkersburg, Wood County, WV | 9/1/2010 |
| 10 | AR0000002 | AR0000015 | Article entitled: Ecological Linkages Between Headwaters and Downstream Ecosystems: Transport of Organic Matter, Invertebrates, and Wood Down Headwater Channels; by Mark S. Wipfli, John S. Richardson, and Robert J. Naiman; Journal of the American Water Resources Association | 2/1/2007 |
| 11 | AR0000016 | AR0000039 | Article entitled: Where Rivers Are Born: The Scientific Imperative of Defending Small Streams and Wetlands, by Judy L. Meyer, Ph.D.; et. al.; American Rivers and Sierra Club | 9/1/2003 |

3

| 12 | AR0000040 | AR0000058 | Article entitled: Small But Mighty: Headwaters Are Vital to Stream Network Biodiversity at Two Levels of Organization, by Debra S. Finn, et. al., Journal of the North American Benthological Society | 9/1/2011 |
|----|-----------|-----------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|----------|
| 13 | AR0000376 | AR0000382 | USEPA Request for Information Letter to Foster Farms, LLC | Undated |
| 14 | AR0000369 | AR0000375 | USEPA Request for Information Letter to Fox Engineering | Undated |
| 15 | AR0000383 | AR0000386 | Response to USEPA Request for Information from Charles King, Trustee, Foster Farms, LLC to Stephanie Chin, USEPA | 12/24/2010 |
| 16 | AR0000401 | AR0000421 | Response to USEPA Request for Information from David Walters, Walters Excavating to Stephanie Chin, USEPA | Undated |
| 17 | AR0000363 | AR0000368 | Response to USEPA Request for Information from Fox Engineering to Stephanie Chin, USEPA | 12/22/2010 |
| 18 | AR0000439 | AR0000439 | Email from Ron Foster to Pamela Lazos, USEPA | 3/6/2011 |
| 19 | AR0000447 | AR0000456 | Email and attachments from Richard Hemann, USACE to Stephanie Chin, USEPA | 4/26/2011 |
| 20 | AR0000473 | AR0000563 | Wetland and Stream Delineation Report Neal Run Crossing, by Randolph Engineering | 3/10/2011 |
| 21 | USEPA000525 | USEPA000535 | Photos from 5/2/2011 site visit | 5/2/2011 |
| 22 | USEPA001263 | USEPA001283 | Color photos from May 2, 2011 site visit | 5/2/2011 |
| 23 | USEPA001304 | USEPA001310 | Color photos from September 27, 2011 site visit | 9/27/2011 |
| 24 | AR0000593 | AR0000596 | Email and attachments from Richard Hemann, USACE to Stephanie Chin, USEPA | 7/21/2011 |
| 25 | USEPA000548 | USEPA00548 | US EPA Corps Memoradum for Record | 8/4/2011 |
| 26 | AR0000626 | AR0000627 | Email from Richard Hemann, USACE, to Stephanie Andreescu, USEPA | 12/7/2011 |
| 27 | MPS001652 | MPS001652 | MPS001652 – Email from Stephanie Andreescu to Pamela Lazos dated Dec. 12, 2011 | 12/12/2011 |

| 28 | AR0000640 | AR0000647 | Order for Compliance, EPA Docket No.: 03-2012-0070DW, issued to Foster Farms, LLC | 1/24/2012 |
|---|---|---|---|---|
| 29 | USEPA001496 | USEPA001498 | Letter from Foster to Andreescu | 2/14/2012 |
| 30 | USEPA001955 | USEPA001963 | Corps letter to Foster verifying JD | 2/22/2012 |
| 31 | USEPA001508 | USEPA001510 | Letter from Foster to Andreescu | 3/30/2012 |
| 32 | USEPA001511 | USEPA001512 | Letter from Andreescu to Foster | 4/5/2012 |
| 33 | USEPA001651 | USEPA001655 | Memorandum to record re Neal Run Crossing Pads #4 & #5 | 6/13/2012 |
| 34 | USEPA001150 | USEPA001150 | SAMB Map | |
| 35 | USEPA001541 | USEPA001543 | Letter from Lapp to Foster | 9/20/2012 |
| 36 | AR0000001 | AR0000001 | Topographical map depicting the location of the Site, Exhibit A to Order for Compliance, EPA Docket No. CWA-03-2012-0070DW | 1/24/2012 |
| 37 | AR0000059 | AR0000062 | State of West Virginia Certificate of Registration, Marketing & Planning Specialists Limited Partnership | 11/6/2008 |
| 38 | AR0000063 | AR0000092 | Issue Paper: Recommendations for Determining Relatively Permanent Waters (RPWs) in Headwater Streams in the Huntington and Pittsburgh Corps Districts, by Greg Pond and Margaret Passmore | 5/19/2008 |
| 39 | | | Withdrawn | |
| 40 | | | Withdrawn | |
| 41 | AR0000100 | AR0000102 | Correspondence from Phillip and Linda Blackwell | Undated |
| 42 | AR0000103 | AR0000106 | Email exchange between Richard Berkes, USACE; Stephanie Chin, USEPA; and Todd Lutte, USEPA | Date range: March 27, 2009 – March 30, 2009 |
| 43 | AR0000109 | AR0000109 | Email from Pamela Lazos, USEPA, to Robert Johns, Endurance Group | 5/20/2009 |
| 44 | AR0000110 | AR0000114 | Correspondence from John Pomponio, USEPA, to Jennifer Fox, Fox Engineering | 7/27/2009 |
| 45 | AR0000115 | AR0000119 | Correspondence from John Pomponio, USEPA, to John McCoy, Central Industrial Maintenance | 8/13/2009 |

