

terradon.com

Corporate:
PO. Box 519
Nitro, WV  25143
Tel: 304-755-8291

## DECLARATION OF JASON ASBURY

Pursuant to 28 U.S.C. § 1746 JASON ASBURY hereby declares as follows:

1) I am the Vice President of Geotechnical, Environmental & Field Services for TERRADON Corporation (TERRADON).  TERRADON is a full-service engineering firm headquartered in Poca, WV with offices in Lewisburg WV, Fayetteville WV, Clarksburg WV and Washington PA.  I hold a Bachelors of Science degree in Landscape Architecture from West Virginia University.  I have been employed by TERRADON since January 2010 and have been practicing private consulting since June of 2004.  My job responsibilities at TERRADON include overseeing a team of 4 Environmental Scientists who perform field delineations for streams and wetlands; conducting stream and wetland delineations; providing critical project support for specialized permitting on projects;  and serving as regulatory liaison between TERRADON and The Army Corps of Engineers and the West Virginia Department of Environmental Protection for all Clean Water Act (CWA) Section 401 certification and 404 permit activities.  I prepare and review field assessment reports for jurisdictional determinations as well as determine required mitigation for impacted streams to comply with the CWA  Section 401 and 404 programs.  The majority of the sites with I work with are located in West Virginia.  I estimate that, during the course of my employment with TERRADON, I have conducted approximately 500 site visits in West Virginia to evaluate them for purposes of CWA Section 404 or 401 programs and reviewed and/or prepared approximately 575 wetlands delineations for sites in West Virginia.

2) As part of my employment, I have been trained utilizing the *Corps of Engineers Wetlands Delineation Manual* (Environmental Laboratory, 1987) and the *Regional Supplement to the Corps of Engineers Wetland Delineation Manual: Easter Mountains and Piedmont Region* (Corps, 2012).  I hold a 38-Hour United States Army Corps of Engineers (USACE) Wetland Delineation Training as well as both classroom and field training by the West Virginia Department of Environmental Protection/USACE to apply the West Virginia Stream and Wetland Valuation Metrics (WV SWVM) in stream assessments and stream classification.  I estimate that during the course of my employment with TERRADON, I have prepared and or reviewed WV SWVM Calculations for 25 projects.

3) The federal Mitigation Rule (40 C.F.R. 230.91-98) encourages use of an appropriate assessment method to assess and describe aquatic resources.  *230.91 Purpose and General Consideration: The purpose of this subpart is to establish standards and criteria for the use of all types of compensatory mitigation, including on-site and off-site permittee-responsible mitigation, mitigation banks, and in-lieu fee mitigation to offset unavoidable impacts to waters of the United States authorized through*

Poca, WV  |  Lewisburg, WV  |  Clarksburg, WV  |  Fayetteville, WV  |  Washington, PA



EXHIBIT A

*the issuance of permits by the U.S. Army Corps of Engineers (Corps) pursuant to section 404 of the Clean Water Act (33 U.S.C. 1344). This subpart implements section 314(b) of the* **2004 National Defense Authorization Act (Pub. L. 108-136), which directs that the standards and criteria shall, to the maximum extent practicable,** *maximize available credits and opportunities for mitigation, provide for regional variations in wetland conditions, functions, and values, and apply equivalent standards and criteria to each type of compensatory mitigation. This subpart is intended to further clarify mitigation requirements established under the Corps and EPA regulations at 33 CFR part 320 and this part, respectively.* The WV SWVM was utilized to the maximum extent practicable to assess the stream conditions and characteristics of RR1, RR2, RR3, and RR4 at the Neal Run Crossing property (the Site).