| 46 | AR0000120 | AR0000121 | Email exchange between Richard Berkes, USACE, to Stephanie Chin, USEPA | 8/21/2009 |
|---|---|---|---|---|
| 47 | AR0000128 | AR0000128 | Correspondence from Joe McCoy, Central Industrial Maintenance, Inc., to Todd Lutte, USEPA | 9/10/2009 |
| 48 | AR0000129 | AR0000129 | Correspondence from Wendel Turner, on behalf of Robert Johns, Bankruptcy Trustee for the Endurance Group, LLC, to Todd Lutte, USEPA | 9/23/2009 |
| 49 | AR0000130 | AR0000144 | Deed by and between Robert Johns, Bankruptcy Trustee for the Endurance Group, LLC, and Foster Farms, LLC, and attachments | 10/29/2009 |
| 50 | AR0000145 | AR0000159 | Deed by and between Robert Johns, Bankruptcy Trustee for the Endurance Group, LLC, and Marketing & Planning Specialists Limited Partnership, and attachments | 10/29/2009 |
| 51 | AR0000160 | AR0000176 | Purchase Agreement by and between Robert Johns, Bankruptcy Trustee for the Endurance Group, LLC, and Ronald P. Foster | 8/6/2009 |
| 52 | AR0000177 | AR0000217 | Notice of Motion for Sale of Real Estate, and Notice of Opportunity for Bid, In Re: The Endurance Group, LLC, Bankruptcy Case No. 4:09-40053 | 8/10/2009 |
| 53 | AR0000218 | AR0000229 | Trustee's Motion for Order Authorizing the Sale of Real Estate, , In Re: The Endurance Group, LLC, Bankruptcy Case No. 4:09-40053 | 8/10/2009 |
| 54 | AR0000230 | AR0000293 | Bill of Sale and Assignment of Permits by and between Robert Johns, Bankruptcy Trustee for the Endurance Group, LLC, and Foster Farms, LLC, | 10/29/2009 |
| 55 | AR0000294 | AR0000309 | Correspondence from Charles King, Foster Farms, LLC to Scott Mandirola, WVDEP | 11/5/2009 |
| 56 | AR0000310 | AR0000310 | Correspondence from Joe McCoy, Central Industrial Maintenance, Inc. to Todd Lutte, USEPA | 11/11/2009 |
| 57 | AR0000311 | AR0000311 | Email from Brad Turman, Foster Supply Inc., to Stephanie Chin, USEPA | 12/29/2009 |

| 58 | AR0000312 | AR0000314 | Email exchange between Jason Chambers, Judith Taylor, and John King (all WVDEP) and Brad Turman, Foster Supply Inc. | Date range: December 29, 2009 - January 4, 2010 |
|----|-----------|-----------|---------------------------------------------------------------------------------------------------------------------|--------------------------------------------------|
| 59 | AR0000315 | AR0000316 | Correspondence from Scott Mandirola, WVDEP, to Charles King, Foster Farms, LLC | 1/5/2010 |
| 60 | AR0000317 | AR0000319 | Email exchange between Jason Chambers, Judith Taylor, and John King (all WVDEP) and Brad Turman, Foster Supply Inc. | Date range: December 29, 2009 – January 6, 2010 |
| 61 | AR0000320 | AR0000321 | Email exchange between Brad Turman, Foster Supply Inc., and Stephanie Chin, USEPA | Date range: January 15, 2010 – February 1, 2010 |
| 62 | AR0000323 | AR0000323 | Correspondence from Stephanie Chin, USEPA, to Joe McCoy, Central Industrial Maintenance, Inc. | 3/1/2010 |
| 63 | AR0000324 | AR0000324 | Correspondence from Joe McCoy, Central Industrial Maintenance, Inc., to Stephanie Chin, USEPA | 3/16/2010 |
| 64 | AR0000325 | AR0000325 | Correspondence from Todd Lutte, USEPA, to Joe McCoy, Central Industrial Maintenance, Inc. | 6/1/2010 |
| 65 | AR0000326 | AR0000328 | Email from Todd Lutte, USEPA, to Ron Foster | 6/2/2010 |
| 66 |           |           | Withdrawn |  |
| 67 | AR0000331 | AR0000340 | Application for WV/NPDES Water Pollution Control Modification, by Charles King, Foster Farms, LLC | 6/28/2010 |
| 68 | AR0000341 | AR0000342 | Email from Natalie Hardman, WVDEP, to Ron Foster | 8/17/2010 |
| 69 | AR0000343 | AR0000348 | Property Development Agreement by and between Foster Farms LLC, Marketing & Planning Specialists Limited Partnership, and Design/ Build Resource Group, LLC | 8/24/2010 |
| 70 | AR0000349 | AR0000349 | Email from Dan Metheny, Fox Engineering, to Ron Foster | 9/9/2010 |

| 71 | AR0000358 | AR0000361 | Permit/ Site Evaluation, WV/NPDES Construction Stormwater General Permit | 10/5/2010 |
|---|---|---|---|---|
| 72 | AR0000362 | AR0000362 | Email from Todd Lutte, USEPA, to Joe McCoy, Central Industrial Maintenance, Inc. | 11/4/2010 |
| 73 | AR0000387 | AR0000400 | Photographic Documentation, Neal Run Crossing | 2/18/2011 |
| 74 | | | Withdrawn | |
| 75 | | | Withdrawn | |
| 76 | | | Withdrawn | |
| 77 | | | Withdrawn | |
| 78 | AR0000442 | AR0000442 | Email from Todd Lutte, USEPA, to Joe McCoy, Central Industrial Maintenance, Inc. | 3/9/2011 |
| 79 | AR0000443 | AR0000443 | Correspondence from Todd Lutte, USEPA to Ron Foster | 3/9/2011 |
| 80 | | | Withdrawn | |
| 81 | AR0000457 | AR0000457 | Email from Richard Hemann, USACE to Stephanie Chin, USEPA | 4/27/2011 |
| 82 | AR0000458 | AR0000472 | Letter of Transmittal, Wetland and Stream Delineation Report, Neal Run Crossing, by Randolph Engineering | 3/23/2011 |
| 83 | AR0000564 | AR0000567 | Email exchange between Ron Foster and Stephanie Chin, USEPA; Pamela Lazos, USEPA; and Todd Lutte, USEPA | Date range: April 11, 2011 - April 27, 2011 |
| 84 | AR0000568 | AR0000571 | Email exchange between Ron Foster and Stephanie Chin, USEPA; Pamela Lazos, USEPA; and Todd Lutte, USEPA | Date range: April 11, 2011 - April 28, 2011 |
| 85 | AR0000572 | AR0000583 | Email and attachments from Stephanie Chin, USEPA, to Richard Hemann, USACE | 4/28/2011 |
| 86 | AR0000584 | AR0000591 | Wetland and Stream Delineation Report, by Randolph Engineering | 6/6/2011 |
| 87 | AR0000592 | AR0000592 | Email from Pamela Lazos, USEPA, to Joe McCoy, Central Industrial Maintenance, Inc., and Ron Foster | 6/8/2011 |