4) In September 2019, Ron Foster, Marketing & Planning Specialists Limited Partnership, and Foster Farms, LLC, (collectively, counterclaim defendants) contracted with TERRADON Corporation to perform a Stream Assessment to comply with an Order issued on August 29, 2019 in *Ron Foster et al. v. United States Environmental Protection Agency et al.*, No. 2:14-cv-16744, United States District Court for the Southern District of West Virginia (Doc. 264) (Order).  The Order directed the counterclaim defendants to submit to the EPA an evaluation, performed in conformity with the WV SWVM, of the number of credits necessary to compensate for impacts to waters of the United States resulting from the loss of the stream segments that the Court found that counterclaim defendants filled in violation of the Clean Water Act (Doc. 264 at p.11).  A Site visit was scheduled and a field assessment was conducted by Morgan Sword, Environmental Scientist, for TERRADON Corporation under my supervision.

5) Prior to the Site visit Ms. Sword and I reviewed the following materials:
a) Memorandum Opinion and Order and Findings of Fact and Conclusions of Law entered in *Ron Foster, et al. v. United States Environmental Protection Agency, et al.,* Civ. Action No 2:14-cv-16744 (Aug. 29, 2019) (Doc. 263),

b) *Randolph Engineering, Wetland and Stream Delineation Report, Neal Run Crossing* – Pad #4 and Pad #5 (U.S. Exhibit 20 and Defendant Exhibit 165).

6) If requested, TERRADON can provide a map that shows the Stream Assessment location points and include coordinates for those locations.  Typical stream assessments begin with an evaluation of the first 100 feet of stream bottom (working upward from the confluence of the studied stream with another stream) to establish the first reach. Additional sampling points and reaches are added as the stream characteristics change along the stream bed/channel.  The Environmental Scientist evaluates each reach, looking at vegetative cover over the stream channel, pebble count within the stream bottom, looking for any snags that may be present in the reach, etc.  Once this is complete, the Environmental Scientist then continues along the stream channel to determine if there is a significant change in the stream characteristics, such as a drastic change in slope along the stream bottom, change in vegetative cover, etc.  Where these changes are noted, the Environmental Scientist will measure another 100 linear feet of stream channel as a second stream reach for



sampling and analysis.  This is the standard approach to be applied and outlined in the directions given in the WV SWVM Forms.

7) A field assessment of the Site was conducted in September of 2019 by Ms. Sword of TERRADON. Ms. Sword holds a Bachelor's of Science Environmental Science Degree from Marshall University as well as a Bachelor's of Science Natural Resources & Recreation Management Degree from Marshall University.  She has been employed at TERRADON as an Environmental Scientist for 3 years.  Ms. Sword has completed numerous stream assessments for sites all across West Virginia working on some of the state's most high-profile projects.  Ms. Sword was the lead Environmental Scientist for the Herbert Hoover High School National Environmental Policy Act (NEPA) project, The Clendenin NEPA project, Glade Creek High School NEPA project, and the Cherry River NEPA project.  Ms. Sword conducted numerous stream assessments in the course of each of these projects, using the same methodology that was applied to the Foster Farms Stream Assessment.  The Federal Emergency Management Agency was the lead agency in the projects, and the WV SWVM forms were all reviewed and approved by both the United States Army Corps of Engineers as well as the West Virginia Department of Environmental Protection.

8) Ms. Sword reviewed and assessed the existing streams that were on Site as well as the areas of impact as referenced above.  Ms. Sword completed her field assessment of the current disturbed streams on Site.  Once completed, Ms. Sword reviewed the photos of the undisturbed areas of the streams and adjusted her scores to appropriately account for pre-disturbance conditions. Ms. Sword used high and low gradient stream forms as required in the WV SWVM Metrics.  The forms were filled out consistent with the instructions and the professional opinion and experience of Ms. Sword.

9) In my experience conducting stream assessments and determining WV SWVM Values, it is necessary to go out and view the site.  It would be a disservice to any client if the WV SWVM score was solely based on existing reports and outdated site visits.  I do not believe it is appropriate to rely only on historical materials and site assessments that are approximately 9 years old when sections of the impacted streams are still available to be assessed.  The TERRADON site assessment utilized current stream conditions in conjunction with previously-submitted reports to determine appropriate WV SWVM scores for the impacted streams.