| 88 | AR0000597 | AR0000597 | Email exchange between Richard Hemann, USACE and Stephanie Chin, USEPA. Reference to unrelated enforcement matter redacted. | Date range: July 21, 2011 – July 22, 2011 |
|---|---|---|---|---|
| 89 | AR0000598 | AR0000598 | Email exchange between Ron Foster and Pamela Lazos, USEPA | Date range: July 26, 2011- July 27, 2011 |
| 90 | AR0000599 | AR0000600 | Email exchange between Ron Foster and Pamela Lazos, USEPA | Date range: July 26, 2011- July 27, 2011 |
| 91 | AR0000601 | AR0000602 | Email from Pamela Lazos, USEPA, to Joe McCoy, Central Industrial Maintenance, Inc. | 8/2/2011 |
| 92 | AR0000603 | AR0000604 | Email exchange between Ron Foster and Pamela Lazos, USEPA | Date range: April 27, 2011 - October 18, 2011 |
| 93 | AR0000605 | AR0000606 | Email exchange between Ron Foster and Stephanie Chin, USEPA; Pamela Lazos, USEPA; and Todd Lutte, USEPA | Date range: April 11, 2011 - April 13, 2011 |
| 94 | AR0000607 | AR0000607 | Correspondence from Ron Foster to Stephanie Chin, USEPA; and Todd Lutte, USEPA | Undated |
| 95 | AR0000608 | AR0000609 | Email exchange between Ron Foster and Pamela Lazos, USEPA | Date range: April 28, 2011 October 29, 2011 |
| 96 | AR0000610 | AR0000615 | Email exchange between Ron Foster and Pamela Lazos, USEPA | Date range: April 11, 2011 - October 25, 2011 |
| 97 | AR0000616 | AR0000622 | Email exchange between Ron Foster and Pamela Lazos, USEPA | Date range: April 11, 2011 - November 23, 2011 |

| 98 | AR0000623 | AR0000623 | Email from Joe McCoy, Central Industrial Maintenance, Inc., to Pamela Lazos, USEPA | 11/23/2011 |
|---|---|---|---|---|
| 99 | AR0000624 | AR0000625 | Email exchange between Ron Foster and Pamela Lazos, USEPA | Date range: October 18, 2011 - November 23, 2011 |
| 100 | AR0000628 | AR0000628 | Email from Richard Hemann, USACE, to Stephanie Andreescu, USEPA | 12/9/2011 |
| 101 | AR0000629 | AR0000629 | Email from Richard Hemann, USACE, to Stephanie Andreescu, USEPA | 12/9/2011 |
| 102 | AR0000630 | AR0000631 | Email exchange between Ron Foster and Pamela Lazos, USEPA | Date range: October 19, 2011 - December 27, 2011 |
| 103 | AR0000632 | AR0000639 | Email exchange between Ron Foster and Pamela Lazos, USEPA | Date range: April 11, 2011 - January 3, 2012 |
| 104 | AR0000648 | AR0000648 | Correspondence from Joe McCoy, Central Industrial Maintenance, Inc., to Todd Lutte, USEPA | 9/30/2009 |
| 105 | AR0000649 | AR0000649 | Map: Conceptual Site Plan 3 | 3/14/2008 |
| 106 | AR0000650 | AR0000650 | Map: prepared for remediation work under Order for Compliance, EPA Docket No. CWA-03-2009-0222DW | Undated |
| 107 | AR0000651 | AR0000651 | Map: Stream Cross Sections, Stream Remediation Plan, prepared for remediation work under Order for Compliance, EPA Docket No. CWA-03-2009-0222DW | 10/1/2009 |
| 108 | AR0000652 | AR0000652 | Map: Stream Remediation Plan, prepared for remediation work under Order for Compliance, EPA Docket No. CWA-03-2009-0222DW | 10/1/2009 |
| 109 | AR0000653 | AR0000653 | Map: River Valley Town Center Site Plan | 7/2/2010 |
| 110 | AR0000654 | AR0000654 | Map: Neal Run Crossing Conceptual Plan 1 | 3/24/2010 |
| 111 | AR0000655 | AR0000655 | Map: Neal Run Crossing Conceptual | 3/24/2010 |