10) Typically, when stream assessments are performed and WV SWVM Values are assigned and submitted for review, a field site review is scheduled between the federal or state Regulatory Review Agent and the Environmental Scientist who prepared the assessment.  As part of that site review the Regulatory Review Agent and Environmental Scientist walk all stream reaches together and evaluate the WV SWVM Scores that have been submitted with field conditions present on site.  They discuss situations where  adjustments to scores may be appropriate during that site review assessment and come to a consensus of appropriate score revisions.

11) It is my opinion, within a reasonable degree of certainty, that RR1, RR2, RR3, and RR4 should not be considered pristine streams.  A pristine stream designation is typically reserved for extremely high-



quality perennial streams. It is extremely rare that an intermittent or ephemeral stream is ever considered pristine. Based on reviewed reports and data, as well as conducting a visit to this project site to analyze the streams, I would not classify these streams as pristine. I would classify them as low quality, and the WV SWVM scores should reflect that classification.

12) It is my understanding that the Site was timbered before fill was placed in RR1, RR2, RR3, and RR4 The photo log in the Randolph Assessment confirms that the site had been timbered and logged at the time of their assessment. Sites with vegetative cover receive higher WV SWVM scores, and for that reason, the streams on Pad 5 that were reviewed in the Randolph Report, which have significant vegetative cover, are not appropriate reference streams for the streams that were filled.

13) It is my understanding that for post-disturbance cases (where a stream is being scored after disturbance, rather than before), there is no rule that an offsite/non impacted stream is the best comparison for an onsite impacted stream. In this case, portions of the impacted streams are still present on Site and those streams can be assessed and analyzed in conjunction with available resources and aerial imagery to determine stream quality and WV SWVM Scores. The current condition of the streams should be assessed and a score should be determined for those streams in their current state. Then a review of available resources should occur and the stream scores should be adjusted to reflect what the quality of the stream may have been prior to the impact occurring.

14) Every stream has its own individual characteristics that are unique to that stream, such as drainage areas, site conditions, contributing erosion factors, and upslope/offsite features that may be draining into that stream. Even streams in close proximity can vary drastically in quality and scoring. Contributing factors for this can be larger drainage areas and watersheds that may be draining to one stream and causing a larger pebble deposit in the stream bottom, erosion to the bed and bank due to a higher velocity of water draining through that feature, or environmental conditions that impact water quality.

15) For these reasons it is my opinion, within a reasonable degree of certainty, that it is more appropriate to use undisturbed portions of the streams on the project site for assigning WV SWVM scores than it is to use offsite reference streams.

16) Ms. Almeter states in paragraph 21 of her declaration that she included a conservative value of 43 months for temporal loss. Temporal loss is defined as *the time between initiation of mitigation and maturation of anticipated ecological functions on a compensatory mitigation site.* Paul Garrett, *Temporal Loss of Wetlands as Justification for Higher Mitigation Ratios* (2005). When credits are purchased from a mitigation bank there is no temporal loss; the mitigation bank has been established and the watershed improvements are mature and providing the anticipated ecological benefits to the disturbed watershed. Temporal loss is reserved for onsite or offsite compensatory mitigation or in lieu fee mitigation. This is typical for when there is a time delay from impact to final construction of the compensatory mitigation sites. In my experience, the United States Army Corps



of Engineers as well as the West Virginia Department of Environmental Protection recognize temporal loss as zero when purchasing mitigation bank credits.

17) For these reasons it is my opinion, within a reasonable degree of certainty, that the assessment performed by TERRADON accurately reflects the pre-disturbance conditions of the stream reaches RR1, RR2, RR3, and RR4.  It is also my opinion within a reasonable degree of certainty that this assessment accurately calculates the number of mitigation credits required in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 22, 2020.

_____
Jason Asbury