| | | | Plan 2 | |
|---|---|---|---|---|
| 112 | AR0000656 | AR0000656 | Map: Steam Remediation, prepared by Central Industrial Maintenance, Inc., for remediation work pursuant to Order for Compliance, EPA Docket No. CWA-03-2009-0222DW | 12/20/2010 |
| 113 | AR0000668 | AR0000668 | Attachment to Email from Richard Hemann, USACE, to Stephanie Andreescu, USEPA | 12/9/2011 |
| 114 | AR0000669 | AR0000688 | Attachment to Email from Brad Turman, Foster Supply Inc., to Stephanie Chin, USEPA | 12/29/2009 |
| 115 | | | Withdrawn | |
| 116 | AR0001031 | AR0001051 | Photographs taken by EPA during May 2, 2011 site visit | 5/2/2011 |
| 117 | AR0001052 | AR0001075 | Photographs provided to EPA by Central Industrial Maintenance, Inc., depicting remediation work pursuant to Order for Compliance, EPA Docket No. CWA-03-2009-0222DW | 8/2/2011 |
| 118 | AR0001082 | AR0001108 | Photographs taken by EPA during September 27, 2011 site visit | 9/27/2011 |
| 119 | MPS000080 | MPS000080 | Oversized Image | |
| 120 | MPS000081 | MPS000081 | Oversized Image | |
| 121 | MPS000143 | MPS000143 | Oversized Image | |
| 122 | MPS000182 | MPS000185 | Foster Farms LLC Financial Statement | 12/31/2013 |
| 123 | MPS000208 | MPS000209 | Foster, Ronald Deposition Exhibit 33 - Mortgage Endurance Site MP-8 | 1/5/2015 |
| 124 | MPS000215 | MPS000216 | Foster, Ronald Deposition Exhibit 31 - Demand Note  MP-1 | 10/10/2012 |
| 125 | MPS000228 | MPS000230 | Foster, Ronald Deposition Exhibit 20 - Randolph invoice for JD | 4/7/2011 |
| 126 | MPS000241 | MPS000241 | Mortgage Endurace Site Parkersbug | 2/1/2014 |
| 127 | MPS000244 | MPS000244 | Demand Note MP-1 | 10/7/2012 |
| 128 | MPS000245 | MPS000245 | Demand Note MP-2 | 3/5/2013 |
| 129 | MPS000250 | MPS000250 | Demand Note MP-7 | 12/3/2014 |
| 130 | MPS000251 | MPS000252 | Marketing & Planning Balance Sheet | 12/31/2010 |
| 131 | MPS000253 | MPS000254 | Marketing & Planning Balance Sheet | 12/31/2011 |
| 132 | MPS000255 | MPS000256 | Marketing & Planning Balance Sheet | 12/31/2012 |
| 133 | MPS000257 | MPS000258 | Foster, Ronald Deposition Exhibit 34 - Marketing & Planning Balance Sheet | 12/31/2013 |
| 134 | MPS000259 | MPS000260 | Marketing & Planning Balance Sheet | 12/31/2014 |

| 135 | MPS000261 | MPS000262 | Foster, Ronald Deposition Exhibit 35 - Marketing & Planning Balance Sheet | 12/31/2009 |
|---|---|---|---|---|
| 136 | MPS000354 | MPS000361 | Deed of Trust between M&PS and Ron R. Foster | 4/12/2013 |
| 137 | MPS000362 | MPS000363 | Mortgage Endurance Site Parkersburg | 1/5/2015 |
| 138 | MPS000375 | MPS000378 | Foster, Ronald Deposition Exhibit 37 - Foster Farms LLC, Oil and Gas Lease | 1/9/2014 |
| 139 | MPS000379 | MPS000381 | Foster, Ronald Deposition Exhibit 38 - M&PS LP, Oil and Gas Lease | 1/9/2014 |
| 140 | MPS000412 | MPS000412 | Foster, Ronald Deposition Exhibit 32 - Mortgage Endurance Site Parkersburg | 2/1/2014 |
| 141 | MPS000417 | MPS000417 | Demand Note MP-3 | 9/8/2013 |
| 142 | MPS000418 | MPS000418 | Demand Note MP-5 | 8/11/2014 |
| 143 | MPS000419 | MPS000419 | Demand Note MP-6 | 9/17/2014 |
| 144 | MPS000420 | MPS000420 | Demand Note MP-7 | 12/3/2014 |
| 145 | MPS000421 | MPS000421 | Demand Note MP-7 | 12/3/2014 |
| 146 | MPS000425 | MPS000425 | Cabot Oil & Gas, Consideration for Paid Up Oil and Gas Lease to M&PS LP | 1/9/2014 |
| 147 | MPS000427 | MPS000427 | Cabot Oil & Gas, Consideration for Paid Up Oil and Gas Lease to Foster Farms LLC | 1/9/2014 |
| 148 | MPS000430 | MPS000430 | Foster, Ronald Deposition Exhibit 40 - Receipt for Cabot Oil and Gas payment | 1/9/2014 |
| 149 | MPS000436 | MPS000436 | Assignment of Purchase Agreement | 10/29/2009 |
| 150 | | | Withdrawn | |
| 151 | MPS000447 | MPS00448 | Handwritten Notes | 7/20/2011 |
| 152 | MPS000482 | MPS000485 | Foster, Ronald Deposition Exhibit 30 - ATF Permit Application | undated |
| 153 | MPS000486 | MPS000487 | Email exchange between Ron Foster and Richard Hemann dated February 2012 | 2/6/2012 |
| 154 | MPS000506 | MPS000508 | Foster, Ronald Deposition Exhibit 10 - Letter from Foster to WVDEP | 3/14/2012 |
| 155 | MPS000526 | MPS000527 | Foster, Ronald Deposition Exhibit 9 - letter from WV DEP to Walters | 12/3/2013 |
| 156 | MPS000558 | MPS000559 | Foster, Ronald Deposition Exhibit 17 - email from Foster to Andreescu re Turman | 2/10/2012 |
| 157 | MPS000606 | MPS000607 | Email exchange between Dan Metheny and Ron Foster dated Sept. 9, 2010 | 9/9/2010 |

| 158 | MPS000626 | MPS000626 | Letter from Margaret Burcham to Ron Foster dated May 29, 2012 | 5/29/2012 |
|---|---|---|---|---|
| 159 | MPS000691 | MPS000691 | Foster, Ronald Deposition Exhibit 16 - bankruptcy claim against Fox Engineering | 1/12/2015 |
| 160 | MPS000707 | MPS000708 | Foster, Ronald Deposition Exhibit 36 - Foster Farms Financial Report | 6/4/2014 |
| 161 | MPS000709 | MPS000711 | Foster Farms Financial Report | 2/7/2013 |
| 162 | MPS000846 | MPS000846 | Foster, Ronald Deposition Exhibit 19 - - Narrative from Turman | 7/12/2012 |
| 163 | | | Withdrawn | |
| 164 | MPS000978 | MPS000982 | Foster, Ronald Deposition Exhibit 49 - Email from Foster to Lazos | 10/22/2012 -11/6/2012 |
| 165 | MPS001068 | MPS001155 | Marketing & Planning Specialists LP's Response to United States | 3/10/2011 |
| 166 | MPS001089 | MPS001089 | White, Jacob Deposition Exhibit 52 | |
| 167 | MPS001156 | MPS001157 | Foster, Ronald Deposition Exhibit 22 - Letter from Foster to Randolph | 8/31/2012 |
| 168 | MPS001158 | MPS001159 | Material review of cover letter dated August 31, 2012 | 9/14/2012 |
| 169 | MPS001167 | MPS001167 | Carr, Larry Deposition Exhibit 4A | |
| 170 | | | Withdrawn | |
| 171 | | | Withdrawn | |
| 172 | | | Withdrawn | |
| 173 | MPS001192 | MPS001306 | White, Jacob Deposition Exhibit 60 - Letter from Corps to Foster | 3/21/2012 |
| 174 | MPS001202 | MPS001203 | Slackwater list | Undated |
| 175 | MPS001238 | MPS001245 | Approved Jurisdictional Forms for RR4 | 2/24/2012 |
| 176 | MPS001490 | MPS001490 | Foster, Ronald Deposition Exhibit 14 - Email from Foster to Lazos | 7/26/2011 |
| 177 | MPS001529 | MPS001529 | Foster, Ronald Deposition Exhibit 45 - - Email from Foster to Lutte and Chin | 4/11/2012 |
| 178 | MPS001984 | MPS001986 | Email exchange between Ron Foster and Pamela Lazos dated August 2011 | 8/31/2011 |
| 179 | REV003630 | REV003634 | Emails from Lazos to Lewis | 2/15/2012 |
| 180 | USEPA000042 | USEPA000051 | Email from Hemann to Andreescu attaching letter to Foster | 3/19/2012 |
| 181 | USEPA000097 | USEPA000097 | Stream Length Chart | |
| 182 | USEPA000524 | USEPA000524 | Email from Chin to Hemann attaching 9/2010 site photos and inspection | 4/28/2011 |

| | | | report | |
|---|---|---|---|---|
| 183 | USEPA000701 | USEPA000715 | Turman Plans for Neal Run Crossing | 3/28/2012 |
| 184 | USEPA000740 | USEPA000741 | Letter from Garvin to Manchin | 8/13/2013 |
| 185 | USEPA001151 | USEPA001151 | SAMB Map | |
| 186 | USEPA001153 | USEPA001157 | Color GIS data | |
| 187 | USEPA001216 | USEPA001262 | Photos from 9/9/2010 Site visit (all) | 9/10/2010 |
| 188 | USEPA001362 | USEPA001363 | CIM Engineering Drawings | 10/1/2009 |
| 189 | USEPA001453 | USEPA001456 | Email exchange between Ron Foster and Pamela Lazos dated April 2011 | 4/15/2011 |
| 190 | | | Withdrawn | |
| 191 | USEPA001473 | USEPA001473 | Email exchange between Pamela Lazos and Stephanie Andreescu dated Nov. 2011 | 11/23/2011 |
| 192 | USEPA001513 | USEPA001514 | Email from Foster to Andreescu | 4/12/2012 |
| 193 | USEPA001515 | USEPA001515 | Letter from Foster to Andreescu | 4/18/2012 |
| 194 | USEPA001525 | USEPA001526 | Show Cause Letter from Lapp to Foster | 5/30/2012 |
| 195 | | | Withdrawn | |
| 196 | | | Withdrawn | |
| 197 | USEPA001582 | USEPA001584 | Email from Lazos to Foster | 11/8/2012 |
| 198 | USEPA001604 | USEPA001606 | Jurisdictional Determination Form | 11/26/2012 |
| 199 | USEPA001756 | USEPA001854 | Approved Jurisdictional Determination Form (not final) | undated |
| 200 | USEPA001944 | USEPA001944 | Email from Hemann to Andreescu | 3/23/2012 |
| 201 | USEPA002004 | USEPA002004 | Aerial showing Neal Run | Undated |
| 202 | USEPA002506 | USEPA002506 | Turman, Brad Deposition Exhibit 4 | 12/29/2009 |
| 203 | | | Withdrawn | |
| 204 | | | Withdrawn | |
| 205 | | | Withdrawn | |
| 206 | USEPA002858 | USEPA002858 | Stokely Reliance Materials | |
| 206A | USEPA002858 | USEPA002858 | Imagery\1VBXD00020109.tif | |
| 206B | | | Imagery\1002242_WV15872 | |
| 206C | | | Imagery\C3908152.NWS.1100409\C3908152.NWS.1100409 | |
| 206D | | | Imagery\FF3-15-2014 | |
| 206E | | | Imagery\Pictometry\WVNORT105017NeighObliq1669E_110530-1.jpg | |
| 206F | | | Imagery\Pictometry\WVNORT105017NeighObliq1669E_110530.jpg | |
| 206G | | | Imagery\Pictometry\WVWOOD10501 | |

| | | | | |
|---|---|---|---|---|
| | | | 7NeighObliq2443E_111222 | |
| 206H | | | Imagery\Pictometry\WVWOOD10501 7NeighObliq2458E_111222 | |
| 206I | | | Imagery\Pictometry\WVWOOD10501 7NeighObliq1055S_111224.jpg | |
| 206K | | | Imagery\Pictometry\WVWOOD10501 7NeighObliq1055S_111224-1.jpg | |
| 207 | | | Withdrawn | |
| 208 | | | Withdrawn | |
| 209 | | | Withdrawn | |
| 210 | | | Withdrawn | |
| 210A | | | Withdrawn | |
| 210B | | | Withdrawn | |
| 211 | | | Exhibit D to Opposition to Plaintiffs Summary Judgment Motion -U.S. Army Corps of Engineers Regulatory Guidance Letter No. 05-05 | 12/7/2005 |
| 212 | | | Foster, Ronald Deposition Exhibit 4 -- Neal Run Crossing Development Plan 1 with markings | 3/24/2010 |
| 213 | | | Foster, Ronald Deposition Exhibit 5 - Neal Run Crossing Plan 2 with markings | 3/24/2010 |
| 214 | | | Stroud Report Photo P1000032; Photos: Outlet and in the field below the stormwater retention pond in watershed SAR3_1 to the Blackwell trib. Photographs taken by S. Andreescu (EPA) on 5/2/2011 [USEPA001209-1211]. | 5/2/2011 |
| 215 | | | Stroud Report Photo P1000034; Photos: Outlet and in the field below the stormwater retention pond in watershed SAR3_1 to the Blackwell trib. Photographs taken by S. Andreescu (EPA) on 5/2/2011 [USEPA001209-1211]. | 5/2/2011 |
| 216 | | | Stroud Report Photo P1000035; Photos: Outlet and in the field below the stormwater retention pond in watershed SAR3_1 to the Blackwell trib. Photographs taken by S. Andreescu (EPA) on 5/2/2011 [USEPA001209-1211]. | 5/2/2011 |

| | | | | |
|---|---|---|---|---|
| 217 | | | Stroud Report Photo P1000036; Photos: Outlet and in the field below the stormwater retention pond in watershed SAR3_1 to the Blackwell trib. Photographs taken by S. Andreescu (EPA) on 5/2/2011 [USEPA001209-1211]. | 5/2/2011 |
| 218 | | | Stroud Report Photo P1000037; Photos: Outlet and in the field below the stormwater retention pond in watershed SAR3_1 to the Blackwell trib. Photographs taken by S. Andreescu (EPA) on 5/2/2011 [USEPA001209-1211]. | 5/2/2011 |
| 219 | | | Withdrawn | |
| 220 | | | Stokely, Peter Expert Report Figure 5 | 5/30/2011 |
| 221 | | | Stokely, Peter Expert Report Figure 11 | 12/22/2011 |
| 222 | | | Stokely, Peter Expert Report Figure 4 | 12/22/2011 |
| 223 | | | Stokely, Peter Expert Report Figure 12 | 12/24/2011 |
| 224 | | | Stokely, Peter Expert Report Figure 6 | 12/24/2011 |
| 225 | | | Stokely, Peter Expert Report Figure 7 | 12/24/2011 |
| 226 | | | White, Jacob Deposition Exhibit 58 - email from Foster to White | 3/16/2012 |
| 227 | | | Foster, Ronald Deposition Exhibit 48 - Letter from Foster to Lazos | 6/11/2012 |
| 228 | | | White, Jacob Deposition Exhibit 62 -- Letter from White to Foster | 9/7/2012 |
| 229 | | | Stroud Report Photo: Neal Run 4 (NR_4) looking downstream; Date: 5/11/2015; Coordinates: N39°15'3.25"; W81°36'35.37" | 5/11/2015 |
| 230 | | | Stroud Report Photo: Neal Run 4 (NR_4) looking upstream; Date: 5/11/2015; Coordinates: N39°15'3.25"; W81°36'35.37" | 5/11/2015 |
| 231 | | | Stroud Report Photo: Neal Run at Larksmead Road (NR Xtra @ Larksmead Road); Date: 5/11/2015; Coordinates: N39°14'46.64"; W81°35'51.45" | 5/11/2015 |

| 232 | | | Stroud Report Photo: Northern two lined salamander (Eurycea bislineata) at unnamed tributary to Neal Run at site UTNR_1; Date: 5/11/2015; Coordinates: N39°14'48.45"; W81°37'7.29" | 5/11/2015 |
|---|---|---|---|---|
| 233 | | | Stroud Report Photo: Stream channel at site SAR2_2 at Dr. Judy Road (9/4); Date 5/11/2015; Coordinates: N39°14'25.06"; W81°36'31.88" | 5/11/2015 |
| 234 | | | Stroud Report Photo: Stream channel at site SWRC_RR12; Date: 5/11/2015; Coordinates: N39°14`46.63"; W81°35'51.45" | 5/11/2015 |
| 235 | | | Stroud Report Photo: stream channel at site SWRC_RR16; Date: 5/11/2015; Coordinates: N39°15'38.52"; W81°37'26.37" | 5/11/2015 |
| 236 | | | Stroud Report Photo: Stream channel at site SWRC_RR25 Date:5/11/2015; Coordinates:N39°13'7.88";W81°34'51.52" | 5/11/2015 |
| 237 | | | Stroud Report Photo: Stream channel at site SWRC_RR30; Date: 5/11/2015; Coordinates: N39°12'23.71"; W81°34'1.48" | 5/11/2015 |
| 238 | | | Stroud Report Photo: Stream channel at site SWRC_RR32; Date: 5/11/2015; Coordinates: N39°13'19.46"; W81°38'41.38 | 5/11/2015 |
| 239 | | | Stroud Report Photo: stream channel at site SWRC_RR33; Taken Date: 5/11/2015; Coordinates: N39°15'20.31" | 5/11/2015 |
| 240 | | | Stroud Report Photo: Stream channel at site SWRC_RR34; Date: 5/11/2015; Coordinates: N39°15'24.06"; W81°37'6.71" | 5/11/2015 |
| 241 | | | Stroud Report Photo: Stream channel at site SWRC_RR34; Date: 5/11/2015; N39°15'24.06"; W81°37'6.71"; | 5/11/2015 |
| 242 | | | Stroud Report Photo: Unnamed tributary to Neal Run 1 (UTNR_1) looking upstream; Date: 5/11/2015; Coordinates: N39°15'3.25"; W81°36'35.37" | 5/11/2015 |

| 243 | | | Stroud Report Photo: Unnamed tributary to Neal Run 4 (UTNR_4); Taken Date: 5/11/2015; Coordinates: N39°14'49.26"; W81°37'7.29" | 5/11/2015 |
|---|---|---|---|---|
| 244 | | | Stroud Report Photo: Blackwell tributary 2 (Blackwell 2); Date: 5/12/2015; Coordinates: N39°14'44.14"; W81°36'51.30" | 5/12/2015 |
| 245 | | | Stroud Report Photo: Crayfish collected at Blackwell tributary 2 (Blackwell 2); Date: 5/12/2015; Coordinates: N39°14'44.62"; W81°36'52.07" | 5/12/2015 |
| 246 | | | Stroud Report Photo: Creek Chub (Semotilus atromaculatus) collected at Blackwell tributary 2 (Blackwell 2); Date: 5/12/2015; Coordinates: N39°14'44.62"; W81°36'52.07" | 5/12/2015 |
| 247 | | | Stroud Report Photo: Filled area near the upper boundary where SAR3C (from Randolph Report's 2011a,b) was located; Date: 5/12/2015; Coordinates: N39°14'41.25"; W81°36'40.20" | 5/12/2015 |
| 248 | | | Stroud Report Photo: Larval salamander collected at Unnamed tributary to Neal Run 3 (UTNR_3); Date: 5/12/2015; Coordinates: N39°14'51.68"; W81°36'52.65" | 5/12/2015 |
| 249 | | | Stroud Report Photo: Looking downhill towards SAR 3ABC Pond below NRC constructed development pads (filled areas to right and left of photo); Date: 5/12/2015; Coordinates: N39°14'39.85"; W81°36'41.66" | 5/12/2015 |
| 250 | | | Stroud Report Photo: Stream channel and drain pipe above fill at SAR3B_1; Date: 5/12/2015; Coordinates: N39°14'38.32"; W81°36'37.40" | 5/12/2015 |
| 251 | | | Stroud Report Photo: Stream channel and salamander collected at site SAR2_1; Date: 5/12/2015; Coordinates: N39°14'36.65"; W81°36'23.09" | 5/12/2015 |

| 252 | | | Stroud Report Photo: Stream channel at Blackwell tributary at Dr. Judy Road (9/4); Date 5/12/2015; Coordinates: N39°14'55.17"; W81°34'44.62" | 5/12/2015 |
|------|--|--|------|------|
| 253 | | | Stroud Report Photo: Stream channel at SAR1_1; Date: 5/12/2015; Coordinates: N39°14'33.28"; W81°36'33.86" | 5/12/2015 |
| 254 | | | Stroud Report Photo: Taking in-situ water chemistry measurements at SAR3A_2; Date: 5/12/2015; Coordinates: N39°14'36.31"; W81°36'43.58" | 5/12/2015 |
| 255 | | | Stroud Report Photo: Unnamed tributary to Neal Run 3 (UTNR_3) looking downstream; Date: 5/12/2015; Coordinates: N39°14'52.49"; W81°36'50.17" | 5/12/2015 |
| 256 | | | Stroud Report Photo: Unnamed tributary to Neal Run 3 (UTNR_3) looking upstream; Date: 5/12/2015; Coordinates: N39°14'52.30"; W81°36'53.14" | 5/12/2015 |
| 257 | | | Stroud Report Photo: Unnamed tributary to Neal Run 3 above Blackwell tributary (UTNR_3_AboveBlackwell); Date: 5/12/2015; Coordinates: N39°14'50.63"; W81°36'52.40" | 5/12/2015 |
| 258 | | | Stroud Report Photo: Unnamed tributary to Neal Run 3 above Blackwell tributary (UTNR_3_AboveBlackwell); Date: 5/12/2015; Coordinates: N39°14'50.63"; W81°36'52.40" | 5/12/2015 |
| 259 | | | Stroud Report Photo: Unnamed tributary to Neal Run 3 above Blackwell tributary (UTNR_3_AboveBlackwell); Juvenile salamander; Date: 5/12/2015; Coordinates: N39°14'50.63"; W81°36'52.40" | 5/12/2015 |

| | | | | |
|---|---|---|---|---|
| 260 | | | Stroud Report Photo: Walking down filled slope above historic stream channel SAR3 towards sampling sites SAR3A_2 and SAR3ABC_Pond; Date: 5/12/2015; Coordinates: N39°14'36.35"; W81°36'41.85" | 5/12/2015 |
| 261 | | | Stroud Report Photos: Stream channel (right) and sampling water chemistry at site SAR3A_1 above filled area; both photos taken on: 5/12/2015; near Coordinates: N39°14'37.24"; W81°36'36.91" | 5/12/2015 |
| 262 | | | Stroud Report Photos: Stream channel above fill at site SARB_1 (both photos from this site near the coordinate listed here); Date: 5/12/2015; Coordinates: N39°14'38.34"; W81°36'38.61" | 5/12/2015 |
| 263 | | | Stroud Report Photo: Neal Run 1 (NR_1) looking upstream; Date: 5/13/2015; Coordinates: N39°14'48.60"; W81°34'12.47" | 5/13/2015 |
| 264 | | | Stroud Report Aerial Photo: Aerial view (imagery date – 10/8/2013) of the lower section of the SAR 3_1 watershed. Extracted from Google Earth Pro using the 'Save Image' tool on June 19, 2015 by C. Dow. | 6/19/2015 |
| 265 | | | Pehrman, Dane Deposition Exhibit 13 | 7/10/2015 |
| 266 | | | Foster, Ronald Deposition Exhibit 2 - River Valley Town Center plan and aerial | undated |
| 267 | | | Pehrman, Dane Deposition Exhibit 4 | undated |
| 268 | | | Pehrman, Dane Deposition Exhibit 8 | undated |
| 269 | | | Fuller, Jamie Deposition Exhibit 11A | |
| 270 | | | Fuller, Jamie Deposition Exhibit 11B | |
| 271 | | | Moore, Brian Deposition Exhibit 2 (audio file) | |
| 272 | | | Moore, Brian Deposition Exhibit 3 | |
| 273 | | | Moore, Brian Deposition Exhibit 4 | |
| 274 | | | Moore, Brian Deposition Exhibit 5 | |
| 275 | | | Stokely, Peter Expert Report Figure 1 | |
| 276 | | | Stokely, Peter Expert Report Figure 10 | |
| 277 | | | Stokely, Peter Expert Report Figure | |

| | | | | |
|---|---|---|---|---|
| | | | 13 | |
| 278 | | | Stokely, Peter Expert Report Figure 14 | |
| 279 | | | Stokely, Peter Expert Report Figure 2 | |
| 280 | | | Stokely, Peter Expert Report Figure 3 | |
| 281 | | | Stokely, Peter Expert Report Figure 8 | |
| 282 | | | Stokely, Peter Expert Report Figure 9 | |
| 283 | | | Stroud Report Figure 1 | |
| 284 | | | Stroud Report Figure 2 | |
| 285 | | | Stroud Report Figure 3 | |
| 286 | | | Stroud Report Figure 4 | |
| 287 | | | Stroud Report Figure 5 | |
| 288 | | | Stroud Report Figure 9 | |
| 289 | | | Stroud Report Figure 10 | |
| 290 | | | Stroud Report Figure 13 | |
| 291 | | | Stroud Report Figure 15 | |
| 292 | | | Stroud Report Figure 16 | |
| 293 | | | Stroud Report Table 1 | |
| 294 | | | Stroud Report Table 2 | |
| 295 | | | Stroud Report Table 5 | |
| 296 | | | Stroud Report Table 6 | |
| 297 | | | Stroud Report Table 7 | |
| 298 | | | Turman, Brad Deposition Exhibit 2 | |
| 299 | | | Turman, Brad Deposition Exhibit 3 | |
| 300 | | | Turman, Brad Deposition Exhibit 5A | |
| 301 | | | Turman, Brad Deposition Exhibit 5B | |
| 302 | | | Turman, Brad Deposition Exhibit 17 | |
| 303A | | | Demonstrative Exhibit - Stokely - Flow Path | |
| 303B | | | Demonstrative Exhibit – Dow – Neal Run Crossing | |
| 303C | | | Demonstrative Exhibit – Dow – Pad 4 | |
| 304 | | | Plaintiffs' Responses to U.S. First Set of Admissions. | |
| 305 | | | Plaintiffs' Reponses to U.S. First Set of Interrogatories | |
| 306 | | | Withdrawn | |
| 307 | | | Foster Farms LLC Balance Sheet | 12/31/2016 |
| 308 | | | Foster Farms LLC Tax Returns | 2013-2016 |
| 309 | | | Mortgage and Demand Notes | Varies |
| 310 | | | Marketing and Planning Specialists, | 12/31/2016 |

| | | | | |
|---|---|---|---|---|
| | | | LP Balance Sheet | |
| 311 | | | Marketing and Planning Specialists, LP Tax Returns | 2013-2016 |
| 312 | | | Screenshot from Campaignmoney.org | |
| 313 | | | Screenshot of Google search of "Ron Foster and Marketing and Planning Specialists, LP" | 9/30/2015 |
| 314 | | | Stroud Report: Appendix 3 –Aquatic Macroinvertebrate Taxa, Counts, Life Stages | |
| 315 | | | Neal Run Crossing Demonstrative with Pehrman photos (Ex. 265) georeferenced. | |
| 316 | | | U.S. Ex. 206B with overlay | |
| 317 | | | U.S. Ex. 206B zoomed in | |
| 318 | | | U.S. Ex. 206B zoomed in with overlay | |
| 319 | | | U.S. Ex. 206A with overlay | |
| 320 | | | U.S. Ex. 206A zoomed in | |
| 321 | | | U.S. Ex. 206C with overlay | |
| 322 | | | U.S. Ex. 206C with zoomed in | |
| 323 | | | U.S. Ex. 206B zoomed in with overlay | |

The United States hereby reserves its rights, pursuant to Fed. R. Civ. P. 26(e), to supplement or correct the foregoing disclosures, if appropriate.

JEFFREY H. WOOD
Acting Assistant Attorney General

/s/ Laura J. Brown
Amanda Shafer Berman
Laura Jane Brown
Sonya J. Shea
Kent E. Hanson
United States Department of Justice
Env't and Nat. Resources Division
601 D St. N.W., Ste. 8000
Washington, D.C. 20004
202-514-1950 (Berman)
202-514-3376 (Brown)
202-514-2741 (Shea)
206-639-5544 (Hanson)
amanda.berman@usdoj.gov
laura.j.s.brown@usdoj.gov
sonya.shea@usdoj.gov
kent.hanson@usdoj.gov

Dated August 13, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2017, I served the foregoing United States' Second

Amended Pretrial Disclosures on Plaintiffs via e-mail:

> James S. Crockett, Jr, Esquire
> John C. Wilkinson, Jr, Esquire
> Spilman Thomas & Battle, PLLC
> P.O. Box 273
> Charleston, W.V. 25231-0273
> JCrockett@spilmanlaw.com
> JWilkinson@spilmanlaw.com

> /s/ Laura J. Brown
> Laura J. Brown